# United States District Court

## District of Columbia

DISTRICT OF

RICHARD A. HORN

v.

FRANKLIN (PANCHO) HUDDLE, JR.
et al

### SUMMONS IN A CIVIL ACTION

CASE NUMBER:

UNDER SEAL

Oct. 11, 1994

TO: (Name and Address of Defendant)

U.S. Attorney
555 4th St., NW
Washington DC 20001

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

JAMES A. MOODY (DC BAR 294504)
2300 N ST. N.W. #600
WASHINGTON, DC 20037
(202) 663-9011

an answer to the complaint which is herewith served upon you, within _____ 60 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

SERVICE ACKNOWLEDGED DATE: 8-12-94

BY: _____
FOR: THE U.S. ATTORNEY, WASH., D.C.

NANCY MAYER-WHITTINGTON

CLERK

AUG 11 1994

DATE

BY DEPUTY CLERK

United States District Court

For the District of Columbia

Office of the Clerk

3rd and Constitution Avenue, N.W.

Washington, DC 20001

Nancy M. Mayer-Whittington
Clerk

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE A UNITED STATES MAGISTRATE JUDGE

        In accordance with the provisions of Title 28, U.S.C. Section 636(c), you are hereby notified that the United States Magistrate Judges of this District Court, in addition to their other duties, upon the consent of all parties in a civil case, may conduct any or all proceedings in a civil case, including a jury or nonjury trial, and order the entry of a final judgment.

        You should be aware that your decision to consent, or not to consent, to the referral of your case to a United States Magistrate Judge must be entirely voluntary. Only if all the parties to the case consent to the reference to a Magistrate Judge will either the Judge or the Magistrate Judge to whom the case has been assigned be informed of your decision.

        An appeal from a judgment entered by a Magistrate Judge may be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of a District Court. Alternatively, upon consent of all parties, an appeal from a judgment entered by a Magistrate Judge may be taken directly to a District Judge. Cases in which an appeal is taken to a District Judge may be reviewed by the United States Court of Appeals for this judicial circuit only by way of petition for leave to appeal.

                                    NANCY MAYER-WHITTINGTON
                                    Clerk of Court

CO942A
Rev. 2/93

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | |
|---|---|
| RICHARD A. HORN,<br>Suite 1800<br>3838 N. Causeway Blvd.<br>3 Lakeway Center<br>Metaire, LA  70002 | ) <br>) <br>) <br>) <br>) |
| Plaintiff, | ) <br>) |
| vs. | ) <br>) <br>) |
| FRANKLIN (PANCHO) HUDDLE,<br>JR.,<br>Department of State<br>EAP/PIA<br>2201 "C"<br>Washington, D.C.  20520;<br>(believed to reside in<br>Washington, D.C.<br>ARTHUR BROWN,<br>Central Intelligence Agency<br>P.O. Box 1925<br>Washington, D.C.  20505<br>(residence unknown but<br>believed to be in Washington,<br>D.C. or in the Eastern<br>District of Virginia | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |
| Defendant. | ) <br>) |

CIVIL ACTION NO.

CASE NUMBER  1:94CV01756

JUDGE: Harold H. Greene

DECK TYPE: Civil General

DATE STAMP: 08/11/94

**COMPLAINT**
(For Damages For Violation Of Civil Rights
and Anti-Wiretap Acts and Request For Jury Trial)

I

PARTIES

1.   Plaintiff Richard A. Horn, is and was at all times
mentioned herein, a Special Agent with the Drug Enforcement
Administration (DEA).  Plaintiff currently resides, and is employe
with DEA in New Orleans, Louisiana.

2.    Defendant Franklin (Pancho) Huddle, Jr.,
(hereinafter "Huddle") is, and was at all times mentioned herein,
an employee with the Department of State (DOS), United States
Government.  It is believed that Huddle currently works at the DOS
offices in the District of Columbia and resides in that District.

3.    Defendant Arthur Brown (hereinafter "Brown") is,
and was at all times mentioned herein, an employee with the Centra
Intelligence Agency (CIA).  During the years commencing in
approximately August of 1992, all of 1993 and through at least
June, 1994 he utilized the name of Arthur Brown.  Plaintiff is
without knowledge as to whether or not CIA Agent Arthur Brown's
true name is, in fact, Arthur Brown.  It is believed by Plaintiff
that Arthur Brown currently works at the CIA office in Langley,
Virginia and resides in the area.

4.    Plaintiff believes that other government agents and
employees assisted and/or aided and abetted the named Defendants o
further participated in the unlawful conduct complained of herein
and Plaintiff will seek leave to amend this complaint to add the
names of those persons once the same become known to Plaintiff.

II

LOCATION OF UNLAWFUL ACTIVITIES

5.    Plaintiff alleges that all of the unlawful
activities alleged herein occurred in the country of Burma, in
Washington, D.C. and in the Eastern District of Virginia between
June, 1992 and  up until approximately September 8, 1993.  During

2

that period of time Defendant Huddle was the State Department's
Chargé, or Chief of Mission, (COM) at the American Embassy in
Rangoon, Burma. At the same time, Defendant Brown was ███████
█████████ for the CIA █████████████████████████ in
Rangoon, Burma. During the same time Plaintiff was the Country
Attaché (CA) for DEA in Burma. The violations alleged in this
complaint occurred mostly in Rangoon, Burma, although additional
acts are believed to have been committed by other (DOS) or CIA
officials in the Washington, D.C. area and in the Eastern District
of Virginia. This complaint alleges that while all three parties
named herein were stationed in Rangoon, Burma, Defendant Arthur
Brown, illegally intercepted wire, oral and electronic
communications of Plaintiff, without Plaintiff's permission and
disclosed the content of said wire, oral and electronic
communications to Department of State and CIA officials in Rangoon,
Burma, Washington, D.C. and perhaps their offices in the Eastern
District of Virginia. Plaintiff alleges Defendant Huddle received
the unlawful wiretap communications in Burma and further disclosed
it to his superiors in the Washington, D.C. area and the Eastern
District of Virginia. One of the acts specifically known of by
Special Agent Richard Horn occurred on or about August 12, 1993 in
Rangoon, Burma, as further described in paragraph 13 below. These
actions by the Defendants were taken in furtherance of their
political and personal agenda to thwart and undermine DEA's mission
in Burma, as more explained below, and to retaliate against

3

Plaintiff for Plaintiff's urging that the truth re Burma's drug
enforcement efforts, which were substantial, be told to the U.S.
Congress and the executive branch; whereas the DOS and CIA in its
report to Congress desired to deny Burma any credit for its drug
enforcement efforts.  Plaintiff's "whistleblowing" would harm the
dishonest DOS and CIA agenda, and thus the reason for Defendants'
actions.

III

JURISDICTION AND VENUE

6.   This suit is brought pursuant to the Fourth
Amendment of the United States Constitution under the authority of
*Bivens (Bivens  v. Six Unknown Named Agents Of The Federal Bureau
Of Narcotics (1971), 403 U.S. 388)* allowing a personal civil suit
brought by Plaintiff's aggrieved by Fourth Amendment violations by
Federal agents and officers committed under color of law.  This
suit is also brought pursuant to Title 50, United States Code §
1810 which permits an aggrieved person to bring an action against
those who have unlawfully conducted electronic surveillance or
about whom information contained by unlawful electronic
surveillance has been disclosed or used in violation of § 1809.
This suit is also brought pursuant to The Private Right of Action
contained in § 2520 of the Anti-Wiretapping Statute, 18 USC § §
2510 et. seq.  Thus, this suit involves a Federal question (28 USC
§ 1331) and a question arising under the United States Constitution
and laws of the United States.

4

7.     Venue is appropriate in the District of Columbia since the District of Columbia is believed to be where at least one of the Defendants resides and where one of the Defendant's current office is located and where one or more acts took place.  If it is determined that venue lies in some other Federal Court in the United States, then the matter should be transferred to that District Court pursuant to 28 USC § 1406(a).

IV

OPERABLE FACTS

8.     Plaintiff Horn is an American citizen and has been employed by the Drug Enforcement Administration since June, 1971. He has been assigned as a Field Special Agent in Portland, Oregon, Fresno, California and has served DEA in management capacities at Islamabad, Pakistan, Des Moines, Iowa, Rangoon, Burma, and most recently in New Orleans, Louisiana.  While stationed in Rangoon, Burma from on or about June, 1992 through September 8, 1993, Plaintiff Horn's office was in the American Embassy in Rangoon, Burma.  During this time Plaintiff lived at 96 G Inya Road, which was government leased quarters (GLQ) in Rangoon, Burma.  Part of Horn's duties while posted in Rangoon, Burma was to work with the government of Burma (GOB) to improve their law enforcement performance, to generally assist the GOB to achieve their law enforcement objectives, to advance U.S. government (USG) anti-drug interests, and work to reduce and ultimately eliminate narcotic trafficking, the cultivation of opium and the production of heroin.

5

Horn's additional duties included working in cooperation and harmony with other USG elements stationed at Rangoon and elsewhere and to work jointly with other governments and agencies as appropriate to achieve anti-narcotic objectives.   In this regard, Plaintiff asserts that Burma is the leading opium producing country in the world and is a major source country for the heroin that enters the United States.   Plaintiff's position as the DEA Country Attaché in Rangoon, Burma was Plaintiff's "dream assignment".

9.   While stationed in Rangoon, Burma, Special Agent Horn made substantial progress working in concert with the Burmese government to improve its performances in addressing major drug issues.   However, all DOS reporting about the Burma drug situation, which was destined for the consumption of the U.S. Congress and the current Executive Administration, was deliberately shaped to conform with the political policy which in effect prevented the GOB from accruing any credit for its efforts or achievements. Defendant Huddle used the term "intellectual dishonesty" to describe this type of reporting.   Special Agent Horn strongly encouraged Defendant Huddle to more accurately report on the drug situation in Burma to the policy makers in Washington.   Defendant Huddle and his DOS colleagues in Washington retaliated and quieted Plaintiff's voice for truthful reporting by ordering Horn's removal in September, 1993 from Rangoon, Burma, an event which took place over the vigorous protests of DEA Headquarters.   Plaintiff Horn was the second DEA Country Attaché removed from post by Defendant

6

Huddle and the third Country Attaché in a row to be asked to leave
Burma. As to the CIA, Defendant Brown retaliated against Plaintiff
because Plaintiff dutifully reported Brown to DEA Headquarters for
Brown's repeated efforts to undermine and sabotage DEA's anti-drug
initiatives. Included in this category was Horn's complaint that
Brown surreptitiously obtained and delivered a sensitive DEA
document, which he well knew was signed by a DEA informant, to an
official of the government of Burma. Plaintiff asserts this act
was accomplished without ever consulting Plaintiff or a
representative of DEA. Plaintiff asserts that Brown knew the
government of Burma would likely engage in some form of retribution
against the informant after seeing the document.

        10. Plaintiff asserts Defendants Huddle and Brown were
jointly seeking justification to demand Horn's removal. When an
illegal intercept failed to produce results (as explained in
paragraph 13 below), another scheme was concocted: Horn was
accused of violating a DOS order by holding a meeting with someone
without DOS presence. However, Plaintiff had been told by ranking
DEA officials to have the said meeting without State presence
because both Plaintiff and senior DEA managers maintained then, and
still insist, that said meeting did not qualify for state presence
under the DOS' own criteria. Unbeknownst to Plaintiff and DEA
Headquarters at that time was the fact that the involved DOS
elements had previously agreed in cable traffic that DEA could hold
said meeting without DOS presence. Nevertheless Defendant Huddle

still accused Plaintiff Horn of violating the order and used that excuse to remove Plaintiff from Burma knowing that, unlike DOS employees, and by merit of being a DEA agent, Plaintiff had virtually no appeal or grievance rights when serving overseas, which would otherwise provide a forum for revealing the truth and Defendant Huddle's motivation.   Having been removed by Defendant Huddle from Burma, will most certainly cause Plaintiff to be refused by DOS from serving in any overseas posts because the COM must approve DEA Country Attachés in that country.

    11.   During Plaintiff's tenure as DEA Country Attaché in Burma and on orders of Defendant Huddle, he periodically gave briefings to American Congressman (CODEL) and their Staff Delegations (STAFFDEL).   Upon request, Plaintiff provided written material to two such visiting American Delegations.   Consistent with proper procedure, Plaintiff sought authorization and review of the material from Chief of Mission (Defendant Huddle) or the Acting Chief of Mission (Donald Jameson) before the letters were disseminated.   These two letters, to a Congressman dated November 12, 1992 and a STAFFDEL person, dated April 1, 1993, caused considerable consternation in Washington and subsequently, at the American Embassy Rangoon.   Plaintiff asserts that the substance of these letters considerably clashed with the official DOS position regarding the Burma drug situation, as set forth in the International Narcotic Strategy Report (INCSR).   Plaintiff was told on many occasions by Defendant Huddle over a six month period, that

8

he (Huddle) and DOS were in the awkward position of having to respond to the discrepancy highlighted by Plaintiff's letters. Plaintiff was never accused of making any misrepresentations in the letters, as they were true; he was criticized only for having written the letters in the first place.

12.   Plaintiff asserts that the International Narcotic Strategy Report (INCSR), an unclassified DOS publication, represents the official U.S. Government analysis of the drug situation in Burma and elsewhere throughout the world but, in the case of Burma, it is based upon intentionally inaccurate DOS information.  Plaintiff asserts that Defendant Huddle intended to prepare the 1992 INCSR without ever consulting DEA, which agency is the most knowledgeable source of information on the drug situation in Burma.  When the Plaintiff requested to participate in drafting the document, Defendant Huddle told him the INCSR was a State Department document and as such, DEA need not be consulted. Ultimately, Plaintiff persuaded Defendant Huddle to allow DEA input.  When Plaintiff Horn pressed Defendant Huddle to include more accurate information to create a more credible document, Defendant Huddle told him that the INCSR was driven by policy, not by facts.  At another point in time, Defendant Huddle told Plaintiff that he would not jeopardize his State Department career to merely improve the accuracy of reporting on the drug situation in Burma.

9

13.   Prior to Special Agent Horn being expelled from Burma by Defendant Huddle, Arthur Brown or persons acting under hi control, intercepted private conversations Special Agent Horn was having from his residence in Burma to subordinates of Special Ager Horn and perhaps others, according to proof.  One particular interception occurred on Special Agent Horn's home telephone and was conducted by, or on behalf of Arthur Brown and Defendant Hudd. and was without Horn's permission and without lawful authority.  ( approximately August 12, 1993 at approximately 11:00 pm Special Agent Horn called a DEA subordinate of Horn's from Horn's persona. residence and had a conversation with said subordinate about the fact that Defendant Huddle was expelling Horn from Burma and Horn then described DEA Headquarter's position with respect to such expulsion.  Based upon information and belief, not only was said telephone conversation intercepted by Defendant Brown, or persons acting on his behalf, but was recorded with the contents or the tape made available to Defendant Huddle.  Within days of said conversation Defendant Huddle transmitted the partial contents of said conversation in a cable to Huddle's headquarters in Washington, D.C.  Said cable was routed to the attention of sever State Department employees most notably the EAP (East Asian and Pacific Affairs) and INM (International Narcotics Matters) divisions of DOS.  The identity of other persons or entities with whom Huddle and Brown shared or disclosed the intercepted communications is not presently known to Plaintiff.

10

14.   During that period of time, Special Agent Horn was communicating with his attorney in Clovis, County of Fresno, California, was communicating with his headquarters in Washington, D.C. and with other persons in Rangoon, Burma, and elsewhere, and Plaintiff believes these phone conversations were illegally intercepted and disclosed by Defendants as well.

15.   Upon information and belief, it is believed by Plaintiff Horn, that yet more telephone conversations were intercepted, recorded and disclosed to other persons in the United States government, all without the permission or knowledge of Plaintiff Horn and all without the authority of the provisions in Title 50, USC, § § 1801 et. seq. or 18 USC § 2510 et. seq.   Upon information and belief, Plaintiff Horn alleges that this conduct was a pattern and practice of the Defendants in order to learn private details of Agent Horn's life and DEA's Mission in Burma in order to use said information to expel Special Agent Horn from the country for personal and political reasons of the Defendant and others.   Special Agent Horn will amend this complaint to allege violations by additional defendants who participated in unlawful conduct once the identities are fully established, and to allege additional incidents of unlawful interception and/or disclosure once the same are known.

11

V

## FIRST CAUSE OF ACTION
### (Bivens)

16.   Plaintiff incorporates herein as though fully set forth, all of the allegations contained in paragraphs 1 through 15, above, as though fully set forth.

17.   All of the actions and activities taken by the Defendants were taken under color of law and were without lawful authority and were accomplished in violation of clearly established law.

18.   Said unlawful interception of Plaintiff's telephone communications, and without Plaintiff's permission, violated Plaintiff's rights guaranteed under Fourth Amendment of the United States Constitution.

19.   As a result of the illegal conduct by the Defendants, Plaintiff has suffered loss of personal and professional reputation, humility, embarrassment, loss of personal privacy, emotional distress, and compensatory damages in an amount according to proof, but in excess of the minimal amount for this Court's jurisdiction.  The Defendants acts were wilful, malicious and intentional entitling Plaintiff to punitive damages.

20.   Plaintiff Horn is also entitled to reasonable attorneys' fees and costs.

VI

## SECOND CAUSE OF ACTION
### (Anti-Wiretapping Statute)
(50 USC § 1810)

21.  Plaintiff incorporates herein, as though fully set forth, all of the allegations contained paragraphs 1 through 20, above, as though fully set forth.

22.  Pursuant to Title 50, United States Code § 1810, Defendants are subject to civil liability pursuant to said section for violation of § 1809.  Plaintiff therefore is entitled to actual damages, but not less than liquidated damages of $1,000.00 or $100.00 per day for each day of violation, whichever is greater, punitive damages and reasonable attorneys' fees and other investigation and litigation costs reasonably incurred.  This complaint will be amended to allege additional instances of unlawful electronic surveillance and disclosures of electronic surveillance once the same is known to Plaintiff.

VII

## THIRD CAUSE OF ACTION
(Unauthorized Interception and Disclosure of Oral Communication)

23.  Plaintiff incorporates herein, as though fully set forth, all of the allegations contained in paragraphs 1 through 22, above, as though fully set forth.

24.  Plaintiff invokes the private right of action contained in Title 18, USC § 2520 of the anti-wiretapping statute, 18 USC § § 2510 et. seq.

13

25.   Plaintiff herein alleges that the Defendants violated § 2511, which prohibits the unlawful interception, disclosure or use of any wire or electronic communication. Defendants not only unlawfully intercepted said communication but disclosed it to others.

26.   Plaintiff therefore is entitled to compensatory and punitive damages according to proof, and pursuant to the penalties in § 2520.

VIII

FOURTH CAUSE OF ACTION
(Conspiracy)

27.   Plaintiff incorporates herein, as though fully set forth, all of the allegations contained in paragraphs 1 through 26, above, as though fully set forth.

28.   Upon information and belief, Plaintiff alleges that the Defendants, and others, not yet known, conspired between and amongst themselves to unlawfully intercept wire an oral communications of the Plaintiff, and disclose said communications to others within the United States Government for political and personal reasons.

29.   Plaintiff is without knowledge as to the number of instances of unlawful eavesdropping in violation of the statutes alleged in the two previous causes of action, and in violation of Plaintiff's rights guaranteed under the Fourth Amendment of the United States Constitution, but said complaint will be amended according to proof.   Defendants committed overt acts at least on or

14

about August 12, 1993 by intercepting said phone conversation Plaintiff Horn had with one of Horn's subordinates, and later by transmitting the contents of said conversation in an official State Department cable to DOS and perhaps others in Washington, D.C. and elsewhere.

   30. Plaintiff has been damaged in his personal and professional reputation, suffered humility, embarrassment and emotional distress, and is entitled to compensatory and punitive damages in an amount according to proof, including reasonable attorneys' fees and costs.

IX

   31. Plaintiff herein requests a jury trial.

   WHEREFORE, Plaintiff prays judgment as follows:

   1. For statutory, compensatory and punitive damages according to proof;

   2. For actual and liquidated damages pursuant to Title 50, USC § 1810 and 18 USC § 2520 and for such other relief as may be appropriate; and

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

15

3.   For reasonable attorneys' fees, investigation and litigation costs reasonably incurred and for such other relief as may be appropriate.

Respectfully Submitted,

Brian C. Leighton (CA Bar No. 090907)
701 Pollasky
Clovis, CA 93612
(209) 297-6190
(Lead Counsel for Plaintiff)

James A. Moody (D.C. Bar No. 294504)
Suite 600
2300 N Street, NW
Washington, D.C. 20037
(202) 663-9011
(Local Counsel for Plaintiff)

DATED:   August _10_, 1994

16