COURT SECURITY OFFICER
DATE  1-10-00

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Richard A. Horn                    Docket No. 94-1756 and
                                   96-2120 RCL

          Plaintiff
                                   Washington, D.C.
     vs.                           Friday, January 7, 2000
                                   10:12 a.m.
Madeline Albright, et al.

          Defendants


                    Transcript of Status Call
          Before the Honorable Royce C. Lamberth
                 United States District Judge


APPEARANCES:

For the Plaintiff:          James A. Moody, Esq.
                            Brian C. Leighton, Esq.
                            Janine Brookner, Esq.
                            Theodore M. Cooperstein, Esq.

For the Defendant:          Lisa S. Goldfluss, Esq.
                            Madelyn Johnson, Esq.
                            Peter R. Badger, Esq.
                            Timothy L. Orr, Esq.
                            James G. Hergen, Esq.

Reporter:                   WILLIAM D. MC ALLISTER, CVR-CM
                            Official Court Reporter
                            Room 4806-B
                            333 Constitution Avenue, N.W.
                            Washington, D.C. 20001-8306
                            (202)371-6446


Reported by Stenomask and transcribed using SpeechCAT

Pages 1 through 53

1                     P R O C E E D I N G S

2           THE LAW CLERK:  This is the case in the matter of

3    Richard A. Horn v. Madeline Albright, et al.  Civil Action

4    Number 94-1756 and 96-2120.

5           THE COURT:  Let me have counsel for the Plaintiffs

6    identify themselves and then I'll go to for the Defendant.

7           MR. MOODY:  Good morning, Judge Lamberth.  I am Jim

8    Moody, local counsel.  With me is Brian C. Leighton of the bar

9    of California, lead counsel.  Janine Brookner, a member of the

10   bar of the state of New York for whom we made a motion to

11   admit her pro hoc vice, and Theodore Cooperstein also of the

12   bar of this Court.  Also with us today is the Plaintiff, Rick

13   Horn.

14          MS. GOLDFLUSS:  Lisa Goldfluss with the United States

15   Attorney on behalf of the State Department, the Central

16   Intelligence Agency, the National Security Agency.  With me

17   today is Madelyn Johnson, my predecessor on this case with the

18   institutional memory. Also counsel for the National Security

19   Agency, Lieutenant Tim Orr.  Counsel for the Central

20   Intelligence Agency, David Sadoff.  Counsel for the State

21   Department Jim Hergen.  Also we have Peter Badger of the

22   National Security Agency.

23          THE COURT:  Mr. Leighton, you may go first and tell

24   me where you think we are and where we ought to go.  The

25   sealing order is still in effect so this hearing now is under

3

1   seal until I ultimately dispose of that issue as well.

2          MR. LEIGHTON:  Thank you, Your Honor.  I assume the

3   Court has had a chance to read the Plaintiff's informal status

4   conference statement.

5          THE COURT:  I have.

6          MR. LEIGHTON:  I think that kind of outlines where we

7   have been since 1994 in this case but unfortunately not a

8   whole lot has been accomplished except for Judge Greene's

9   February 1997 decision allowing the case to go forward on the

10  Bevins cause of action.

11         There are a number of outstanding motions that were

12  filed before Judge Greene that he has not had the opportunity

13  or has not ruled upon.  The first thing I would like to

14  address is on the class-action lawsuit.

15         On November 18 we filed a first amended complaint

16  pursuant to Rule 15 because the Government had not yet

17  answered the original complaint.  They filed a motion to

18  dismiss and/or for summary judgment.

19         Apparently the clerk's office, and I am receiving

20  this information Christine Gunning, the court security

21  officer, apparently the clerk's office believed that

22  permission from the Court was required.  That's why it was not

23  officially filed.

24         I had a later conversation with Ms. Goldfluss about

25  it.  She believed that it could be filed without the Court's

4

1   permission because they had not filed an answer.

2        THE COURT:  Let me ascertain one thing.  (Pause.) We

3   do have it and I wanted to confirm it with the clerk.  So I

4   would deem it filed today so that will give the time running.

5   All right.  You want to amend it again?

6        MR. LEIGHTON:  Yes, if you could reverse that nunc

7   pro tunc for a moment --

8        THE COURT:  All right.

9        MR. LEIGHTON:  We would like a first amended

10  complaint filed, but since we file that November 18 of 1998,

11  we have gained substantially more information that we would

12  like to include in the complaint.

13       THE COURT:  So you want to do a second amended?

14       MR. LEIGHTON:  If the first amended has not been

15  deemed filed, I don't know if we would call it a first amended.

16       THE COURT:  I think to reduce confusion I would call

17  it a second amended.

18       MR. LEIGHTON:  Yes, Your Honor.

19       THE COURT:  What date do you want to do that?

20       MR. LEIGHTON:  Because we have so many counsel, I

21  would suggest 30 days.

22       THE COURT:  Okay.  That will get the second case on

23  track then, right?

24       MR. LEIGHTON:  Yes.

25       THE COURT:  You want to keep the cases separate so

5

1  you are just proposing to do that for the second case,

2  right?

3       MR. LEIGHTON:  Yes, Your Honor.  So if we can have 30

4  days to file what we would deem as a second amended

5  class-action complaint, comply with Judge Greene's December

6  22nd, 1998, protective order by filing it first with Christine

7  Gunning.  So I think that covers that.

8       The other motion that is currently pending which

9  Judge Greene invited me to file on October 29 when we had the

10  status conference is a motion to deconsolidate the

11  class-action lawsuit from what we have deemed the Horn I

12  complaint which was filed against two individuals.

13       We know that with respect to the class-action

14  lawsuit, at the risk of sounding presumptuous, that the

15  Government will once again move to dismiss and/or for summary

16  judgment on that.

17       We believe that because of how long Horn versus

18  Huddle has been pending without the ability to conduct

19  discovery, we would like to immediately embark on discovery

20  and move that case along.  We have set forth in our paperwork

21  why Horn I should not be consolidate with Horn II.  The

22  Government has opposed that motion.

23       THE COURT:  Give me a notion then of what is going to

24  be in the second amended so I know what Horn II really is?

25       MR. LEIGHTON:  Horn II right now states in a specific

6

1   paragraph that we have learned some other DEA agents

2   that their telephones and conversations were intercepted by

3   the Defendant agencies while they served overseas, and we

4   listed not countries per se but areas because I know that

5   there was very much of a concern by the agencies that the

6   countries not be named.

7           The new complaint will allege the same thing except

8   that there will be a separate paragraph that we have uncovered

9   information, even admissions by some of the agencies, that all

10  of Stew Three telephones of DEA agents overseas are monitored

11  by the agencies.  That would again show a pattern and practice

12  when they routinely monitor phones that DEA agents believe

13  have been secure all of these years.

14          We would also allege that they monitored our NADIS,

15  the DEA NADIS systems.

16          THE COURT:  What is that?

17          MR. LEIGHTON:  The NADIS system is the system the DEA

18  uses to communicate amongst offices with their reports and

19  that the agencies intercept those as well so that would be

20  part of the pattern and practice on the class-action lawsuit,

21  and while it has some relevance to the Horn versus Huddle

22  case, Horn I case, because in that case the agencies have

23  filed declarations saying we do not do this stuff, and if we

24  did, we would have to get clearance and approval, and file

25  these reports.  We checked, and since no approval was ever

7

1   requested, therefore, it did not happen.

2   So it is relevant to Horn versus Huddle, Horn I, I

3   should say, and so therefore, we believe that the class-action

4   lawsuit because we are going to have a number of motions, the

5   motions are done with respect Horn versus Huddle because they

6   lost the qualified immunity that we should proceed with

7   discovery on Horn versus Huddle.

8   THE COURT:  That could be done whether or not they

9   are consolidate could it or not?  I am not sure what the

10   reason to deconsolidate is.

11   MR. LEIGHTON:  On the Bevins action one thing is we

12   are entitled to a jury trial on that.

13   THE COURT:  On the other you are not?

14   MR. LEIGHTON:  On the other we are not.  That is one

15   reason.  Your Honor, if you did not want to deconsolidate

16   those now, at least allow us to conduct discovery with respect

17   to Horn versus Huddle because a number of witnesses have

18   retired.  One witness is ill.

19   We are just afraid that the Department of Justice

20   will not allow us to interview those witnesses, including the

21   Department of Justice will not allow us to even interview DEA

22   agents, which brings up a problem that we are going to have in

23   this case and we have already seen in this case which is that

24   DEA will not allow DEA agents to provide declarations in these

25   matters without approval of Department of Justice, the

8

1   Department of Justice attorneys that represent the
2   agencies.

3       And DEA is DOJ.  So we have DEA agents who are
4   supposed to be represented by DOJ.  DOJ is representing the
5   intelligence agencies and controlling DOJ witnesses which we
6   think that there has to be some procedure where they cannot do
7   that.

8       And when I get done with my thing, Mr. Moody would
9   like to address the Court with respect to some discovery
10  issues that we are going to have.  So as long as we can
11  proceed with discovery, we do not need a Court order right now
12  deconsolidating it but I think it might be useful to have that
13  as long as we can proceed with discovery.

14      THE COURT:  Why were they consolidated in a first
15  place?

16      MR. LEIGHTON:  The Government moved and we objected
17  and Judge Greene granted.  But as I said, at the October 29
18  hearing, he invited me to file a motion to deconsolidate.

19      Another thing that is outstanding is when Judge
20  Greene issued his decision in February of 1997 along with the
21  denial of the motion to dismiss and/or for summary judgment on
22  the Bevins claim, he then issued a separate order requesting
23  the parties to brief why that case should still be under
24  seal.  We briefed the case.  Said it should not be under
25  seal.  DOJ, of course, took the opposite position.  There has

1   not in a ruling on that issue.

2   We believe that they have no right to have a

3   complaint sealed when we are talking about cover-up and

4   wrongdoing and illegal activities by the agencies.  We are

5   certainly and I will allow Mr. Moody to address the issues of

6   how we can protect against the secret information, the top

7   secret information, classified information not being made

8   available to the public, but we think that that should be

9   unsealed and Mr. Moody will address that with the Court's

10  permission.

11  The other thing that the Court asked us to respond to

12  is what types of protective order should be available in this

13  case.

14  THE COURT:  I found what you said in your status

15  report a little bit curious on that because I take it Judge

16  Greene did a protective order in December of 1998.

17  MR. LEIGHTON:  Right.

18  THE COURT:  And your position is he did not expressly

19  deal with some of the questions?

20  MR. LEIGHTON:  Right.

21  THE COURT:  You really want to modify that protective

22  order or how do I have the question before me now?

23  MR. LEIGHTON:  He invited the parties to file motions

24  as to how he should deal with protective orders.  We filed

25  one.  DOJ filed one.  We both opposed each other's on various

10

1  grounds.   On December 22nd he issued that protective

2  order.

3          There were some issues that were unresolved and I

4  think we can deal with the protective order he has issued.   I

5  just did not know if that is the final protective order.   I

6  just did not know because he did not state whether or not he

7  was dealing with our protective orders or he just decided to

8  do his own.

9          THE COURT:   What would you seek to change in what he

10  issued as to the protective order?   In what way is it not

11  adequate?

12          MR. LEIGHTON:   That issue has not yet arisen only

13  because the problem is going to be associated with what I

14  think is going to be occurring.   We have four counsel and

15  Agent Horn, and in filing motions obviously everybody wants to

16  see it, and it is going to create a nightmare unless we can

17  expedite ways that I can get it to Horn because I will

18  primarily be responsible for writing the briefs.

19          I do not think at this point in time we need to

20  address that but we may have to address the cumbersomeness of

21  getting all the stuff circulated so everybody can sign off on

22  it.

23          I know from what I understand all of my work is going

24  to have to be prepared at the FBI office in Fresno, secured

25  through their staff, and then how it is going to get

1  circulated, we will have to deal with that.  I would

2  just like the opportunity to come back to the Court, obviously

3  we will try to work it out with the court security officer to

4  see if something is working.  But right now we can live with

5  the current protective order.

6          The other thing that is actually outstanding --

7          THE COURT:  The one thing that may not be adequate

8  about it that I picked up from something in the papers was

9  there was some difference I take it about your view of when a

10 matter is under seal, as to what sealing means, as to what you

11 can say to the press or whether there should be a gag order or

12 whatever.  It take it that is a part of the issue?

13         MR. LEIGHTON:  It is part of the issue but I think I

14 have clarified what Christine Gunning wants.  Part of our

15 problem with this is, as I said to Your Honor before, is we do

16 not believe the case should have ever been seal.  It was

17 sealed based upon an in-camera declaration filed by one of the

18 agencies which we never got to see.

19         So if and when the Court rules on what Judge Greene

20 asked us to brief as to whether or not the case should be

21 unsealed, then we can address what can be said to the press,

22 what cannot be said to the press.

23         THE COURT:  In connection with the unsealing order

24 then, if I'm going to address the gag order, that is when to

25 address it?

12

1        -      MR. LEIGHTON:  Yes.

2              THE COURT:  What is your suggestion about what I

3    should do about that?

4              MR. LEIGHTON:  If I may defer to Mr. Moody for a

5    moment and reach that because he has some ideas and so does

6    Janine Brookner, who is ex-CIA, and she had her own case and

7    knows how to black things out and country codes.

8              Do you want Mr. Moody to address that now?

9              THE COURT:  No.  That's okay.  We will come back to

10   that.

11             MR. LEIGHTON:  Under the federal rules and the local

12   rules we had a certain amount of time to seek classification

13   on the class-action lawsuit.  The Government had moved to

14   dismiss and/or for summary judgment of the class-action

15   lawsuit claiming that we would have to show official

16   Government policy as opposed to a pattern and practice.  Judge

17   Greene invited the parties to further brief that.

18             We have.  I do not believe the Defendants have

19   briefed that issue.  Obviously it has been on hold pending the

20   first amended complaint which was not filed.  Now it will be

21   on hold pending our second amended complaint and we would just

22   seek to continue the classification motion issue until the

23   Court eventually has a chance to rule on whether or not the

24   second amended class-action complaint should be dismissed or

25   not dismissed.

1          -      I just wanted the Court --

2                 THE COURT:  And you had moved to extend the time for

3    filing classification?

4                 MR. LEIGHTON:  Yes, until the Court rules on the

5    motion to dismiss.

6                 THE COURT:  And that was never ruled on either way?

7                 MR. LEIGHTON:  No.

8                 THE COURT:  That is an outstanding motion?

9                 MR. LEIGHTON:  Yes.  Assuming for the sake of

10   argument that the Government moves to dismiss what we have

11   termed now the second amended complaint, then obviously we do

12   not have to deal with the classification until the Court rules

13   on that.

14                The other issue, although we have not filed a formal

15   motion in that regard, it has been brought up in some of the

16   pleadings, Special Agent Horn had made his allegations known

17   to the State Department Inspector General and the CIA

18   Inspector General's office.

19                They have completed an investigation, a joint

20   investigation, State Department and CIA.  The individual

21   Defendants in this case in Horn I got to read the report.

22   Plaintiff has been denied the opportunity to read the report.

23                When Mr. Moody, myself and Special Agent Horn met

24   with John Duncan, who was then the Inspector General General

25   Counsel for the State Department, he stated that if there was

14

1  a Court order of the Court granting us the ability to

2  have a copy of the report and the attachments, they would not

3  object.

4              THE COURT:  They, State?

5              MR. LEIGHTON:  The State IG's office would not

6  object.  It is their report.  In that case --

7              THE COURT:  I thought you said it was a joint report?

8              MR. LEIGHTON:  State and CIA joint report.  I guess

9  the lead agency was State.  That is how I understand it.

10             That I think if it is disclosed, and obviously we

11  have no problem having it disclosed to DOJ if they haven't

12  already seen it, is that the Defendants were interviewed in

13  that and a number of witnesses we would depose have been

14  interviewed and that would expedite discovery, Your Honor.

15             THE COURT:  That report itself is probably

16  classified, right?

17             MR. LEIGHTON:  Yes.  Not that we believe that it

18  should be but, yes, it is.

19             THE COURT:  We would have to deal with your clearance

20  first.

21             MR. LEIGHTON:  Yes.  The other item, Your Honor, is

22  the Court had stated in its February 10, 1997, decision that

23  he had requested the Department of Justice to produce the

24  cable in question that we had alleged in the complaint where

25  it quoted Agent Horn's conversation.

1        -       The judge stated after reading that that it was

2    clear and convincing evidence that there was an eavesdropping

3    device in place.  Agent Horn knew about the cable because he

4    had seen it while overseas.

5            Agent Horn does not believe that there is anything in

6    there that should be classified or anything in there that is

7    classified.  Particularly since it is evidence of a crime case

8    and it is his own conversation, we believe we are entitled to

9    a copy of that.  And since the Department of Justice has a

10   copy of it, we believe that we are entitled to a copy of it.

11           And if I could, unless the Court has any other

12   questions of me right now, if I could turned over the podium

13   to Mr. Moody to discuss the discovery issues.

14           THE COURT:  Yes.

15           MR. MOODY:  Thank you.  Just to be fairly brief, the

16   original complaint Horn versus Huddle, Horn I, alleges a

17   single instance of improper conduct by two Government

18   Defendants and is now in the posture of being a Bevins action.

19           After that was filed, we moved to the expanding

20   class-action which is declaratory and injunctive relief

21   against what we believe is a pattern and practice of

22   wrongdoing.

23           The motion to unseal the case concerns essentially

24   the important constitutional and policy arguments as to why

25   the public should have access to court proceedings and I

1   believe that since surveillance, wiretaping if you will,

2   bugging, is a rather well known technology and that the fact

3   that there are devices that are available on the market and to

4   Government agencies to conduct surveillance or wiretaping or

5   bugging is itself not a secret and that it would be impossible

6   to handle this case without getting into the specific details

7   of the specific type of technology being used which arguably

8   would be covered by a sources and methods objection, that

9   really what we are dealing with is perhaps a Government motive

10  to keep official wrongdoing secret from public scrutiny rather

11  than addressing something that might come up in, for example,

12  a Win Ho Lee type case where there really is very very serious

13  national security considerations that have to be address in a

14  more broader context.

15          So we would suggest using procedures that were used

16  in the Iran-Contra cases where, if a country needs to be kept

17  secret, we use a country designation or an area reference such

18  as country A, B, and C or an area reference to a particular

19  region of the world.

20          Individuals can be designated simply as Government

21  employee A, B, and C, and we can use a nomenclature agreed to

22  by the parties as to when these can be substituted in the

23  public files of this Court so that the policy and

24  constitutional objectives will be served, who will have public

25  access to both of these cases.

17

1          -     Unless and until the details of a particular --

2                THE COURT:  You agree although the Classified

3     Information Procedure Act does not technically apply in civil

4     cases, you agree those kinds of procedures would be helpful if

5     I grafted them on here.

6                MR. MOODY:  Yes, sir, they seem to make very good

7     sense.  There ought to be something short of an entire blanket

8     thrown over these cases because they do concern official

9     wrongdoing and that, while there may be instances that deal

10    with specific sources and methods issues or a particular named

11    agent, for example, we believe they can be adequately dealt

12    with under those procedures rather than just keeping the

13    entire matter a secret from any scrutiny at all.

14               Regarding the other issue Mr. Leighton mentioned as

15    far as discovery, the main thing that we really hope for from

16    the Court's status conference today is for approval of our

17    filed discovery plan to proceed on Horn I in taking the

18    depositions we have listed there, in filing the docket

19    requests and interrogatories and getting the two documents Mr.

20    Leighton mentioned, the cable referenced in the complaint and

21    the Inspector General report.

22               We believe it is critical to get discovery going

23    right away and we do anticipate that this will be a

24    hard-fought case in discovery.  We anticipate that because of

25    the arguable conflict of interest the Justice Department has

18

1  in both trying to represent overriding national

2  interests as well as representing the two Bevins Defendants,

3  we believe we are going to see repeated invocations of

4  privilege, repeated arguments about relevance and scope.

5      We would like to develop some kind of procedure such

6  as the Court used in the Alexander case and other cases where

7  we either have access to a magistrate or, on an advanced

8  schedule, access to Your Honor to try to resolve discovery

9  disputes in a more timely way rather than doing it on a

10  constant round of motions.

11     Certainly now in the beginning of our five and half

12  years in Horn versus Huddle and some of the employees are

13  retiring and memories do grow dim so we would like to sort of

14  forestall some of the anticipated contentiousness of discovery

15  by developing a procedure where we can have quick access to

16  get disputes resolved before they end up being a paper flurry.

17     THE COURT:  All right.  What was your position about

18  that if there is an unsealing about what sort of gag order

19  might be appropriate?  There has to be something about

20  classified information can't be disclosed obviously.

21     MR. MOODY:  Yes, sir.  To give one example, the Horn

22  versus Huddle complaint does name as a defendant a present CIA

23  agent.  If it is agreed that that person's name should not be

24  disclosed and there is an argument that he is what is called a

25  ████████████████ but if there is the proper view that his name

1  is not to be disclosed, simply substitute either CIA

2  employee "A" or Government employee "A" in any kind of

3  reference in the pleadings to that person.

4       The parties and the Court would have a nomenclature,

5  an index that cross-referenced these substituted designations

6  for their real names.  If that individual were deposed, for

7  example, it would be appropriate to classify his deposition,

8  keep it secret under a protective order.  That is one

9  example.

10       Another example might be if it comes down to a

11  question of whether it was bugging device type "A" versus

12  bugging device type "B" and if it becomes necessary to inquire

13  into the details of a particular technology that could, and we

14  don't know because the Government's request for sealing was

15  done pursuant to a declaration we have not seen, but if the

16  details of a particular technology do raise security concerns,

17  it is appropriate in the public filing of the court to

18  substitute technology "A" or device "A", some nomenclature

19  such as that, and the deposition that concerned that device

20  would be kept under seal.

21       THE COURT:  Okay.  Thank you, Mr. Moody.

22       Go ahead, Mr. Leighton.

23       MR. LEIGHTON:  Your Honor, in March of 1998 we had

24  filed a proposed discovery plan.  The Government did not

25  cooperate in that.

20

1    THE COURT:  I saw that.

2    MR. LEIGHTON:  I just wanted to bring that to your

3  attention.

4    THE COURT:  That is still where you want to go in

5  Horn I with the discovery.

6    MR. LEIGHTON:  Yes.  The second thing, and Mr. Horn

7  just reminded me, there are two IG's reports, one of which I

8  correctly identified with respect to the allegation of

9  eavesdropping.  It was a joint report by CIA IG and State

10  Department IG.

11    There is, yes, a second report that the CIA IG, and

12  unfortunately we don't have the representation of the IG's

13  office that if the Court ordered that --

14    THE COURT:  What does it deal with?

15    MR. LEIGHTON:  That deals with Special Agent Horn's

16  allegation that the CIA defendant in Horn I, the same CIA

17  defendant in Horn I, took a confidential DEA informant's

18  statement and passed it on to the Burmese Government which is

19  a violation of law and that when Horn learned of that and

20  complained strenuously as did DEA headquarters, we believe

21  that that gave the Defendant CIA agent a motive to

22  eavesdropping and get Horn out of the country because the Horn

23  I complaint talks about retaliation as a result of it and it

24  is actually mentioned in the complaint.

25    That report has been concluded.  We have not seen

21

1    it.  We believe we are entitled to it.

2          THE COURT:  I know Mr. Moody because he practices

3    here and I have had him before me before, but I do not know

4    you at all.  Tell me a little about yourself and your

5    background, if you would.

6          MR. LEIGHTON:  When I graduated from law school, I

7    clerked for a U.S. District Court Judge Myron D. Crocker in

8    the U.S. District Court for Eastern District of California at

9    Fresno.  He is still an active judge and he was appointed by

10   President Eisenhower in 1959 and he is still there.

11         When the bar results came out, I was a federal

12   prosecutor for the U.S. Attorney's Office for the Eastern

13   District of California beginning January of 1980.  1981 I

14   became the organized crime drug task force attorney there in

15   that office that required security clearances dealing with

16   organized crime and that is where I first met Special Agent

17   Horn, who was a DEA agent working on a number of task force

18   cases.

19         In October of 1986 I went into private practice and

20   practiced bureaucratic law, i.e., going after the Government.

21   That is what I do.

22         THE COURT:  Thank you, Mr. Leighton.

23         MS. GOLDFLUSS:  If I may, Your Honor, I would like to

24   start out with a very important point dealing with an

25   impression that it appears Plaintiff has attempted to give

22

1   that there is massive stonewalling on the part of the

2   Government agencies in this case, that they want it, we won't

3   give it.   They want it, we won't give it and that is it.

4           The concern of the Government has been to date

5   multifaceted but first and foremost Plaintiff's counsel, as we

6   understand it, does not have the security clearances that

7   would be required to provide Plaintiff's counsel with the

8   information that he has demanded, and it would be contrary to

9   Government policy for the U.S. Attorney's Office to hand over

10  information whether it be an OIG report or discovery or

11  anything else like that without assuring that this person has

12  been demonstrated by some independent authority to be

13  trustworthy and will abide by that.

14          We are not trying to hide information from Plaintiff

15  out of fear that he will uncover gross governmental

16  misconduct, and it is of concern because there appears to be a

17  section of the status report that was filed that we only

18  received very recently and so we did not have a chance to

19  respond that we refused to allow discovery in Horn I.

20          Discovery was stayed by Judge Greene in Horn I

21  because of the pending Bevins issue.   Qualified immunity

22  issues often are a basis for the stay.   That as of the time

23  the Government dismissed its appeal in Horn I the Plaintiff

24  was free to serve whatever discovery it wanted and it served

25  none.   The Plaintiff is concerned --

1          -     THE COURT:  What happened to the appeal and the

2    Government's position I take it since you dismiss it is you

3    are ready to go forward with discovery in Horn I assuming we

4    work out the classified issues.

5          MS. GOLDFLUSS:  Your Honor, if we had some basis to

6    say give us another opportunity to demonstrate to you that

7    Judge Greene's ruling that the extra territorial application

8    of the Fourth Amendment was clearly established in August of

9    1993, we would stand up and request that you hear that again.

10          THE COURT:  For purposes of my coming into the case

11    as a new judge, it is really the law of the cases, isn't it?

12          MS. GOLDFLUSS:  It would be law of the case unless it

13    presents a manifest in justice to subject these Bevins

14    Defendants to years and years of this kind of prosecution as

15    it has been for them.

16          THE COURT:  Let me say this, from this point it is

17    not going to be years because I have the case.

18          MS. GOLDFLUSS:  We understand that, Your Honor.

19          THE COURT:  I can't account for the last five years

20    but I can account for the next year.

21          MS. GOLDFLUSS:  If Your Honor would entertainment

22    grounds that the decision itself, that the law was clearly

23    established in 1993 as to the extra territorial breach of the

24    Fourth Amendment, that that decision itself presents a

25    manifest injustice --

1          THE COURT:  How would I do that?

2          MS. GOLDFLUSS:  Because it is clearly wrong.

3          THE COURT:  Why didn't you maintain your appeal then?

4          MS. GOLDFLUSS:  Your Honor, the Justice Department

5    has its reasons.  It is a huge department and there are

6    various concerns that often have nothing to do with a given

7    case.  I think Your Honor understands that.

8          Unfortunately my Bevins Defendants have been

9    subjected to that and when put between a rock and a hard place

10   --

11         THE COURT:  Wasn't there a conflict of interest then

12   if they wanted to pursue their own appeal and wouldn't it be

13   justice policy to let them?

14         MS. GOLDFLUSS:  Yes.

15         THE COURT:  And they did not.

16         MS. GOLDFLUSS:  They were advised and they made the

17   determination that they are going to go with Justice rather

18   than part with Justice and that, of course, is a decision that

19   would be made understandable as well.

20         THE COURT:  So we are ready to go forward with

21   discovery?

22         MS. GOLDFLUSS:  Your Honor, if we could find some way

23   of arguing that Your Honor might see the legal issue, the

24   dispositive legal issue, differently if we could find some way

25   to do that, then we would.  But as you know, the D.C.

1   Circuit's Kimberland case reinforces this notion of law

2   of the case and the finding is clearly established.

3          We will have to wait for the day of appeal, if that

4   comes, to raise the issue again which sort of seems a shame

5   but we really cannot honestly credibly say to you, Your Honor,

6   we think that you should review it at this point.

7          THE COURT:  That is helpful.  Thank you.

8          MS. GOLDFLUSS:  I have been looking, Your Honor.

9   There was the case that was decide between the time that the

10  issue was briefed and time that Judge Greene --

11         THE COURT:  I understand that Judge Greene relies on

12  Crawford El in his opinion and Crawford El has been up and

13  down several times.  It happens to be my case.  I have it back

14  for the fifth time on remand now and I have new summary

15  judgment motions in Crawford El that I am now writing an

16  opinion on.  I just got the final reply briefs.

17         I understand that some of these issues can go up and

18  down a number of times.  With the law of the case here it

19  seems to me that it is time to get the discovery going, to

20  work off the classified issues and get the discovery going on

21  Horn I.

22         Why would you oppose delinking the two cases then?

23  Wouldn't be simpler if we went ahead and deconsolidated?

24         MS. GOLDFLUSS:  Let me go ahead and explain

25  something, Your Honor.  There are no other Plaintiffs except

1   for Mr. Horn and the basis of Mr. Horn's -- we have set

2   this out in opposition to Plaintiff's motion to

3   deconsolidate.

4        There is basically one claim that we know about.

5   That goes for the class-action and for Horn I, that is an

6   allegation that on August 12, 1993, a CIA employee and a State

7   Department employee were engaged in the collective process of

8   tapping a phone and then disclosing information to other

9   Government agents, period.

10       That is all that we know.  This is one and the same.

11  Plaintiff's standing to be a named Plaintiff in Horn II is

12  based on the allegations of Horn I, and with respect to other

13  specific allegations with respect to Horn II, there are none,

14  which brings me to the next issue and that is -- with respect

15  to the stonewalling issue, I just want to make one other point.

16       And that is, Plaintiff says that we refused to permit

17  Plaintiff to interview DEA agents.  The DEA was attempting to

18  abide by the Touhey regulations and Plaintiff should not

19  characterize as stonewalling an agency's efforts to comply

20  with the law.

21       That is the difficulty of Plaintiff raising sporadic

22  episodes of discovery issues which is what this OIG

23  investigation report is and I think there is something else

24  that Plaintiff made reference to, the cable issue.  They

25  demand to have this stuff, and they demand to have it now.

1          -     No one is stonewalling but let's litigate in an

2     orderly fashion.  If there are clearances which are going to

3     be given, let's decide that issue and then let's have a

4     security clearance procedure in place for purposes of filing

5     things, and then let's sit down and get a discovery plan

6     together and I would like to confer with Plaintiff's counsel

7     on putting together a discovery plan and let's get going.

8          But to start a lawsuit out saying we demand this and

9     we demand that is crazy.  So with respect to that, we are not

10    stonewalling.  Let's do things in an orderly fashion and no

11    one will get hurt including the national security interest.

12         Plaintiff represented in his status report that the

13    reason we did not file a response to the first amended

14    complaint was that we did not know whether it was filed or not.

15         There is a consent motion to stay proceedings that

16    Plaintiff consented to on the record.  The Defendant, with the

17    consent of Plaintiff, moved to stay the proceedings in Horn II

18    pending such time as the Plaintiff's counsel is in a position

19    to draft a complaint that states facts upon which a claim can

20    be made.

21         Right now the class-action complaint talks about

22    unnamed individuals who were victimized in unnamed countries

23    during somewhere between a two-year period.  It is impossible

24    for the Defendant to investigate the allegations of the

25    complaint when Plaintiff's counsel is not in a position to

1    receive from his clients the facts that give rise to the

2    allegations of wrongdoing on the part of the Government.

3            THE COURT:  What is the date that motion?

4            MS. GOLDFLUSS:  I believe it was one of the last

5    things filed in Horn II and probably was 11-98.

6            THE COURT:  I wasn't familiar with that.

7            MS. GOLDFLUSS:  That is a consent motion to stay the

8    proceedings in lieu of motion for a more definitive statement

9    which we certainly would have been entitled to because it is

10   impossible to investigate the allegations of the complaint.

11           Plaintiff agreed with me and that is not to say that

12   we believe we are taking any position on whether or not

13   Plaintiff's counsel ought to be cleared.  We are simply saying

14   that we cannot respond to the complaint.

15           What we would like to do is to first get some sort of

16   decision as to whether or not Plaintiff's counsel is cleared

17   or is not cleared, and then to suggest that instead of

18   showering the Court with more paper about a motion for a

19   definitive statement and how we cannot size up these

20   allegations, for Plaintiff's counsel to take serious the

21   grounds upon which he consented to that motion and, in

22   drafting a second amended complaint, provide facts.

23           The only way he can do that, of course, is if we have

24   a program in-place to ensure the national security interest.

25   So what we would like to do is to have Plaintiff's counsel,

1  and Mr. Moody raised an interesting code concept that

2  apparently was applicable in the Iraqi litigation, if he could

3  draft a motion as a suggestion, I can put that through my

4  folks and they can take a look at this and they can see if

5  they have any legitimate objections or perhaps even

6  suggestions how to modify it to work it for this particular

7  case, and then we can decide on that, and then we will have a

8  procedure in place, and then he can go ahead and amend his

9  complaint in accordance with the order, and we can have a

10  first amended complaint or second amended complaint that has

11  information in it so that we can then go ahead and see what it

12  all means.

13         Then after that, it is likely that we would go ahead

14  and move in some direction to dismiss basically for many of

15  the same reasons that we moved the first time but let's see.

16  There may be some new information that may eliminate some of

17  our defenses.

18         THE COURT:  You had a motion to dismiss the first

19  complaint in Horn II?

20         MS. GOLDFLUSS:  Yes, we had a pending motion to

21  dismiss or, in the alternative, for summary judgment.

22         THE COURT:  That was never ruled upon because the

23  first amended was lodged?

24         MS. GOLDFLUSS:  It was never ruled upon because

25  Plaintiff responded by saying that he wanted, first he asked

1   for 60 days to respond because he needed to get the

2   affidavits of all of these different people around the globe

3   and that it will be very time-consuming, and since he was not

4   cleared, it would be difficult.

5          And then there were exchanges of motions for

6   protective orders to deal with how Plaintiff was going to

7   manage to respond to the motion to dismiss so the fate of the

8   motion got caught up in the exchange of paper regarding the

9   protective order issue.

10         As you know, the protective order issue was not

11  really solved until December of 1998 when Judge Greene issued

12  a procedure but still outstanding was the question of whether

13  or not Plaintiff's counsel had the clearance to receive from

14  his client the information he would need in order to do this

15  so we were still in a stalemate.

16         That is the fate of that.  There was never any

17  official response although Plaintiff did end up filing a

18  belief on the Rizzo issue, Rizzo being a Supreme Court case

19  that governs pattern and practice and rather than respond to

20  that at that time because he had then launched a first amended

21  complaint, we waited and we looked at that complaint and it

22  was clear that even if it was filed, we would not be able to

23  respond to it so I called him and I said let's move to stay

24  everything until we figure out what is going on.  He said

25  yes.  I just want to clear that up.

31

1        With respect to be consolidation to --

2            THE COURT:  Give we just a moment.

3        (Pause.)

4            THE COURT:  Do you have a copy of that motion because

5    it is not in the Court's file?

6            MS. GOLDFLUSS:  I will fax it over to chambers as

7    soon as I get back from this hearing.

8            THE COURT:  Mr. Leighton may have a copy.

9            MR. LEIGHTON:  What I have is one I received February

10   18 of 1997.  See if that is the one.

11           MS. GOLDFLUSS:  Yes, it was served on February 12,

12   1997.

13           MR. LEIGHTON:  That is my only copy.

14           THE COURT:  I will make one for you.

15           MS. GOLDFLUSS:  Just in order to save time before

16   Your Honor rules on the Plaintiff's motion for 30 days to file

17   a second amended complaint --

18           THE COURT:  You are going to be in the same posture

19   then.

20           MS. GOLDFLUSS:  If there is a determination that

21   Plaintiff will have a cleared counsel, whoever that might be,

22   so that Plaintiff can then convey the facts upon which these

23   allegations are based, then hopefully this second amended

24   complaint would have enough to sustain a motion for a more

25   definite statement, and that is what we would hope to see.

1    There appears to be on Plaintiff's part and I

2  understand the frustration that they feel in trying to get

3  something litigated and yet at every wall there is a

4  classified determination that there be some repose in this

5  case about the notion that the decision about whether or not

6  something is classified, it ought not to be subject to debate

7  each and every time there is a determination by an agency that

8  something is classified.

9    If Plaintiff wants to -- I do not even know that

10  there is a vehicle by which a private citizen can go ahead and

11  challenge the Government's determination that something is

12  classified.

13    It seems as though that must be the most

14  discretionary decision that the Government can make.  But

15  certainly there is always in-camera procedures for supporting

16  our argument that something is classified even if it does not

17  mean that we necessarily put the sensitive information before

18  the Court and the Court is familiar with a series of cases

19  that hold that.

20    We discussed that in our motions in connection with

21  the protective order and procedures that exist.  We would hope

22  that we would save some wear and tear in this case by not

23  fighting over every determination that something is classified

24  as though it were some sort of effort by the Government to

25  stonewall because that is not what is going on here.  These

1    laws and policies have been in place long before this

2    case was brought.

3           What I would appreciate doing is sitting down with

4    Plaintiff once we figure out about the clearance issue, to sit

5    down with Plaintiff's counsel and discuss a discovery plan

6    with respect to Horn I.

7           I have seen that discovery plan.  I was not counsel

8    of record at the time but it is overwhelming to me and I guess

9    I would like to see whether or not we can pare somethings down.

10          There is an army out there of people who might not

11   need to be involved in this case, and to some extent I think

12   we can try to get it reasonable.  If we cannot get anything

13   together, then we can file our joint discovery plans, but at

14   least we should make the effort to do it together.

15          I think that is all I have, Your Honor.

16          THE COURT:  Do you want to address why the cases

17   should not be unsealed except as to anything that is reviewed

18   by the court security officer and found to be classified?

19   Should there be any sealing other than classified information?

20          MS. GOLDFLUSS:  There was never a motion to seal the

21   class-action.  There were concerns about Plaintiff's ability

22   to respond to the motion to dismiss and for summary judgment

23   without getting into all sorts of classified information but

24   there was never a motion to seal the class-action.

25          THE COURT:  In answer to my question then, you have

1   no reason to oppose unsealing everything that is not

2   classified?

3        MS. GOLDFLUSS:   I do not think that we would object

4   to putting on the public record items that are not

5   classified.  But I would like to consult, if I could, perhaps

6   to that specific question that you have.  Perhaps I could file

7   something today and fax it to chambers and to counsel, just

8   one page just so that I get a chance to consult with the

9   various counsel because there are several positions on whether

10  or not there's any reason to keep things sealed apart from

11  classified information.

12       THE COURT:   I would think the court security officer

13  could review the complaint, after they consult with the

14  agencies affected as they always do and delete the name of the

15  Defendant that is classified and maybe the name of the country

16  or whatever.

17       I would think there's no reason why that could not be

18  on the public record then.

19       MS. GOLDFLUSS:   Right.  Do you mind if Ms. Johnson

20  speaks for a second?

21       MS. JOHNSON:   Your Honor, I would like to give some

22  perspective as to why the case became classified and it may be

23  helpful to the Court on how to proceed.  I think it is

24  important to understand how we got where we are on that case

25  and it may be helpful.

35

1       When the case was filed, it was filed publicly

2   on the record without going to the agencies whose information

3   it contained and asking them to take a look at it.   It was

4   just placed out there.

5       When the Defendant agency became aware of it, even

6   before the Defendants became aware of it, and when our office

7   became aware of it, we tried to move quickly to try and do

8   damage control essentially, and we have been trying to do that

9   ever since.

10      At that time there was no court security officer in

11  place.   We could not agree between the parties what

12  information was classification or which should be respected.

13  And so it was very difficult at that point to try to come to

14  some agreement about what would or would not be on a public

15  record.

16      Our motion directed to the Court was actually to seal

17  the case only with regard to substantive motions.   It was not

18  actually to place the entire case under seal and to have the

19  case captioned in a way that it would not be classified by

20  virtue of simply the name of the case.

21      Again we were unable at various points in time to

22  come to any kind of agreement among the parties.   In effect,

23  the case was essentially put totally under seal not only

24  because of that reason but also just to facilitate what would

25  and would not be under seal when filed with the court, even

36

1   for the clerk's office convenience.

2          I don't think we have ever been in the position where

3   we did not feel that what could be on the public record should

4   not be.  At the time the class-action was filed, in fact, we

5   proceeded in a way to try to keep as much of that case on the

6   public record as possible because, of course, that was the

7   case that involved even more policy implications where the

8   allegations at least --

9          THE COURT:  How did the sealing order come about in

10  the class-action?

11         MS. JOHNSON:  It did not.  The class action was never

12  under seal.  When they were consolidated those portions of the

13  case that were under seal stayed under seal.  The intent was

14  that the class-action would proceed on the public record and

15  that the case together would have been captioned --

16         THE COURT:  The clerk's office doesn't have a way to

17  do that when it is consolidated I don't think.

18         MS. JOHNSON:  That is how we got where we are.  Thank

19  you, Your Honor.

20         MS. GOLDFLUSS:  I think, Your Honor, keeping the

21  cases consolidated is helpful only because so much of one will

22  affect the other, and certainly with respect to the fact that

23  there is a jury trial for the Bevins actions -- I mean we have

24  age discrimination cases and race discrimination cases where

25  you have a jury for one and not the other and they are the

1   same case.

2           There are ways to do that.  Actually I think that

3   because there is so such discretion as to how we handle it it

4   is all semantics anyway.  I think it would be easier.

5           THE COURT:  All right.

6           MR. LEIGHTON:  Thank you, Your Honor.  Just a few

7   things for clarification.  When the Horn versus Huddle case

8   was filed and Ms. Johnson had called me and asked if we would

9   stipulate to seal the case, we did not believe that there was

10  anything in there that was classified.

11          This was later found in a declaration where Mr. Moody

12  offered to sit down with the CIA and Madeline Johnson and work

13  out country codes, et cetera, at that time and this is in

14  1994.

15          Ms. Johnson responded to Mr. Moody's request and

16  said, no, we are not going to meet with you.  She makes it

17  sound as though or Ms. Goldfluss makes it sound as if Mr.

18  Moody's statement this morning was the first time she has

19  heard about it.  We have been trying to do this since 1994.

20          With respect to the issue on the clearance and that

21  is why they could not give me anything and all of that stuff,

22  for four years I have been requesting the Department of

23  Justice to give me the paperwork and they have refused, and it

24  was only after or as a result of Judge Greene's order that

25  that occurred.

1    -    She made a statement that we have been free to

2  do discovery in Horn versus Huddle ever since they dismissed

3  their appeal.   That is not the position that they have taken

4  and Judge Greene's statement with respect to protective

5  orders, et cetera, will apply to that case as well.

6        Secondly she mentions that on DOJ controlling the

7  witnesses that all she was trying to do is to force us to

8  comply with the Touhey regulations.   First of all, we do not

9  believe that the Touhey regulations apply to a federal officer

10  in federal court, but even if they did, the problem, Your

11  Honor, is they are filing motions for summary judgment and to

12  dismiss based upon, in part, declarations of DOJ witnesses.

13        When we want to counter those witnesses with

14  declarations, they say you cannot talk to them.   If they do

15  not file declarations, then we do not need declarations.   We

16  will just rely on depositions.   If they file declarations, we

17  need to depose people because obviously it would be an abuse

18  of discretion to grant summary judgment without allowing

19  discovery as to the pertinent facts.

20        Your Honor, the same problem arises as a result of

21  their motion to dismiss the class-action lawsuit.   They submit

22  three declarations in support of their motion for summary

23  judgment on the class-action lawsuit, one from each agency

24  official claiming that they do not do this.

25        They have these regulations.   They have to be

followed, and because there is never a request to

eavesdrop in those countries during those time frames,

therefore, it did not occurred.

How do I respond to that unless I can depose them?

We had agreed, as the Court can see, to stay my

response to the class-action motion to dismiss because I told

either Madeline Johnson or Lisa Goldfluss at the time the only

way I can respond is declarations of witnesses that you will

contend I cannot file when the case is not under seal, that

you will contend is secret, et cetera.

We were prepared to do that.  We said, okay, fine, we

don't need any more heat about disclosing things like that so

we agreed to do that.  That is the only reason that has been

stayed and Judge Greene was going to expedite things in 1998

which has not occur.  We filed a first amended complaint.

With respect to my statement about the Stew Threes,

that's not classified so can certainly amend the complaint to

put that in there before my clearance and I understand that

should be done shortly.  Ms. Gunning can direct her attention

to that.

The next item is Ms. Goldfluss's statement about we

should not be having all these debates about what is

classified.  It is basically totally discretionary.  Your

Honor, once we get our clearances, we should not have to fight

about that at all.  They just have to give it to us regardless

40

1  of the classification.  So that should not be much of an

2  issue for the Court.

3        It will be an issue for Ms. Gunning with respect to

4  what remains under seal and what is not but it certainly

5  should not be something they cannot give us.

6        With respect to the request for feeling the Court out

7  with respect to they want the Court to reconsider Judge

8  Greene's decision, Your Honor, we were precluded from doing

9  discovery after the February 1997 hearing because they were

10  taking it up on appeal.  They did.

11        The day before their appeal brief was due they

12  requested an extension of time to file their brief.  The day

13  their brief was due on the extended date, they dismissed it.

14  That is too long.  That is too long ago and we have been

15  without the ability to conduct discovery or even interview any

16  of the agencies.

17        They want now time to sit down and work on a

18  discovery plan and she states here that my discovery plan is

19  overwhelming.  Your Honor, I requested participation of the

20  Government back before I filed that in March.  They did not

21  want to participate.  I filed mine March 13 of 1998 almost two

22  years ago.  They never responded to that.

23        I think it is too late to sit down and have them

24  disagree with our discovery plan.  If they want to give me

25  their discovery plan, that is fine.  I do not believe that we

41

1  should now delay doing discovery to sit down and for

2  them to tell me that you don't need to depose this person or

3  that person.  Of course, I will listen to them, but the Court

4  should not delay its rulings for us to sit down and discuss

5  this with them.

6           THE COURT:  I think I have the picture.

7           MR. LEIGHTON:  Thank you.

8           THE COURT:  Let me tell you what I think we are going

9  to do.  Not what I think we are going to do, what we're going

10 to do.  First of all, the court security officer will today

11 grant Mr. Leighton the clearance at top secret level and go

12 through a briefing with Mr. Leighton on how that will work.

13          Mr. Moody has not yet completed all of the necessary

14 paper so he has not yet been cleared, but Mr. Moody can still

15 complete that.  The new counsel will have to complete

16 paperwork to see if we can process her as well and get her

17 cleared, but Mr. Leighton can be cleared and authorized to

18 receive classified information today by the court security

19 officer.

20          The protective order that Judge Greene did in

21 December of 1998 will remain in place right now.  I will work

22 on an order unsealing everything that is not classified and

23 have the court security officer review everything for

24 classification so that everything can be unsealed unless it is

25 classified and under Judge Greene's protective order

42

1   everything in the future will be submitted to the court

2   security officer before it is filed so it can be reviewed for

3   classification before it is placed on the public record.

4           I will put a gag order in the unsealing order so that

5   anything that has not been placed on the public record by the

6   court security officer as unclassified should not be publicly

7   discussed.

8           So I think that that kind of a gag order would be a

9   fairly standard kind of thing.  It would not pose a problem.

10  In other words, there would not be a gag on anything that is

11  on the public record.

12          The court security officer has begun her review of

13  everything that has been filed and this will be fairly

14  expeditious when it can be completed and filed on the public

15  record.  By the time I have the order ready she will probably

16  have ready what can be placed on the public record.  I think

17  anything not on the public record should not be discussed by

18  counsel with anyone.

19          In terms of ongoing procedures beyond Judge Greene's

20  protective order, it may be that some more detailed procedure

21  would be helpful.  I do not have a strong view on that

22  because, if everything being filed has to go to the court

23  security officer, that ensures that classified information is

24  deleted before it is filed on the public record.  But if

25  counsel thinks some additional provisions in the protective

43

1    order-are necessary, I can consider them.

2            I think to the extent that that will clear away a lot

3    of the issues today, counsel may be able to meet and talk

4    about exactly what discovery is going to go forward now

5    because the Government, in effect, concedes that discovery in

6    Horn I has to go forward because they have no basis for

7    opposing discovery at this stage not having appealed Judge

8    Greene's rulings.

9            It seems to me we probably should come back in about

10   two weeks after you all have had an opportunity to see if you

11   can agree on all of the initial discovery and I will referee

12   any disagreements and I will rule on any disagreements.  I

13   will rule on any disagreements about what discovery should go

14   forward and what form it should take.

15           I suppose in light of that ruling that may affect

16   when you want to file your second amended because you will

17   have access to some information sooner rather than later, but

18   we can talk about that in a couple of weeks whether you still

19   want to go forward with that in 30 days from now or whether it

20   might affect whether you want to do that.  We don't have to

21   decide that today.  You may be able to get more information

22   since you are going to have access to classified information

23   now that might affect what you want to put in that second

24   amended.

25           MR. LEIGHTON:  May I speak to that for a moment?

44

1          -        THE COURT:  Yes.

2               MR. LEIGHTON:  Yes, I may have access to it but I do

3     not believe they're going to give me anything without me

4     serving document production requests and there is the 30-day

5     thing.  We know there is going to be objections, et cetera.

6               But since the Court has order that my security

7     clearance be granted and until co-counsel are provided their

8     security clearance, Agent Horn and I can sit down and we can

9     describe in detail and file the second amended complaint with

10    Christine Gunning so 30 days is still fine, Your Honor.

11              THE COURT:  As to those two specific IG reports

12    rather than going through a lengthy process, could not the

13    Government either disclose within 10 days or claim privilege

14    within ten days on those two IG reports?

15              MS. GOLDFLUSS:  Your Honor, I have not been privy to

16    those reports.  I have not read them.  I have not spoken with

17    the agency counsel about the disclosure of those reports.  We

18    can go ahead and undertake to identify any privileges

19    associated with them.

20              THE COURT:  I understand they may be classified and

21    if they are they will be filed with the court security officer

22    and then served only on Mr. Leighton since he will be the only

23    cleared counsel at this stage.

24              What about the cable?  Is it classified?  Let's do

25    the same with it whether it is classified or not, either

1   disclose it within ten days or claim privilege.

2        MS. GOLDFLUSS:  Yes, Your Honor, we will do that.

3   Your Honor, let me clarify something.  Judge Greene's June

4   1998 order directing the court security officer, I think it

5   was directing the court security officer to make available the

6   forms for Plaintiff's clearance --

7        THE COURT:  The determination to grant the security

8   clearance is not the Court's.  It is the Justice Department

9   security office.  I am not deciding that Mr. Leighton is

10  cleared.  Justice security has decided that.

11       MS. GOLDFLUSS:  I guess one question that I am

12  concerned to waive for the Government on behalf of the

13  executive branch is the extent to which the court security

14  office is an arm of the judiciary for purposes of this

15  proceeding --

16       THE COURT:  For purposes of this proceeding Jerry

17  Robino, the head of security for the Department of Justice,

18  has determined that Mr. Leighton will be provided access to

19  material up to the top secret level in conviction with this

20  case.  The Court has not determined that.  Mr. Robino has

21  determined that.  I am simply implementing that determination.

22       MS. GOLDFLUSS:  Okay. Insofar as a piece of

23  information would go to the top secret clearance level but is

24  information that the Defendants would want to assert the state

25  secrets privilege, and we understand the severity of that

1   privilege and what is required in order to assert it,

2   the order does not bar us from raising the state secrets

3   privilege even if the information is at the top secret level?

4   THE COURT:  He cannot use it if you claim the

5   privilege.  It would not precluded him getting a copy of it.

6   I mean he's going to be cleared to get a copy of it.  He

7   simply won't be able to use it in any public filing.  He will

8   be able to use it in connection with the litigation.

9   MS. GOLDFLUSS:  Okay.  If we have any further views

10  on that legal question, we might be providing the Court with

11  that.

12  THE COURT:  All right.  Since he is going to have the

13  clearance to receive the reports, even if you claim privilege,

14  he ought to be able to obtain the reports.  The question will

15  simply be whether he can make any use of them in any public

16  filing or ultimately before a jury or in some other fashion

17  which he would not be able to do unless ultimately they are

18  classified or the privilege is rejected.

19  MR. LEIGHTON:  Your Honor, just one clarification.

20  On the two IG reports, what is very critical about those it

21  would be the reports and the attachments.

22  THE COURT:  Right.

23  MR. LEIGHTON:  Okay.

24  THE COURT:  That would take away half of the

25  discovery that you probably need.  That is why we are going to

47

1  come back in two weeks to see what you get.

2      MR. LEIGHTON:  On the CIA IG report we understand

3  there are several drafts.  We would like the drafts as well.

4      THE COURT:  I do not know about drafts.  I will leave

5  that to them.  I frequently find privilege on drafts.  If you

6  get the file you will be happy.

7      MR. LEIGHTON:  Okay.  I will sit down, Your Honor.

8      THE COURT:  Since you have to come from California,

9  do you want to talk about when you want to try this again

10  toward the end of the month so we can have a couple of hours

11  anyway?  Is it easier for you on a Friday or a Monday?

12      MR. LEIGHTON:  I do a lot of work in Fresno federal

13  court.  They have their calendar on Monday so Fridays are

14  easier for me.

15      THE COURT:  Do you want to try January 28?

16      MS. GOLDFLUSS:  If I may, I hate to raise this but I

17  have very long scheduled annual leave planned.  I have not

18  taken any annual leave in a very long time.  I have had it

19  planned from the 17th until the 24th which actually cuts into

20  my 10 days to get the assertion of privilege over to you with

21  respect to the documents if, in fact, we do that.

22      I am a little concerned about that and about rushing

23  through five business days on these important issues.  What I

24  would like to do is to request that -- I understand this case

25  has been through --

1          THE COURT:  If you disclose the documents to Mr.

2   Leighton because he's going to have the clearance, I

3   understand the privilege claim could come later.  I don't know

4   if you are going to disclose them or if you are all going to

5   try to mandamus me or something.  I don't know what's going to

6   happen.  If you disclose the IG reports to him, there will not

7   be a problem.

8          MS. GOLDFLUSS:  Yes.  I think there may be some

9   bureaucratic issues in making that determination on the part

10  of the agency especially since this appears to be joint

11  CIA-State.  Although we understand that time is of the essence

12  in getting this case going, my concern is that by Friday there

13  will be one or two people who still haven't weighed in on this

14  important issue, and I guess what I would request is that,

15  first of all, that our determination that we be given until

16  after I get back, for example Wednesday, January 26, which

17  would be two business days after I get back to wrap up

18  whatever strings we need to.

19          Of course, if they decide to release the report and

20  we do not think there is going to be grounds for a privilege,

21  then we will try to get the reports to them as soon as

22  possible.

23          But I would like until the 26th, if I could, just to

24  not have to move for an enlargement on this issue because

25  there maybe some people chiming in, but the presumption should

1  be that we will be moving as quickly as possible on this.

2          THE COURT:  January 26 to disclose the reports and

3  make any privilege claim?

4          MS. GOLDFLUSS:  That is right, Your Honor.

5          MR. LEIGHTON:  I have no objection to a hearing on

6  February the 11th.

7          THE COURT:  I will not be available then.  I would

8  prefer if you are going to get the report on the 26th we could

9  still do the hearing on the 28th.  You'll have the report and

10  will know what it is.  The hearing is going to decide what

11  discovery is going forward.  You'll have it and I'll have it.

12          MR. LEIGHTON:  Okay.

13          THE COURT:  And you all ought to plan on meeting on

14  the 27th to see what agreement you can come to on discovery.

15          MR. LEIGHTON:  Your Honor, would it be okay with your

16  schedule to do it Monday, January 31.  But the only problem is

17  I have two ugly motions on January 28.  I can do it on January

18  31.

19          THE COURT:  January 31 at 10 a.m. is fine.  Then the

20  26th for disclosure or privilege claims is all right as well.

21          MS. GOLDFLUSS:  Thank you, Your Honor.

22          THE COURT:  Any other issues I need to decide today?

23          MR. MOODY:  Thank you, Your Honor.  Two ministerial

24  matters.  We filed a motion to admit Ms. Brookner pro hoc

25  vice.  She is a member of the bar of New York and has been 27

1  years with the CIA.

2         THE COURT:  It will be granted.

3         MR. MOODY:  Thank you.  And if we could ask the

4  Court's permission for the court security officer to provide

5  Ms. Brookner or Mr. Cooperstein with the necessary clearance

6  papers to begin their clearance procedures.

7         THE COURT:  Who is Mr. Cooperstein?

8         MR. MOODY:  He is a member of the bar of this Court

9  and he has been associate general counsel of the FBI from '95

10 to '98.  Worked for Carver and Cooper for a year and a half

11 and just opened his own practice.  He has an extensive

12 background in Bevins cases that would be particularly useful

13 in this case.  Ms. Gunning advises that she needs permission

14 from Your Honor in order to give them the necessary packages

15 to begin their clearances.

16        THE COURT:  I will ask her to give all of them

17 packages.

18        MR. MOODY:  Thank you, Your Honor.

19        MS. GOLDFLUSS:  Your Honor, there is one more issue

20 and that is pertaining to the continued operation of Rule 108

21 or whatever the correlative is under the new local civil

22 rules.  The meet and confer --

23        THE COURT:  That is what I am suggesting you do

24 before the next hearing.

25        MS. GOLDFLUSS:  With respect to any motion that's

51

1   brought apart from a dispositive motion, the local rules

2   require this and in this particular case it is extremely

3   helpful that the parties abide by that particular local rule

4   because we were served yesterday with a motion, with the

5   motion for pro hoc vice, and normally these are not an issue

6   but this woman happens to have worked for the CIA for 26

7   years, and I am allowed to have sometime and just call up and

8   see are there any grounds upon which we would object.  If we

9   could just establish that this rule operates notwithstanding

10  all the other complications of this case, it would be helpful.

11          THE COURT:  Okay.

12          MS. GOLDFLUSS:  Thank you.

13          THE COURT:  I will say one other thing in connection

14  with some comment that Mr. Leighton made.  My notion, or maybe

15  Mr. Moody said.  My notion is not to involve a magistrate in

16  this kind of a case with these classified issues but to handle

17  everything myself.

18          My notion is that I'll have status conferences to

19  keep the case moving along periodically and to resolve

20  discovery disputes from the bench as we go.  Motions to compel

21  would only be needed if I think I need a brief on the

22  question.

23          In the Alexander case I ended up writing opinions on

24  all of these motions to compel and everything.  It is a unique

25  case, and normally my practice is to try to rule from the

1  bench as we go as I have done today.

2          And so do not get into motions to compel or motions

3  like that until we have talked about them at a status because

4  most of these things I find I can probably resolve from the

5  bench without a lot of clutter and paperwork.

6          MS. GOLDFLUSS:  In view of that, Your Honor, one more

7  point.  Is it possible that we could have a standing order

8  that any request for the transcription of the hearing be

9  approved by the Court because we did try to get a copy of the

10  transcript for the October 28 hearing and the court reporter

11  refused to do it without a motion.

12          THE COURT:  I will do a standing order so that the

13  transcript will be provided to the court security officer for

14  classification and review as will this transcript today

15  because obviously the name Huddle will have to come out and

16  Horn I substituted for Horn versus Huddle.

17          Any other issues you want to raise?

18          MR. LEIGHTON:  Two quick items, Your Honor.  Has the

19  Court agreed that we're going to put off the motion to

20  deconsolidate and worry about that later while we do discovery?

21          THE COURT:  I am going to decide it by the time you

22  all come back.

23          MR. LEIGHTON:  The second thing, not with respect to

24  this one coming up on January 31st, does the Court at all ever

25  entertain status conferences by telephone?

1        -       THE COURT:  Yes, but not that one.

2              MR. LEIGHTON:  I understand not that one, and

3  obviously Mr. Moody or Mr. Cooperstein could attend.  It gets

4  expensive from California.

5              THE COURT:  I agree.  In that particular one I want

6  to really set out the parameters of where we are going and

7  what the time frame is and how we are going to get this case

8  wrapped up.

9              THE COURT:  Anything else you want to raise?

10             MS. GOLDFLUSS:  No, Your Honor.

11             THE COURT:  Thank you very much, counsel.

12         (Proceedings concluded at 11:45 a.m.)

13                  CERTIFICATE OF REPORTER

14             I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

15  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

16  WILLIAM D. MCALLISTER

17  OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25