RECEIVED
U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
2000 FEB 23 PM 3 54

NANCY M.
MAYER-WHITTINGTON
CLERK

|  |  |
|---|---|
| RICHARD A. HORN, | ) |
| Plaintiff, | ) |
| v. | ) C.A. 94-1756 |
|  | ) C.A. 96-2120 (RCL) |
| MADELEINE ALBRIGHT, *et al.*, | ) |
|  | ) FILED UNDER SEAL |
| Defendants. | ) |

## UNITED STATES'
## MOTION FOR RECONSIDERATION

The United States hereby respectfully moves for reconsideration of that portion of the

February 1, 2000 Order requiring the United States to produce to plaintiff documents containing

information with respect to which the United States has asserted privilege.  This motion is based

on the attached memorandum in support thereof and the entire record in the case.

Defendants' counsel has conferred with plaintiff's counsel regarding this motion and

plaintiff's counsel do not consent to this motion.  A motion granting the relief sought is attached.

Respectfully submitted,

WILMA A. LEWIS, D.C. Bar # 358637
United States Attorney

MARK E. NAGLE, D.C. Bar # 416364
Assistant United States Attorney

LISA S. GOLDFLUSS, D.C. Bar # 417787
Assistant United States Attorneys
555 Fourth Street, N.W., 10th Fl.
Washington, D.C. 20001
Tel.: 202-514-7198
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD A. HORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. 94-1756 |
| v. | ) | C.A. 96-2120 (RCL) |
| | ) | |
| MADELEINE ALBRIGHT, *et al.*, | ) | |
| | ) | FILED UNDER SEAL |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES'
MOTION FOR RECONSIDERATION**

**INTRODUCTION**

On January 11, 2000, this Court ordered, inter alia, that the government either "disclose to

Plaintiff the final Inspector General ("IG") reports and attachments by January 26, 2000 or claim

privilege from such disclosures." January 11[th] Order.[1]  Subsequently, on February 1, 2000, the

Court modified that order by requiring defendants to disclose the IG reports and attachments

notwithstanding any assertion of privilege:

> Defendants shall have up to and including February 2, 2000 in which to comply .
> with the Court's January 11, 2000 Order requiring them to produce the Inspector
> General Reports ("IG Reports") and their attachments *and* make any claims of
> privilege with respect to use of such reports.

February 1st Order (italicized emphasis added).[2]

---

[1]  The operative deadlines for the government's assertion of privileges and production of
the documents subsequently were enlarged, respectively, to February 7, 2000 and  February 25,
2000.  See February 3, 2000 Order.

[2]  During the January 7, 2000 Status Conference, the Court stated that the United States
would be required to disclose the IG reports to plaintiff's counsel even if information in the
reports were ultimately the subject of the state secrets privilege.  See Transcript of Status Call,

At the time of the February 1st Order, the Court had neither reviewed the documents that

it ordered to be produced to plaintiff nor heard from the government with respect to its assertions

of privilege or the grounds therefor.   The premise of the Court's ruling that the government

produce to plaintiff documents for which the government might yet assert the state secrets or

statutory privileges appears to be suggested in the Court's January 11th Order:

> [I]t is further ordered that the Court Security Officer, pursuant to the
> determination of the Department of Justice, shall grant plaintiff's attorney Brian
> Leighton, a Top Secret security clearance.

January 11th Order at 2.   See also Tr. at 45 ("For purposes of this proceeding Jerry [Rubino], the

head of security for the Department of Justice, has determined that Mr. Leighton will be provided

access to material up to the top secret level in [connection] with this case") (quoting the Court).

The government respectfully urges the Court to reexamine the legal grounds for requiring

the government to produce to plaintiff, prior to the Court's determination whether to uphold the

government's assertion of the state secrets and statutory privileges, information for which the

privileges have now been asserted.   Those privileges provide, as a matter of law, relief from

---

January 7, 2000 ("Tr."), page 45, line 22 to page 46, line 8.   But see Tr. at page 49, lines 19-21.
The government indicated at the time that it might be providing the Court with further briefing on
that legal question.  Tr., page 46, lines 9-11.  The government was in the course of preparing to
do that when the January 11, 2000 Order was issued, obviating the need for further briefing of the
issue.  The issuance of the February 1st Order renewed the legal issue as ripe for the Court's
reconsideration.

   The government appreciates, and joins in, the concern of this Court and of plaintiff to
proceed apace with this consolidated litigation, and has not lightly permitted time to elapse
before filing this motion for reconsideration.  Preparation of the motion has required coordination
among various litigating and non-litigating components of the Justice Department, and other
agencies, at various levels, treating, as the motion does, matters concerning the disclosure by the
Justice Department to individuals outside the Executive Branch of classified information originally
classified by other agencies.  The government believes that the resulting motion provides the
Court and plaintiff with the benefit of the coordinated development of the position of the
Executive Branch regarding this matter.

disclosure of the subject material, and not simply relief from its introduction into evidence.

Moreover, the determination of the Justice Department Security Officer regarding plaintiff's

attorneys' security clearance -- upon which the Court appears to rely as the underpinning of its

Order -- is legally insufficient to require the Central Intelligence Agency ("CIA") and National

Security Agency ("NSA") to disclose to plaintiff or his counsel the putatively privileged, classified

information at issue. Plaintiff's counsel's security clearance does not affect the privileged status

of the information, and does not authorize access by plaintiff's counsel to the subject classified

information without an Executive Branch determination that plaintiff's counsel has a need-to-

know the information under Executive Order 12958. The legal prerequisites for such access have

not been satisfied. The government thus respectfully urges the Court to reconsider its legal

authority to order disclosure to plaintiff of the subject materials.

**ARGUMENT**

**I.    THE STATE SECRETS PRIVILEGE PROTECTS AGAINST
       DISCLOSURE TO PLAINTIFF OR HIS COUNSEL
       OF ANY INFORMATION SUBJECT TO THE PRIVILEGE[3]**

The state secrets privilege protects against disclosure of the privileged information, and

not merely its use at trial. See United States v. Reynolds, 345 U.S. 1, 6, 10-11 (1953) (Air Force

Secretary's formal claim of state secrets privilege "under circumstances indicating a reasonable

possibility that military secrets were involved" was "sufficient showing of privilege to *cut off*

---

[3] The United States has provided comprehensive briefing on the law governing the procedural and substantive aspects of the state secrets privilege in its Memorandum in Support of the United States' Assertion of State Secrets and Statutory Privileges Regarding Two Inspector General Reports and Attachments, filed February 7, 2000 ("U.S. Mem.") at 5-16. That discussion is not duplicated herein but is incorporated by reference as the requisite foundation for the instant motion.

*further demand for the document*" notwithstanding plaintiff's showing of necessity for its disclosure; privilege was one "against revealing military secrets") (emphasis added); <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 401-02 (D.C. Cir. 1984) (disclosure to litigant defense contractor of state-secret privileged information would pose risk of harm to national security notwithstanding "attendant safeguards"); <u>Molerio v. FBI</u>, 749 F.2d 815, 821 (D.C. Cir. 1984) ("[n]o competing public or private interest can be advanced *to compel disclosure of information* found to be protected by a claim of [state secrets] privilege") (quoting <u>Ellsberg v. Mitchell</u>, 709 F.2d 51, 57 (D.C. Cir. 1983), <u>cert.</u> denied sub nom. <u>Russo v. Mitchell</u>, 465 U.S. 1038 (1984)) (emphasis added); <u>Ellsberg v. Mitchell</u>, 709 F.2d at 61 ("[i]t is well settled that a trial judge called upon to assess the legitimacy of a state secrets privilege claim should not permit the requester's counsel to participate in an <u>in camera</u> examination of putatively privileged material"; "it is imperative that the procedure used to evaluate the legitimacy of a state secrets privilege claim not force '*disclosure* of the very thing the privilege is designed to protect'")(quoting <u>Reynolds,</u> 345 U.S. at 8)(emphasis added); <u>see</u> <u>also</u> <u>id</u>. at 56 ("[i]t is now well established that the United States, by invoking its state secrets privilege, may block discovery in a lawsuit of any information that, if disclosed, would adversely affect national security"); <u>Halkin v. Helms</u> ("<u>Halkin II</u>"), 690 F.2d 977, 990 (D.C. Cir. 1982) ("[<u>Reynolds</u>] establishes that secrets of state-matters the revelation of which reasonably could be seen as a threat to the military or diplomatic interests of the nation are *absolutely privileged from disclosure* in the courts. . . .the determination is whether the showing of the harm that might reasonably be seen to flow from *disclosure* is adequate in a given case to trigger the absolute right *to withhold* the information sought in that case") (emphasis added); <u>Halkin v. Helms</u>, 598 F.2d 1, 7 (D.C.Cir.1978)("<u>Halkin</u>

I") ("[h]owever helpful to the court the informed advocacy of the plaintiffs' counsel may be, we must be especially careful not to order any dissemination of information asserted to be privileged state secrets"; holding NSA was not required to disclose in discovery whether it had intercepted plaintiffs' communications).[4]

Information subject to the state secrets privilege is no more available to an opposing party than would be information falling under the attorney-client privilege, the privilege for confessionals, the spousal privilege, or any other privilege excepted, under Fed. R. Civ. P. 34, from the requirement for production of otherwise discoverable matters. Reynolds, 345 U.S. at 6 ("[s]ince Rule 34 compels production only of matters 'not privileged,' the essential question [before that Court] is *whether there was a valid claim of privilege under the Rule*")(emphasis added). Indeed, the state secrets privilege "is absolute": "[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." Reynolds, 345 U.S. at 10-11. In Totten v. United States, 92 U.S. 105 (1875), the Supreme Court, in dismissing a case alleging breach of a contract to perform espionage, emphasized the force with which principles of non-disclosure would apply to the state secrets privilege above other common law privileges:

---

[4] See also Bareford v. General Dynamics Corp., 973 F.2d 1138, 1141 (5th Cir. 1992) (privilege for state secrets "allows the government to withhold information from discovery when disclosure would be inimical to national security"; government's assertion of the privilege as a non-party "prevent[s] either party in the litigation from *obtaining* sensitive government information in discovery), cert. denied, 507 U.S. 1029 (1993)(emphasis added); Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991) (state secrets privilege allows government to withhold information from discovery when disclosure would be inimical to national security); In re Under Seal, 945 F.2d 1285, 1287 (4th Cir. 1991) ("[u]pon proper invocation by the head of the affected department, the privilege renders the information *unavailable* regardless of the other party's need in furtherance of the action")(emphasis added).

> [S]uits cannot be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife, or of communications by a client to his counsel for professional advice, or of a patient to his physician for a similar purpose. Much greater reason exists for the application of the principle to cases of contract for secret services with the government, as the existence of a contract of that kind is itself a fact not to be disclosed.

92 U.S. at 107. A court could not order disclosure to one party of another party's attorney-client privileged communication no matter how reasonably calculated to lead to the discovery of admissible evidence a request for such information might be. See Fed. R. Civ. P. 26. Under Reynolds and Totten, information validly the subject of the state secrets privilege is no less privileged, and receives even greater protection.[5]

The state secrets privilege is a privilege from disclosure to the litigants even where counsel or their clients have security clearances, or where courts have issued protective orders to protect classified information. In Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395 (D.C. Cir. 1984), McDonnell Douglas argued that "even though the information involved is sensitive, there is no threat that its production in this litigation will do harm because the disclosure will be limited to participants with adequate security clearances." 751 F.2d at 401. Finding that the litigants' trustworthiness was not the issue for decision, our Circuit found irrelevant for purposes of protecting state-secrets-privileged information the facts that the parties and their counsel had

---

[5] Because the Reynolds Court found that the state secrets privilege protects the privileged information from disclosure; that statutes governing pretrial discovery do not compel production of privileged information to an opposing party; and that the judgment of the lower court was predicated on the refusal of the government to produce the privileged documents, the Court went on to hold that the judgment against the government below subjected the United States to liability on terms to which Congress did not consent in the Federal Tort Claims Act (the waiver of immunity pursuant to which the action had been brought). Reynolds, 345 U.S. at 6. See also id. at 12 (in a civil suit against the United States, the government "is a defendant only on terms to which it has consented").

security clearances, and that the protective order issued below established procedures for handling

sensitive information:

> The trial court in the underlying action has issued a protective order establishing
> procedures for handling information related to the case which may not be publicly
> disclosed. [The litigants] have subscribed to the terms of that order . . . . To the
> extent that sensitive information can be protected in litigation, then, we can assume
> it would be protected here. The party seeking the information, MDC, and its
> adversary, Northrop, have in the past been entrusted by the government with
> classified information necessary to their performances of government contracts.
> Whether this past practice means they should also be entrusted with classified
> policy information related to their dispute is a matter of contention between MDC
> and the government *which we do not find it necessary to resolve, because we
> believe that the nature of the information at issue here justified the district
> court's decision to accept DOD's claim of privilege.*

Id. at 401-02. (emphasis added).   The validity of the Defense Department's assertion of state

secrets privilege in Northrop was dispositive of whether the privileged information would be

disclosed to counsel notwithstanding their security clearances, and notwithstanding a workable

protective order.

In establishing that a court should not disclose to the requester's counsel putatively

privileged material, the court in Ellsberg v Mitchell emphasized the practical realities of the

adversarial system in discounting the adequacy of protective orders to safeguard the national

security interest:

> The rationale for this rule is that our nation's security is too important to be
> entrusted to the good faith and circumspection of a litigant's lawyer (whose sense
> of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or
> to the coercive power of a protective order.

709 F.2d at 61. See also Halkin I, 598 F.2d at 7 ("[p]rotective orders cannot prevent inadvertent

disclosure nor reduce the damage to the security of the nation which may result. Therefore we

reject the plaintiffs' argument that counsel should have been permitted to participate in the In

- 7 -

camera proceedings below"); Colby v. Halperin, 656 F.2d 70, 72 (4th Cir. 1981) ("[d]isclosure to

one more person, particularly one found by the CIA to be a person of discretion and reliability,

may seem of no great moment, but information may be compromised inadvertently as well as

deliberately"). Indeed, our Circuit has joined others in its explicit concern regarding disclosure

even to judges of state-secret privileged information.

> [T]he procedure that might be employed to deal with the foregoing problem -- ex
> parte, in camera examination of the requested material by the trial judge -- is not
> entirely safe. 'It is not to slight judges, lawyers or anyone else to suggest that any
> such disclosure carries with it serious risk that highly sensitive information may be
> compromised.'

Ellsberg v. Mitchell, 709 F.2d at 57 n.31 (quoting Clift v. United States, 597 F.2d 826, 829 (2d

Cir.1979) (quoting Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362, 1369 (4th Cir.), cert. denied,

421 U.S. 992 (1975)). See also Halkin I, 598 F.2d at 7; cf. Black v. Sheraton Corp. 564 F.2d

531, 544 (D.C Cir. 1977) (in evaluating a claim of a "law enforcement evidentiary privilege," the

trial judge ordinarily should examine the documents in camera -- *provided "no military or

diplomatic secrets are involved"*) (emphasis added).

That the objective of the state secrets privilege is to preclude disclosure of the privileged

information -- and not just its use at trial -- is borne out by the Reynolds Court's instruction that

*even a court is not automatically entitled access to putatively privileges documents* when

reviewing the validity of the assertion of the state secrets privilege:

> Once a court finds that "the occasion for the privilege is appropriate, . . . . the court
> should not jeopardize the security which the privilege is meant to protect by
> insisting upon an examination of the evidence, *even by the judge alone, in
> chambers.*

Reynolds, 345 U.S. at 8 (emphasis added). See also Northrop Corp. v. McDonnell Douglas

Corp., 751 F.2d at 401; Ellsberg v. Mitchell, 709 F.2d at 59 n. 38 ("[w]hen the litigant requesting

the information has made only a trivial showing of need for it and the circumstances of the case

point to a significant risk of serious harm if the information is disclosed, the trial court should

evaluate (and uphold ) the privilege claim solely on the basis of the government's public

representations, *without an in camera examination of the documents*") (citations

omitted)(emphasis added). It cannot be thought to be consistent with governing law that, on one

hand, a federal judge (presumed under Department of Justice regulations to possess the equivalent

of a security clearance, see 28 C.F.R. § 17.46(c)) is *not* automatically entitled to review the

material subject to the asserted privilege *even while determining the validity of the privilege,*

without first determining a need to do so, but that, on the other hand, plaintiff and his counsel are

entitled to see the documents and to do so even before the Court has reviewed the affidavits of

the Director of Central Intelligence and Deputy Secretary of Defense submitted in support of the

privilege. Where, under <u>Reynolds</u> and its progeny, even the Court would not enjoy an automatic

entitlement to access information asserted to be state secrets without a preliminary finding of a

need to do so to "satisfy[ ] itself that the occasion for invoking the privilege is appropriate,"

<u>Reynolds</u>, 345 U.S. at 11, it would be legal error to compel production to plaintiff or his counsel

of those same documents; to do so where plaintiff has conceded both that he has no compelling

need for at least one of the reports and that he is positioned to pursue the same information

through alternative means (see discussion in U.S. Mem. at 9 n.6.); and to do so before the Court

has even read the government's claim of privilege or supporting papers. "If the court is . .

.satisfied [that the state secrets privilege applies], the claim of the privilege will be accepted

*without requiring further disclosure.*" <u>Reynolds</u>, 345 U.S. at 9 (emphasis added).

In In re United States, 1 F.3d 1251 (Table), 1993 WL 262658 (Fed. Cir. 1993) (copy attached hereto at Tab A), the court found "wholly irrelevant under controlling case law" that non-government counsel or employees of their clients "had already been granted top security clearances and access to other compartmentalized programs." Id. at *5 and *2 n.3. Granting a writ of mandamus directing the Court of Federal Claims to vacate orders requiring the government to disclose information for which a claim of state secrets privilege had been asserted, the court noted that notwithstanding the lower court's assertion that it had not reached the merits of the validity of the privilege claim, the lower court's order requiring *disclosure* was an effective denial of that claim. Id. * 3. Because the Air Force's claim of state secrets privilege was valid, the lower court "exceeded its authority in compelling the Air Force to disclose the information to anyone else, even plaintiffs' attorneys". Id. * 9

Because the state secrets privilege is a privilege against disclosure of the privileged information, and not merely a privilege against its use, the Court should vacate that portion of its February 1, 2000 Order requiring the United States to produce to plaintiff documents containing information with respect to which the United States has asserted the state secrets privilege.

**II.    IN ANY EVENT, THE DEPARTMENT SECURITY OFFICER'S DETERMINATION TO GRANT PLAINTIFF'S COUNSEL A SECURITY CLEARANCE DOES NOT PROVIDE THE REQUIRED "NEED-TO-KNOW" DETERMINATION TO AUTHORIZE DISCLOSURE OF CLASSIFIED INFORMATION**

At the January 7, 2000 status conference, the Court suggested that the Justice Department Security Officer's determination to grant plaintiff's counsel a security clearance had satisfied all legal prerequisites to grant plaintiff's counsel "access to material up to the top secret level in [connection] with this case." Tr. at 45. The United States respectfully urges the Court to re-

examine that view. First, the privileged status of the information is no more affected by the grant

of a security clearance to plaintiff's counsel than would the privileged nature of an attorney-client

communication in a commercial case be vitiated by a proprietary-information protective order.

Once the information is privileged, it is privileged from disclosure notwithstanding any finding of

trustworthiness on the part of plaintiff's counsel. See Northrop Corp. v. McDonnell Douglas

Corp., 751 F.2d at 401-02 (disclosure to litigant defense contractor of state-secret privileged

information would pose risk of harm to national security notwithstanding "attendant safeguards");

Ellsberg v. Mitchell, 709 F.2d at 61; Halkin I, 598 F.2d at 7; Colby v. Halperin, 656 F.2d at 72

("[d]isclosure to one more person, particularly one found by the CIA to be a person of discretion

and reliability, may seem of no great moment, but information may be compromised inadvertently

as well as deliberately").

     In any event, however, an access eligibility determination by the Department Security

Officer is not sufficient to establish the legal authority to disclose classified information to

plaintiff's counsel. The Department Security Officer has not made, and does not purport to have

been authorized to have made, the requisite need-to-know determination regarding access by

plaintiff's counsel to the subject information·

> [a] person may have access to classified information if: (1) a favorable
> determination for eligibility for access has been made by an agency head or the
> agency head's designee; (2) the person has signed an approved nondisclosure
> agreement; and (3) *the person has a need-to-know the information*.

June 10, 1998 Order at 1 (citing E.O. 12958, § 4.2)(emphasis added). See also 28 C.F.R. §

17.41[6]. "Need-to-know" means

> a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.

E.O. 12958, § 4.1(c).[7] See also 28 C.F.R. § 17.45 (" No person shall be granted access to specific classified information unless that person has an actual need-to-know that classified information, pursuant to section 2.5 of Executive Order 12968").

The Department Security Officer has not made, and could not have made in this case, the need-to-know determination requisite to the disclosure to plaintiff's counsel of the IG reports and attachments at issue. He is not "an authorized holder of [the] classified information," E.O. 12958, § 4.1(c), and has no basis for making a determination "that [the] prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function," id. In any event, the DCI has concluded that plaintiff's counsel (lead or otherwise) lack the requisite need for access and "may not receive access to any classified intelligence information under my statutory control which plaintiff has requested . . . " Tenet

---

[6]   Sec. 17.41 Access to classified information.

(a)  No person may be given access to classified information or material originated by, in the custody, or under the control of the Department, unless the person–
>    (1)   Has been determined to be eligible for access in accordance with sections 3.1-3.3 of Executive Order 12968;
>    (2) Has a demonstrated need-to-know;  and
>    (3) Has signed an approved nondisclosure agreement.

[7]   Section 4.5 of E.O. 12958 provides for a discretionary waiver of the need-to-know determination in two explicitly delineated circumstances – access by historical researchers and access by former presidential appointees -- and only in certain carefully-specified conditions. Neither of these circumstances applies here.

Decl. (unclassified) ¶ 31; Tenet Decl. (classified) ¶¶ 7, 65.

On those bases, plaintiff's counsel are not entitled to gain access to the documents containing information that is the subject of the United States' claim of state secrets and statutory privilege, notwithstanding the Department Security Officer's determination that plaintiff's counsel have satisfied the access eligibility requirements of E.O. 12968 §§ 3.1-3.3. See 28 C.F.R. § 17.41(a)(1).

## CONCLUSION

For the foregoing reasons, the Court should vacate that portion of its February 1, 2000 Order requiring the United States to produce to plaintiff documents with respect to which the United States has asserted privilege.

Respectfully submitted,

WILMA A. LEWIS, D.C. Bar # 358637
United States Attorney

MARK E. NAGLE, D.C. Bar # 416364
Assistant United States Attorney

LISA S. GOLDFLUSS, D.C. Bar # 417787
Assistant United States Attorneys
555 Fourth Street, N.W., 10th Fl.
Washington, D.C. 20001
Tel.: 202-514-7198
Attorneys for Defendants

- 13 -

A

1 F.3d 1251 (Table)
**Unpublished Disposition**

**(Cite as: 1 F.3d 1251, 1993 WL 262658 (Fed.Cir.))**

NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

**In re UNITED STATES, Petitioner.**

**Misc. No. 374.**

United States Court of Appeals, Federal Circuit.

April 30, 1993.

Fed.Cl.

PETITION GRANTED

Before ARCHER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

ON PETITION FOR WRIT OF MANDAMUS

MICHEL, Circuit Judge.

ORDER

**\*1** The United States petitions for a writ of mandamus to direct the Court of Federal Claims to vacate its April 12 and April 14, 1993 orders requiring the Air Force to grant special access to plaintiffs' counsel to certain classified, special access programs and information controlled by the Air Force for which the Acting Secretary of the Air Force had formally asserted the Military and State Secrets Privilege. [FN1] The trial court rejected the assertion of privilege without finding it was improperly or inappropriately invoked and ordered disclosure of the military secrets involved. It denied the government's motion for protective order and for a stay and for certification. The government then filed the instant petition. McDonnell Douglas Corporation and General Dynamics Corporation oppose. Extensive submissions have been filed by both parties. We grant the petition.

BACKGROUND

This is the second government mandamus petition to arise from discovery disputes in a lawsuit by McDonnell Douglas and General Dynamics against the United States because of the Department of the Navy's termination for default of their contract to produce a stealth attack aircraft called A-12 for basing on aircraft carriers. In the suit, McDonnell Douglas and General Dynamics claimed, inter alia, that the United States breached an implied duty to share with the contractors "superior knowledge" about problems in producing stealth aircraft, and their solution, which was discovered in earlier production of the B-2 and F-117A stealth aircraft by other manufacturers. In this regard, McDonnell Douglas and General Dynamics sought discovery from the Department of the Air Force concerning several classified, special access programs

A dispute concerning the Court of Federal Claims' authority to review and reverse a determination by the Acting Secretary of the Air Force regarding the number of persons granted access to documents subject to "special access" restrictions was the subject of the earlier mandamus petition, misc. no. 370. We issued a writ of mandamus directing the Court of Federal Claims to vacate its order which had required the Air Force to allow two additional persons access to the two special access programs involved there.

The dispute here arises from counsel for McDonnell Douglas and General Dynamics' request for access to certain highly classified information, mostly from other special access programs. In contrast to the earlier petition, here the question is not whether the trial court can review the Acting Secretary's decision as to how many individuals may have access to the original data which the government agreed to disclose but whether the trial court may order access for the plaintiffs' counsel for additional special access programs, in the face of the assertion of the Military and State Secrets Privilege.

The following is a chronology of actions by the Court of Federal Claims that created this issue.

A. The Court of Federal Claims' March 18, 1993 Order

**\*2** In February 1993, plaintiffs' attorneys orally and

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

informally sought intervention by the trial court regarding certain highly classified and compartmented information known to some General Dynamics' employees, to which plaintiffs' attorneys desired access. The government objected. On March 18, 1993, the trial court issued an order stating: "Defendant may not preclude disclosure of relevant Air Force information to plaintiffs' counsel unless it can show that such information may be withheld in accordance with an established privilege." (Emphasis added.)

B. The Court of Federal Claims' March 23, 1993 Order

On March 23, the trial court conducted a hearing to address the issue of disclosure of the requested information to plaintiffs' counsel. Later that same day, the court issued an order stating: "Defendant will disclose to plaintiffs' attorneys information currently being withheld, no later than 5:00 p.m. on Tuesday, March 30, 1993."

On March 30, 1993, the United States moved for a protective order, formally invoking the Military and State Secrets Privilege. The privilege was invoked in an unclassified, public declaration signed by the Acting Secretary of the Air Force, Michael B. Donley. In the declaration, Acting Secretary Donley stated that he "personally review[ed] and consider[ed]" the matters at issue and that he "personally determined" that disclosure of the information "could be expected to cause exceptionally grave damage to national security." The Acting Secretary generally explained the threat to national security and stated that an ex parte, in camera, classified declaration by him explained the threat more specifically. Both the public declaration and the in camera, classified declaration have been reviewed by the trial court and by this court. [FN2]

C. The Court of Federal Claims' March 31, 1993 Order

On March 31, the trial court issued an order raising three issues for the government's response. The trial court asserted that the wording of the public declaration "raise[s] the question of whether [Acting Secretary Donley] is the proper individual to invoke the privilege." Second, the trial court noted that the declaration does not address the problem of the government's disclosure of "such matters to [government] attorneys in this case for purposes of this litigation." (Emphasis added.) Finally, the trial court stated that the United States' motion "does not address the problem of plaintiffs' communications with their

attorneys." The trial court also said that "plaintiffs have crucial knowledge that is being withheld from plaintiffs' counsel." (Emphasis added.) [FN3] The trial court scheduled a hearing for April 2, 1993 to address these issues further. At the hearing, the United States agreed to produce supplemental declarations to address the trial court's stated concerns, and McDonnell Douglas and General Dynamics informed the trial court that they opposed the government's assertion of privilege.

D. The Court of Federal Claims' April 7, 1993 Order

**3 Following the hearing the United States filed a supplemental public declaration and a supplemental classified declaration. On April 7, the Court of Federal Claims issued an order stating:
[Acting] Secretary Donley has shown the court that he is the appropriate official to invoke the states secret doctrine. We have every confidence in [Acting] Secretary Donley and his representative. However, the rightful concerns of the Air Force must be balanced with the court's concern for the integrity of the adversary process. Plaintiffs must be permitted to discuss their case with their counsel.
(Emphasis added.) As noted, however, the employees are not "plaintiffs," it is not "their case" but the corporations' cases and the lawyers are not "their counsel."

The court warned that unless the parties could agree to stipulations that would obviate the need for further inquiry into these sensitive access issues, "it will be the Order of this court that the Air Force give to one representative from the McDonnell Douglas litigation team and one from the General Dynamics litigation team a modified briefing."

E. The Court of Federal Claims' April 12, 1993 Order

Because the parties were unable to reach such an agreement, the court issued an order on April 12 stating:
Defendant invoked the state secrets doctrine to preclude plaintiffs from communicating crucial information to their counsel. Defendant cites no authority for applying the doctrine under these circumstances. We have no choice but to direct the Air Force to provide a modified briefing to an attorney for each plaintiff.   and IT IS SO ORDERED....   The motion for protective order is DENIED.
By denying the motion for protective order, the court effectively denied the government's assertion of the

Military and State Secrets Privilege.

In an effort to protect the classified information from disclosure, the government then moved for a stay of the trial court's order requiring disclosure, and for certification of the court's orders for interlocutory appeal.

F. The Court of Federal Claims' April 14, 1993 Orders

On April 14, the trial court denied the United States' motion for a stay and for certification. In its denial of the motion for certification, the trial court further stated:

> Our denial of defendant's motion [for protective order] was not a rejection of [Acting] Secretary Donley's concern for the sensitivity of the matters described in his in camera affidavit. We did not reach the merits of the [Acting] Secretary's determination. The issue is not whether plaintiffs may be afforded access to classified information. The issue is whether plaintiffs must be permitted to discuss such information with their attorneys for purposes of this litigation.

(Emphasis added.)

In the order, the court noted that the plaintiffs' attorneys had top secret security clearances and that the government's counsel did not deny having been granted access to the same information over which the privilege was asserted. The court concluded that because the plaintiffs' attorneys were denied access to the information, the "prejudice to plaintiffs ... is manifest." Accordingly, the court ordered: "Defendant will permit plaintiffs to disclose the information ordered on April 12 to their attorneys no later than 2.00 p.m. on April 16, 1993."

**4 On April 16, the United States filed this petition for writ of mandamus for vacatur of the trial court's disclosure orders. This court, ex parte, temporarily stayed the orders pending "consideration" of submissions. As in the earlier mandamus case, the dispositive issue is whether the trial court has legal authority to reverse special access decisions made by a service secretary under Executive Order 12356. That it does not is even clearer in this case where the Military and State Secrets Privilege has been formally invoked as to data that requires special access and the court does not question the legitimacy of the classification or the "sensitivity" of the information. Therefore, we grant the writ.

DISCUSSION

In United States v. Reynolds, 345 U.S. 1 (1953), the Supreme Court explained the considerations for discerning a proper invocation of the Military and State Secrets Privilege. The Court said:

> The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

Id. at 7-8 (footnotes omitted) (emphasis added). We address these factors seriatim.

A. Head of the Department

1 Personal consideration by appropriate official. In its April 7, 1993 order, the Court of Federal Claims stated that "[Acting] Secretary Donley has shown the court that he is the appropriate official to invoke the states secret doctrine." Neither party disputes that finding. Nor is it disputed that Acting Secretary Donley personally assessed the basis for the assertion of the privilege and formally asserted the claim of privilege.

2. Special access determinations are committed by law solely to the agency head. As set forth in more depth in our April 19, 1993 order in In re United States, misc. no 370, the grant of a security clearance or the authority to determine who or how many persons shall have access to classified information "is committed by law to the appropriate agency of the Executive Branch." Department of Navy v. Egan, 484 U.S. 518, 526-27 (1988). In this case, the member of the Executive Branch who possesses the authority to grant access is the agency head, Acting Secretary of the Air Force Donley. The Acting Secretary derives his authority from Executive Order 12356 which prescribes a uniform system for classifying, declassifying, and safeguarding national security information. The Acting Secretary's authority under the Executive Order derives, in turn, from the constitutional grant of power to the Executive to command the military and to conduct foreign affairs. The kinds of decisions made by agency heads under the Executive Order necessarily are "predictive judgments" delegated solely to them because they "bear the responsibility for the protection of classified information" and not to "outside non-expert bod [ies],"

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

1 F.3d 1251 (Table)
**(Cite as: 1 F.3d 1251, 1993 WL 262658, \*\*4 (Fed.Cir.))**

Page 4

such as administrative agency boards, Egan, 484 U.S. at 529, or courts. In short, it is clear that the Acting Secretary was the only person who had the authority to decide whether this information could be disclosed to counsel, and therefore, his assertion of the privilege is dispositive unless the assertion is shown to be inappropriate, unlawful or fraudulent. No such contention is made here.

\*\*5 By ordering a "modified briefing," the trial court clearly usurped the exclusive authority of the Acting Secretary. As the contractors' brief repeatedly indicates, the trial court independently assessed what was adequate to protect national security. The contractors state that the trial court "permit[ted] partial disclosure based on careful scrutiny of the in camera submissions," and that "the trial court properly scrutinized the material with care and concluded that the Government's invocation of the privilege did not preclude a 'modified briefing.' " As characterized by the contractors, "the court concluded that the 'modified briefing' would not pose a danger to national security." (Emphasis added.) Such risk assessment, however, is precisely the type of "predictive judgment" that the Supreme Court in Egan stated was one exclusively for the Executive. [FN4] Such risk assessments are beyond the competence of courts and their authority

B. "Appropriate Circumstances" for the Assertion of the Privilege

As a matter of law, "[t]he occasion for the privilege is appropriate" if the court is satisfied, "from all circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10 (emphasis added). Although the Court of Federal Claims stated in its April 14, 1993 order that it "did not reach the merits of the [Acting] Secretary's determination," the court effectively denied the merits of the Acting Secretary's assertion of the Military and State Secrets Privilege by denying the government's motion for protective order. By ordering a "modified briefing," the court rejected the Acting Secretary's assertion of the Military and State Secrets Privilege and usurped his exclusive power to grant access to special access programs and other classified matter under Executive Order 12356. What, exactly, the trial court meant to include or exclude in the "modified briefing" is unclear. But what is clear is that it would necessarily include information in some form from other special access programs beyond those for which counsel have

previously been granted access by the Air Force Secretary. The contractors do not deny this. Rather, they simply state that "the court below did not order that all classified information in the Government's possession concerning the matters at issue be disclosed to Plaintiffs' counsel." (Emphasis added.) By this statement, the contractors effectively admit that the court did order disclosure of some of the classified, compartmented information.

Rather than considering whether there was 'a "reasonable danger" that military secrets would or could be divulged if production of the information was compelled, as required by Reynolds, the Court of Federal Claims instead considered and explicitly based its disclosure orders on the following: (1) the two attorneys who sought the information had already been granted top security clearances and access to other compartmented programs; (2) some of General Dynamics' employees have the information and "must" have a right to disclose the information to counsel; and (3) the Air Force has disclosed the information to the United States' counsel "for purposes of this litigation." We conclude that these three considerations are wholly irrelevant under controlling case law and legally could not substitute for the sole inquiry required under Reynolds: whether there is a "reasonable danger" that military secrets would or could be divulged if production of the data is compelled. Further, we hold that here the circumstances were "appropriate" for assertion of the Military and State Secrets Privilege. Indeed, the trial court did not question the basis for asserting the privilege, stating that it did not reach that issue

\*\*6 (1) While the Court of Federal Claims correctly noted that the contractors' attorneys have been granted access to certain compartmented programs, this cannot mean that they thereby are also granted access to other special access programs. The system of special access programs specifically contemplates that no matter how trustworthy an individual, he may not have access to a particular program except if specifically granted it by the service secretary pursuant to the criteria of Executive Order 12356. As explained by Acting Secretary Donley in his public declaration:

An individual [employed by a Defense contractor] may have access to one special access program while his colleagues have access to different special access programs. Despite the fact that the individuals are professional colleagues, that they possess the requisite security clearances, and they work in the same secure facility, such individuals are still

prohibited, absent being given access to another program, to share special access information across program boundaries.

See Executive Order 12356, § 4.2. Indeed, the contractors admit in their "Opposition to Petition for Writ of Mandamus" that "[t]his case is materially unlike any other in which issues of state secrets privilege have arisen" because "the specific subject matter of the contract at issue included the development and use of classified, compartmented stealth technologies." (Emphasis added.) What they do not acknowledge, however, is that this fact makes it all the clearer that the trial court lacked authority to order disclosure.

(2) Similarly, even though certain employees of General Dynamics have knowledge of the special access information sought by counsel, assertion of the privilege may properly preclude future disclosure of that information to anyone, including the contractors' counsel. See Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268, 281 (4th Cir.1980) (en banc ) (application of the State Secrets Privilege prevented information from being shared with plaintiff's attorney); see also Fitzgerald v. Penthouse Int'l, Ltd., 776 F.2d 1236, 1242 n. 8 (4th Cir.1985) (privilege requires dismissal of case thereby preventing disclosure at trial of classified information despite the fact that one of the parties had "personal knowledge of classified matters within the scope of the state secrets privilege"). - Thus, the fact that these employees already have access to the compartmented information sought here does not divest the service secretary of his exclusive authority to control access to other persons or limit his right to assert the privilege to prevent any disclosure in a pending lawsuit. See Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 402-03, n. 9 (D.C.Cir.1984) ("prior disclosure of similar information does not preclude the potential for harm" in future disclosure).

The contractors argue that "the trial court was rightly concerned about the effect of the Government's attempted privilege invocation on Plaintiffs' ability to discuss information with counsel, thereby potentially infringing upon Plaintiffs' constitutional right to counsel." Similarly, the contractors assert that the First Amendment also protects the contractors right to confer with their counsel. These arguments are unpersuasive. Because application of the Military and States Secrets Privilege can require complete dismissal of a case, Ellsberg v. Mitchell, 709 F.2d 51, 65 (D.C.Cir.1983), cert. denied sub nom. Russo v. Mitchell, 465 U.S. 1038 (1984), any subsidiary limitation on conferring with counsel which might otherwise be precluded by the constitution cannot apply here.

**7 (3) Finally, the fact that the government's attorneys may have reviewed the information at issue here (mistakenly or not) is irrelevant to whether the privilege is still available to prevent disclosures to others. Under the special access rules of Executive Order 12356, each program is separate and each potential "accessee" is a separate issue. Disclosure to anyone beyond those individuals specially granted access by the service secretary--whether they be within the government or within the same corporation as those previously granted access--is strictly forbidden and indeed would create criminal liability. Cf. Halkin v. Helms, 598 F.2d 1, 9 (D.C.Cir.1978) ("The government is not estopped from concluding in one case that disclosure is permissible while in another case it is not."). As correctly noted by the United States in its petition, the United States may not use this information in the litigation, even though the trial court, apparently incorrectly, said the government attorneys had the information "for purposes of this litigation." [FN5] That the United States' attorneys may have reviewed the compartmented information at issue here is entirely irrelevant to whether there would be a "reasonable danger" to national security if the information is released to someone new, including the contractors' attorneys in connection with this lawsuit. Under Reynolds, that is the sole issue that is judicially reviewable.

The trial court erred in this case because it based its decision on extraneous concerns and ignored the sole legal test required by the Supreme Court in Reynolds. The trial court should have confined itself solely to whether there was a "reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10. Courts must give "utmost deference" to necessarily speculative projections contained within such assertions of privilege. See Halkin, 598 F.2d at 9 ("Courts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets.") (quoting United States v. Nixon, 418 U.S. 683, 710 (1974)).

In its March 31, 1993 order, the Court of Federal Claims sought to use language from Reynolds to support its position: "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." See Reynolds, 345 U.S. at 9-10 (emphasis added). But this dicta was not written in a

vacuum and can mean no more than that the Executive must have a rational basis for its security concern. Plaintiffs do not assert that it did not. Nor did the trial court. Thus, here there is no "caprice." Similarly, the contractors' argument that "[d]eference to the executive's allegations of harm does not mean unquestioning acceptance of every claim of privilege" is unpersuasive. As explained below, neither this court nor the Court of Federal Claims accepted the government's assertion of the privilege "unquestioned." Rather both courts have thoroughly reviewed the Acting Secretary's declarations. Neither court saw any need for in camera review of the underlying documents, the only further step permitted by Reynolds.

**8 Moreover, the Supreme Court in Reynolds specifically prohibited trial courts from basing rulings on privilege on their assessment of the parties' need for the information. The Supreme Court concluded that "even the most compelling necessity [for discovery of the information] cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake," id. at **i.e., that the classification was not fraudulent or incorrect and the documents did in fact contain military secrets. Plaintiffs do not contend otherwise. Thus, the repeated references in the trial court's orders that the information is "crucial" and "relevant" are not proper considerations in the face of the assertion of the privilege. [FN6]

Similarly, the trial court's references to "balancing" the interests of the government against those of the plaintiffs is also an impermissible legal test under Reynolds. The contractors' argument that "Reynolds requires that such a balancing be performed by the court to determine the validity of the privilege claim" is incorrect. In support of its argument, the contractors quote the following language from Reynolds: "In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted...." Id. The balancing that is suggested by this quotation, however, is not directed to the court's ultimate acceptance or denial of the privilege. Rather, it refers to the trial court's decision as to whether or not something more than just the Acting Secretary's declaration should be reviewed. In other words, in determining whether or not to review the underlying documents, the court may balance the contractors' need for the information against the dubiousness of the government's assertion of the privilege. Once the

determination is made whether to require a closer examination of the assertion of the privilege, however, the contractors' need for the information plays no part in a trial court's determination of whether there is a reasonable danger that national security would be threatened by release of the information. Reynolds, 345 U.S. at 11 ("even the most compelling necessity cannot overcome the privilege if the court is ultimately satisfied that military secrets are at stake"); Ellsberg, 709 F.2d at 57 ("When properly invoked, the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege."); Halkin v. Helms, 690 F.2d 977, 990 (D.C.Cir.1982) ("[T]he critical feature of the inquiry in evaluating the claim of privilege is not a balancing of ultimate interests at stake in the litigation. That balance has already been struck.").

**9 It is apparent that the Court of Federal Claims did recognize that military secrets were at stake. See, e.g., Order of April 7, 1993 (trial court characterizes the Acting Secretary's national security concerns as "rightful"). But whatever the trial court's view, based on our own review of the classified declaration of Acting Secretary Donley, we agree that the United States has established that there is a "reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10. [FN7] Therefore, the Court of Federal Claims exceeded its authority in compelling the Air Force to disclose the information to anyone else, even plaintiffs' attorneys.

The contractors argue, finally, that mandamus should not issue because the court's orders that the plaintiffs' counsel be given a "modified briefing" is consistent with the requirement of Ellsberg, 709 F.2d at 57, that the government's assertion of the privilege should be scrutinized on an item-by-item basis. In Ellsberg, the court did not allow State Secrets Privilege protection for one aspect of the plaintiffs' discovery requests. In particular, the plaintiffs requested to know which Attorneys General authorized a particular surveillance. Because "the government [did] not even purport to explain" why the information must be withheld, the court required disclosure. Id. at 60. Thus, although it is true that the court has the power to disentangle sensitive information from non-sensitive information, in this case the contractors have not even alleged the government's assertion of the privilege is too broad or that it covers any nonsensitive information. Rather, in this case all of the information over which the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

government has asserted the privilege is plainly sensitive. Compare In re United States, 872 F.2d 472, 478 (D.C.Cir.1989) (stating that an item-by-item determination of the applicability of the State Secrets Privilege was appropriate because, inter alia, a portion of the requested information had already obtained by plaintiff under Freedom of Information Act, 5 U.S.C. § 552 (1982)).

Moreover, the trial court apparently did not scrutinize the information over which the privilege was asserted in an effort to segregate any nonsensitive information. There is nothing in the submissions to show that the trial court ever requested or reviewed the underlying documents or stated that it determined any specific document to be non-sensitive. Rather the trial court's order requiring a "modified briefing" applied generally to the requested information. [FN8]

## CONCLUSION

Mandamus is traditionally used, inter alia, to confine a trial court "to a lawful exercise of its prescribed jurisdiction...." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988). A party seeking mandamus, however, must show that the right to the issuance of the writ is "clear and indisputable." Id. We hold that on the record in this case, the United States has shown that the Court of Federal Claims exceeded the "lawful exercise of its prescribed jurisdiction" and the United States has shown that its right to the requested relief is "clear and indisputable." Therefore, we grant the writ.

**\*\*10** Accordingly,

IT IS ORDERED THAT:

The United States' petition for writ of mandamus is granted. The Court of Federal Claims is directed to vacate its April 12 and April 14, 1993 disclosure orders.

> FN1. The United States also moved before us for stays of the orders directing disclosure. On April 16, 1993, this court, ex parte, temporarily stayed the orders "pending consideration" of submissions. The contractors oppose the stay pending disposition. The United States moves for leave to file a reply, with reply attached. In view of our disposition of the mandamus petition, the United States' motion for a stay pending disposition and the motion for leave to file a reply are moot.

FN2. On April 19, 1993, Circuit Judge Paul R. Michel met with Colonel Hennessey and Mr. Eames of the Air Force to review Acting Secretary Donley's classified declaration. A summary of this review meeting was appended to an order issued by this court on April 19, 1993, which disposed of a motion to make certain records of the review meeting.

FN3. Although the Court of Federal Claims stated in this order that "plaintiffs" have access to the information, they do not. The plaintiffs in this case are two corporate entities, McDonnell Douglas and General Dynamics. These corporate entities themselves do not have possession of the military secrets, for they have not been granted special access by the Air Force Secretary. Some of their employees, however, have been granted special access by the Air Force Secretary and do know the secrets, but have no authority to pass them to anyone, except as authorized by the Air Force Secretary. See Executive Order 12356.

FN4. The contractors assert that "the instant mandamus petition does not deal with any issue involved in [Egan ], and the Government has not cited Egan as support for its argument." While the government does not cite Egan, the government's argument implicitly implicates it. The government states: "[I]n devising and attempting to implement a 'modified briefing' procedure, wholly of its own creation, the trial court is attempting to undertake the actual micro-management of control over this Nation's military secrets."

FN5. It does not appear that the government has the information "for purposes of the litigation." Although certain government attorneys may be aware of the information, that does not mean that the government has the information for the litigation. Contrary to the trial court's statement that "the defendant's attorneys have used such information for tactical purposes involving the merits of plaintiffs' superior knowledge claim," nothing in the submissions indicates that the government has so used the information. To have used the information, it seems the government would have had to file ex parte submissions for consideration by the judge. No such submissions appear to have been made.

FN6. We need not decide the degree of importance of the information at issue to the contractors' ability to prove their case as alleged. The United States admits that some courts have placed emphasis on the degree of necessity that a party has for the information, citing American Civil Liberties Union v. Brown, 619 F.2d 1170, 1173 (7th Cir.1980) (en banc ) (vacating the district court's order requiring production of documents despite assertion of the State Secrets Privilege and remanding for an in camera determination of the necessity for the records sought because the claim of state or military secrets appeared "dubious") and Jabara v. Kelley, 75 F.R.D. 475 (E.D.Mich.1977). We view

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Brown and Jabara as support for no more than that the trial court may require ex parte in camera inspections of information if necessity for the information is great, and if assertion of the State Secrets Privilege seems questionable. This reading of Brown and Jabara is consistent with Reynolds.  See Reynolds, 345 U.S. at 11.  In the present case, neither the trial court nor the plaintiffs even argued that the Acting Secretary's invocation of the privilege was dubious.  On the contrary, the trial court characterized the Acting Secretary's national security concerns as "rightful."  In any event, we hold, post, that the assertion was "appropriate."

FN7. As explained supra note 2, this court has inspected the classified declaration of Acting Secretary Donley. That declaration specifically and convincingly explains the highly sensitive nature of the military secrets at stake and the legitimacy of their classification at the very highest levels.

FN8. The fact that the concept of a "modified briefing" apparently resulted from an informal conversation with Colonel Hennessey also suggests that the court did not scrutinize the documents in order to segregate nonsensitive information from sensitive information.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

**KeyCite**                                                                    **Page 9**

Date of Printing: FEB 22,2000

### KEYCITE

CITATION:   **In re U.S., 1 F.3d 1251 (Fed.Cir., Apr 30, 1993) (TABLE, TEXT IN WESTLAW) NO. 374)**
                                           **History**
=>                1  **In re U.S.,** 1 F 3d 1251 (Fed.Cir. Apr 30, 1993) (TABLE, TEXT IN WESTLAW, NO. 374)

© Copyright West Group 2000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2000, the foregoing was sent by first class

mail, postage prepaid, to

BRIAN C. LEIGHTON
701 Pollasky
Clovis, CA 93612

and

JAMES A. MOODY
Suite 600
2300 N Street, N.W.
Washington, D.C.  20037

and faxed to the office of Mr. Moody.

LISA GOLDFLUSS
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C.  20001
(202) 514-7198

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICHARD A. HORN, | ) |
| Plaintiff, | ) |
| v. | ) C.A. 94-1756 |
| | ) C.A. 96-2120 (RCL) |
| MADELEINE ALBRIGHT, *et al.*, | ) |
| | ) FILED UNDER SEAL |
| Defendants. | ) |

## ORDER

UPON CONSIDERATION of the United States' Motion For Reconsideration, any

opposition thereto, and the merits thereof, it is

HEREBY ORDERED that the motion is granted; and it is

FURTHER ORDERED that the portion of the Court's February 1, 2000 Order requiring

the United States to produce to plaintiff and his counsel documents with respect to which the

United States has asserted privilege is hereby vacated.

Date_____          _____
                     UNITED STATES DISTRICT JUDGE

LISA S. GOLDFLUSS
Assistant United States Attorney
United States Attorney's Office
555 - 4th Street, N.W.
Washington, D. C. 20001

BRIAN C. LEIGHTON
701 Pollasky
Clovis, CA 93612

JAMES A. MOODY
Suite 600
2300 N Street, N.W.
Washington, D.C.  20037