UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD A. HORN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. 94-1756 |
| v. ) | C.A. 96-2120 (RCL) |
| ) | |
| MADELEINE ALBRIGHT, *et al.*, ) | |
| ) | FILED UNDER SEAL |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS CIVIL ACTION 94-1756
BASED ON THE STATE SECRETS PRIVILEGE[1]**

INTRODUCTION

A. Preliminary Statement

In an Order filed August 15, 2000, this Court held, *inter alia*, that a report of an investigation jointly performed by the inspectors general of the State Department and the Central Intelligence Agency ("CIA") ("joint IG report"), examining allegations identical to those that form the basis of Civil Action 94-1756, was protected from both disclosure and use in this action by the state secrets privilege. See Memorandum and Order filed August 15, 2000 (classified SECRET) ("August 15th Order") at 1-2, 4 n.4, 5-6. The Court also sustained the government's claim of

---

[1] The United States has also filed a classified version of this memorandum that permits the United States to discuss with the requisite level of specificity the factual basis for the United States' conclusion that plaintiff cannot make out a *prima facie* case without receiving and using information that the Court already has held to be protected by the state secrets privilege; that the defendants cannot defend themselves for the same reason; and that there is no way to litigate around the privileged information in this case because it is central to both the claims and defenses. The instant memorandum, served upon plaintiff, omits the state secrets-privileged information upon which the United States' motion is factually predicated. Disclosure to plaintiff of the specific factual grounds on which the state secrets privilege requires dismissal of the action would defeat the operation of the privilege.

privilege with respect to a separate CIA IG report arising out of plaintiff's charge as articulated in paragraph 9 of the Complaint ("CIA IG report"). See id. at 4 n.4. The Court based its rulings, *inter alia*, upon its examination of the Declaration and Formal Claim of State Secrets and Statutory Privileges by George J. Tenet, Director of Central Intelligence ("Tenet Decl. (unclassified)"), Exhibit A to the Memorandum in Support of the United States' Assertion of State Secrets and Statutory Privileges Regarding Two Inspector General Reports and Attachments ("U.S. Priv. Mem."); the Ex Parte Declaration and Formal Claim of State Secrets and Statutory Privileges by George J. Tenet, Director of Central Intelligence ("Tenet Decl. (classified)"), Exhibit B to U.S. Priv. Mem.; the Declaration and Claim of Privilege of the Deputy Secretary of Defense (unclassified) ("Hamre Decl."), Exhibit C to U.S. Priv. Mem.; and the classified declarations of Lt. Gen. Michael V. Hayden, Director of the National Security Agency ("NSA") ("Hayden Decl."), and Lt. Gen. Kenneth A. Minihan, dated respectively December 20, 1996 and February 25, 1997 ("Minihan Decls."), referenced in Deputy Secretary Hamre's declaration, and attached to U.S. Priv. Mem. respectively as Exhibits D, E and F. See August 15th Order at 1-2, 10. Based on its review of those declarations and the subject reports, the Court held that the explanations provided in the declarations "more than adequately establish[ed]," id. at 12, that disclosure of the information sought to be protected "could reasonably be expected to cause serious damage to the national security interest of the United States," id. at 11.

By separate Order filed that same date ("August 15th Order II"), the Court indicated that it was not apparent how plaintiff could proceed with discovery in this case, and directed plaintiff to be prepared to explain, at an August 21, 2000 status conference ("August 21st hearing"), "what non-state secrets evidence he has in support of his remaining claim." August 15th Order II at 2.

See also Transcript of August 21, 2000 Status Conference, part one ("Tr. 8-21-00 I") at 2, lines 14-16 (the Court inquiring "whether the plaintiff is going to be able to maintain an action in the '94 case after all the state secrets are sorted out").[2]

It is clear from plaintiff's responsive recitation at the August 21st hearing, and from other key filings by plaintiff (e.g., the Complaint, plaintiff's Local Rule 206 statement, plaintiff's requests for admissions to the defendants (all discussed *infra*)), that plaintiff cannot establish a *prima facie* case in this action without implicating, at the very core of his case, information that this Court already has held to be protected by the state secrets privilege. Because this is so, the state secrets privilege requires dismissal here.

Even if plaintiff could establish a *prima facie* case, however, the suit would nonetheless be subject to dismissal on an independent ground: The individually-named federal defendants are precluded entirely from either (a) rebutting plaintiff's claims or (b) demonstrating affirmatively why the act at the core of plaintiff's action -- an alleged electronic surveillance of plaintiff's late-night phone conversation in Rangoon, Burma, on August 12, 1993 by, or under the direction of, the CIA ███████ in Rangoon -- did not happen, and *could not* have happened. Although plaintiff would bear the burden of proof on all elements of the claims set forth in his complaint, the defendants, as a practical matter, would be required to rebut plaintiff's claims and, in doing so, to establish certain facts in order to "prove a negative." As discussed *infra*, these individual defendants would be precluded from disclosing the requisite information because that information falls directly under the categories of information that this Court already has held to be subject to

---

[2] The August 21st hearing was transcribed in two separately-paginated parts. Part two ("Tr. 8-21-00 II"), is classified and attached to the instant motion as Exhibit D.

the state secrets privilege. On that independent basis, then, the action is subject to dismissal.

Finally, there is no way to litigate around the privileged information in this case. The essence of plaintiff's allegation is itself a state secret, implicating, as it does, information about the identities of covert intelligence officers, covert installations overseas, intelligence-gathering sources, methods and capabilities (including the use of liaison relationships with foreign intelligence services and a certain other intelligence method), and the organization and functions of the United States' intelligence agencies. Because the privileged information at issue, once removed from the case, leaves nothing to litigate about, the case must be dismissed.

## B. The August 15th Order

### 1. Law Governing the State Secrets Privilege

In its August 15th Order, this Court recognized the fundamental principles governing the assertion and operation of the state secrets privilege. The Court noted that the privilege is absolute, and cannot be overcome "'even by the most compelling necessity'" if the Court is ultimately satisfied that state secrets are at stake. Id. at 6-7, quoting United States v. Reynolds, 345 U.S. 1, 10-11 (1953) and citing Molerio v. FBI, 749 F.2d 815, 821 (D.C. Cir. 1984) ("[n]o competing or private interest can be advanced to compel disclosure of information found to be protected by a claim of [state secrets] privilege"); Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983) ("It is now well-established that the United States, by invoking its state secrets privilege, may block discovery in a lawsuit of any information that, if disclosed, would adversely affect national security"), cert. denied sub nom. Russo v. Mitchell, 465 U.S. 1038 (1984); Halkin v. Helms ("Halkin II"), 690 F.2d 977, 990 (D.C. Cir. 1982) ("[Reynolds] establishes that secrets of state – matters the revelation of which reasonably could be seen as a threat to the military or

diplomatic interests of the nation are absolutely privileged from disclosure in the courts"). The Court also noted that the privilege protects against the disclosure of privileged information, and not merely its use at trial, id. at 6, citing Reynolds, 345 U.S. at 6, 10-11, and precludes disclosure to litigants even where counsel or their clients have security clearances, or where courts have issued protective orders to protect classified information, id. at 7, citing Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 401-02 (D.C. Cir. 1984).

The Court recognized that the privilege may be invoked where matters, if disclosed, could

-- cause harm to the nation's defense capabilities, id. at 8, citing Reynolds, 345 U.S. at 6-7, 10; Bareford v. General Dynamics Corp., 973 F.2d 1138 (5th Cir. 1992), cert. denied, 507 U.S. 1029 (1993); Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 546-47 (2d Cir. 1991); McDonnell Douglas Corp. v. United States, 37 Fed. Cl. 270 (1996); N.S.N. Int'l Indus. v. E.I. Dupont de Nemours & Co., 140 F.R.D. 275, 279 (S.D.N.Y. 1991), aff'd mem., 990 F.2d 623 (2d Cir. 1993);

-- expose intelligence-gathering methods or capabilities, id. at 8, citing Halkin II, 690 F.2d at 993; Black v. United States, 62 F.3d 1115 (8th Cir. 1995); Clift v. United States, 808 F. Supp. 101 (D. Conn. 1991); or

-- "unsettle diplomatic relations with a foreign government," id. at 8, citing Halkin II, 690 F.2d at 990 n.53; Attorney General v. The Irish People, 684 F.2d 928 (D.C. Cir. 1983).

The Court concluded that the government properly had asserted a formal claim of privilege with respect to the information sought to be protected, lodged by the heads of the intelligence agencies with "control over the matter, after actual consideration by [those] officers." Id. at 9 (quoting Reynolds, 345 U.S. at 7-8), 10 (referencing the declarations of Tenet, Hayden

and Hamre (incorporating by reference the declarations of Hayden and Minihan)). In so doing, the Court recognized that in assessing a claim of state secrets privilege, the scope of judicial review is narrow and deference is accorded the Executive Branch. Id. at 9, citing Northrop Corp., 751 F.2d at 402, quoting Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978) ("Halkin I") and United States v. Nixon, 418 U.S. 683 (1974); CIA v. Sims, 471 U.S. 159, 179-180 (1985) (deference accorded executive branch in the area of national security is warranted in light of executive's greater familiarity with interests and risks involved).

    2. <u>Categories of Information Held to be Protected by the State Secrets Privilege</u>

In holding that the United States had sufficiently demonstrated that disclosure of the subject information "could reasonably be expected to cause serious damage to the national security interest of the United States," August 15th Order at 11, the Court noted that the "extremely sensitive nature" of the materials, in addition to the interest in drafting an opinion that might appear on the public record, required the Court to keep "to a very generalized level," id. at 11 n.6, its discussion of the information contained in the classified declarations supporting its finding. The Court did outline, however, the categories of information in the IG reports that it held to be protected by the state secrets privilege:

(i) Information that would "threaten to reveal the identities of certain covert CIA officers," August 15th Order at 11 (citing Tenet Decl. (unclassified) at ¶¶ 9, 13):

The Court observed that "disclosure of the identities of these individuals in the clandestine service of the CIA [would] endanger their own safety [and] . . . that of their families, other government officials or foreign nationals with whom they associate." Id. (citing Tenet Decl. (unclassified) ¶ 14). The Court emphasized that "perhaps most importantly for purposes of this

privilege claim, disclosure of the covert agents identified in these materials could threaten the security of current U.S. intelligence operations ▓▓▓▓▓▓▓▓▓▓ Id. (citing Tenet Decl. (unclassified) ¶ 14; Tenet Decl. (classified) at 8 n.6; Hayden Decl. ¶ 15).

(ii) Information regarding "the location of certain covert CIA installations and activities," August 15th Order at 11:

The Court noted that disclosure of these activities could disrupt the United States' foreign relations, and "could degrade the effectiveness of such operations and thereby harm U.S. national security." Id. at 11-12 (citing Tenet Decl. (unclassified) ¶ 15).



(iv) Information "identify[ing] intelligence-gathering sources, methods and capabilities including liaison relationships with foreign governments," id. at 12 (citing Tenet Decl (unclassified) ¶¶ 12, 19-20):

The Court noted that "disclosure of information about the strengths of our intelligence sources and methods reasonably [could] harm national security" and that "exposures of areas of weakness could be equally, or perhaps more devastating to U.S. national security interests." Id. (citing Tenet Decl (unclassified) ¶¶ 18-21).

The Court found that the declarations "more than adequately established," id. at 12, the harm to the national security interest that could result from the disclosure of these reports of investigations of the allegations that comprise the very claims asserted in this suit.[3]

Based on the law of this case, and the identity of information between (a) that required by plaintiff to establish a *prima facie* case and/or required by the defendants to defend themselves; and (b) information already held by the Court to be protected by the state secrets privilege, dismissal of this suit is required.

## ARGUMENT

### I. DISMISSAL IS REQUIRED WHERE THE LITIGATION PROCESS POSES A SERIOUS RISK OF DISCLOSURE OF STATE SECRETS-PRIVILEGED INFORMATION

Our judicial system has long recognized that dismissal may be required where litigation would risk disclosure of state secrets because the very subject matter of the action is itself a secret. In Totten v. United States, 92 U.S. 105 (1875), the administrator of the estate of William Lloyd sought to recover compensation based on an alleged contract between Lloyd and President Lincoln under which Lloyd would gather intelligence on rebel troops during the Civil War. In holding that the suit could not be maintained, the Court asserted:

> It may be stated as a general principle, that public policy forbids the maintenance of any suit in a court of justice, the trial of which

---

[3] The August 15th Order also disposed of plaintiff's claim of entitlement to access state secrets-privileged information based on the security clearances granted to his counsel by the Justice Department Security Officer. Id. at 13-17. The Court found that the security clearances did not bestow upon plaintiff's counsel the requisite need-to-know for purposes of obtaining access to classified state secrets privileged information, id. at 13-15 (citing Executive Order 12958), and that the privilege protects the information from disclosure notwithstanding a trustworthiness determination with respect to the party seeking the information, id. at 14 (citing ample authority).

> would inevitably lead to the disclosure of matters which the law
> itself regards as confidential, and respecting which it will not allow
> the confidence to be violated.

92 U.S. at 107. The Court noted that "suits cannot be maintained which would require a disclosure of the confidences" protected by such privileges as attorney-client, husband-wife and physician-patient, id., and concluded that "[m]uch greater reason exists for the application of the principle to cases of contract for secret services with the government . . . ," id. See also Weinberger v. Catholic Action of Hawaii/Peace Education Project, 454 U.S. 139 (1981) (affirming the Totten principle in analogous circumstances ).

Since Totten, courts have held that dismissal of civil suits is appropriate, and at times required, where discovery and trial would lead inevitably to the disclosure of the United States' state secrets. See, e.g., Halkin II, 690 F.2d at 1001 ("As in the other cases in which the need to protect sensitive information affecting the national security clashes with fundamental constitutional rights of individuals, we believe that '[t]he responsibility must be where the power is' [citations omitted] . . . .where the Constitution compels the subordination of appellants' interest in the pursuit of their claims to the executive's duty to preserve our national security, this means that remedies for constitutional violations that cannot be proven under existing legal standards, if there are to be such remedies, must be provided by Congress"); Halkin I 598 F.2d at 9 (because state secrets privilege barred proof of fact that particular communications were intercepted by NSA, district court could properly dismiss claims against NSA defendants sued in individual capacity); Molerio v. FBI, 749 F.2d at 825 ("the effect of our determination with regard to the state secrets privilege is to prevent this issue from proceeding"). See also Black v. United States, 62 F.3d 1115 (8th Cir. 1995) (affirming dismissal on state secrets privilege grounds

of, *inter alia*, Bivens suit for alleged fourth amendment violations), cert. dismissed, 517 U.S. 1154 (1996); Bareford v. General Dynamics Corp., 973 F.2d 1138 (5th Cir. 1992) (dismissal required in manufacturing and design defect suit against manufacturer of military weapons system because trial would risk disclosure of highly sensitive information concerning defense system), cert. denied, 507 U.S. 1029 (1993); Zuckerbraun v. General Dynamics Corp., 935 F.2d 544 (2d Cir. 1991) (suit regarding wrongful death of sailor properly dismissed on grounds of state secret privilege); Weston v. Lockheed Missiles & Space Co., 881 F.2d 814, 815-16 (9th Cir. 1989) (state secrets privilege could provide adequate independent ground for dismissal of case in its entirety if case cannot be resolved without the disclosure of the privileged information); Vu Doc Guong v. United States, 860 F.2d 1063 (Fed. Cir. 1988) (dismissal required because action for breach of contract to perform covert military operations would divulge state secrets), cert. denied, 490 U.S. 1023 (1989); Fitzgerald v. Penthouse International, Ltd., 776 F.2d 1236, 1243-44 (4th Cir. 1985) ("no amount of effort and care on the part of the court and the parties will safeguard privileged material [and] dismissal is warranted"); Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268, 281 (4th Cir. 1980) (en banc) (dismissal required where prosecuting suit for tortious interference with future contract rights would require probing too close to state secrets); McDonnell Douglas Corp. v. United States, 37 Fed. Cl. 270, 280-81 (1996)(invocation of state secret privilege precluded further litigation of parties' claims; "We gave plaintiff an opportunity to make a *prima facie* showing that they could make a case without the privileged information. A claim should be dismissed if a *prima facie* showing cannot be accomplished safely, or if it would lead to a false result" ) (citing Farnsworth Cannon, Inc. v. Grimes and Molerio v. FBI, *supra*); Frost v. Perry, 919 F. Supp. 1459, 1468 (D. Nev. 1996)("[t]he military and state secrets privilege

alone can be the basis for dismissal of an entire case"); Maxwell v. First Nat'l Bank of Maryland, 143 F.R.D. 590, 598-99 (D. Md. 1991) (if information is essential to establishing plaintiff's *prima facie* case, dismissal is appropriate), aff'd, 998 F.2d 1009 (4th Cir. 1993), cert. denied, 510 U.S. 1091 (1994); Clift v. United States, 808 F. Supp. 101 (D. Conn. 1991) (dismissal required because disclosure of government's cryptographic encoding devices would imperil the national security); Nejad v. United States, 724 F. Supp. 753 (C.D. Cal. 1989)(state secret privilege barred claims by families and dependents of passengers killed on Iranian airliner shot down by United States missile).

Courts have adopted a two-step process in determining whether dismissal is appropriate: First, the court examines the subject of the information over which the government has asserted the state secrets privilege, and the explanation for the assertion, to determine whether a proper showing has been made that disclosure could harm the national security interest. See, e.g., August 15th Order at 10-12. The Court already has examined the subject of the information over which the privilege has been asserted in this case and has sustained the privilege. Second, because the effect of the privilege is simply to remove the information from the litigation, the next step requires courts to analyze whether the litigation can continue without the privileged information, either in its current, or a more narrow, form, or whether the case must be dismissed entirely. See Halkin II, 690 F.2d at 990-91; Fitzgerald, 776 F.2d at 1242; Bareford v. General Dynamics Corp., 973 F.2d at 1141.

The Fourth Circuit, sitting en banc, reaffirmed these principles in Farnsworth Cannon, Inc. v. Grimes, 635 F.2d at 281, a suit by a defense contractor alleging tortious interference with contract. The court held that dismissal was required in that case because "any attempt on the part

of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation." Subsequently in Fitzgerald, 776 F.2d at 1243, the Fourth Circuit affirmed dismissal in a libel suit between private parties because "the nature of proof to be presented" posed "a substantial threat that state secrets will be compromised." The Court noted that dismissal should not be ordered lightly, but recognized that dismissal was required "where, as here, the very question upon which the case turns is itself a state secret . . ." Id. at 1239 n.3.

In both Zuckerbraun v. General Dynamics Corp., 935 F.2d at 547-48, and Bareford v. General Dynamics Corp., 973 F.2d at 1142-44, the families of sailors who had been killed when an Iranian Exocet missile struck the U.S.S. Stark in the Persian Gulf brought tort claims against manufacturers of certain radar and other detections systems on the ship. They sought discovery, inter alia, of the design specifications of the weapons systems at issue and the rules of engagement under which the Stark was operating in an attempt to prove negligent manufacture or design. Both the Second Circuit and the Fifth Circuit recognized that dismissal of the actions was required because the information sought was subject to the claim of privilege asserted by the Secretary of the Navy and that without access to the information plaintiffs would be unable to establish a *prima facie* case. See also Halkin II, 690 F.2d at 998-99, and Salisbury v. United States, 690 F.2d 966, 974-77 (D.C. Cir. 1972) (affirming dismissal of suit because, without privileged information proving whether plaintiffs' communications were intercepted by the government, plaintiffs could not establish standing); Bowles v. United States, 950 F.2d 154, 156 (4th Cir. 1991) ("[i]f the case cannot be tried without compromising sensitive foreign policy

secrets, the case must be dismissed").

The state secrets-privileged information that provides the basis for dismissal need not be, as it is in this case, core to the claims and defenses. In McDonnell Douglas Corp. v. United States, the court observed that "even peripheral references" to sensitive classified information could prove too hazardous to permit the litigants to proceed. 77 Fed. Cl. at 285; see also Bareford, 973 F.2d at 1144 ("in some cases, it is appropriate that the courts restrict the parties' access not only to evidence which itself risks the disclosure of a state secret, but also those pieces of evidence or areas of questioning which press so closely upon highly sensitive material that they create a high risk of inadvertent or indirect disclosures"); Ellsberg v. Mitchell, 709 F.2d at 65 (dicta) (when a plaintiff has the incentive to draw as close as possible to the bounds of disclosure to prove its case, dismissal should follow an invocation of the privilege).

Courts have observed the potentially harsh result that dismissal of civil actions imposes, but have concluded nonetheless that "the state secret doctrine finds the greater public good -- ultimately the less harsh remedy -- to be dismissal." Bareford, 973 F.2d at 1144. See also Halkin II, 690 F.2d at 995 ("'In national security cases, some sacrifice to the ideals of the full adversary process [is] inevitable'")(quoting Military Audit Project v. Casey, 656 F.2d 724, 751 (D.C. Cir. 1981)); Heine v. Raus, 399 F.2d 785, 791 (4th Cir. 1968) (if private interests conflict with those of the government, "the interest of the individual litigant must give way to the government's privilege against disclosure of its secrets of state"), aff'd after remand, 432 F.2d 1007 (1970), cert. denied, 402 U.S. 914 (1971). Because further litigation of this case would risk exposure of information already held by this Court to be protected by the state secrets privilege, and because there is no way to litigate around that information -- central, as it is, to both plaintiff's claims and

- 13 -

defendants' defenses -- dismissal is appropriate and required.

### II. DISMISSAL OF THIS CASE IS REQUIRED BECAUSE WITHOUT STATE SECRETS-PRIVILEGED INFORMATION, PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE AND DEFENDANTS CANNOT DEFEND THEMSELVES.

#### A. State Secrets-Privileged Information Is Central to Plaintiff's Prima Facie Case

[Section II.A.1. of the classified version of this memorandum discusses the allegations of the Complaint ¶¶ 5, 9, 10; 13. Section II.A.2. discusses specific state secrets-privileged information that lies at the core of plaintiff's claim, and specific categories of information that this Court already has held to be subject to the state secrets privilege in the August 15th Order at 11. The section makes further reference to the Tenet Decl. (classified) regarding these categories of information. A footnote in that section identifies two individuals whose identity is protected by the state secrets privilege. The footnote references plaintiff's Local Rule 206 statement filed January 27, 2000 and Plaintiff's First Set of Requests for Admissions to one of the defendants. The section concludes that, because state secrets-privileged information is integral to plaintiff's *prima facie* case, dismissal is required.]

#### B. Plaintiff Could Not, When Directed By the Court To Do So, Present a Means to Establish His Case Absent the Use of Information Already Held By ThisCourt to be Protected By the State Secrets Privilege.

In response to the Court's August 15th Order that he do so, plaintiff failed to identify, at the August 21st hearing, how he would establish his case absent state secrets-privileged information. See August 15th Order II at 2; Tr. 8-21-00 II at 2-9. Indeed, plaintiff's counsel effectively conceded that he could not do so without "get[ting] into classified information." Tr. 8-21-00 I at 2, lines 11-13. See also id. at 3, lines 1-6, 11-17 (Mr. Leighton anticipating that, in

responding to the Court's request, Mr. Moody – plaintiff's uncleared counsel – would be required to leave the courtroom). In fact, plaintiff's purportedly responsive recitation at the August 21st hearing affirms that state secrets-privileged information is integral to plaintiff's case, and that plaintiff cannot litigate around that information.

[The classified version of this memorandum discusses specific alleged evidence that plaintiff's counsel identified during the August 21st hearing as comprising, *inter alia*, the evidence upon which plaintiff would rely to establish his case. It also discusses the respects in which this information has been held by the August 15th Order to be protected by the states secrets privilege, with further reference to the Tenet Declaration (classified) and Hayden Declaration (also classified). The categories of information referenced include those pertaining to the identities of covert intelligence officers; location of covert installations; intelligence-gathering capabilities, sources, methods and capabilities; the organization and functions of U.S. intelligence operations; and other extremely sensitive information.]

Plaintiff's attempt to demonstrate how he would depose defendant Huddle concerning the source of Huddle's information about plaintiff's phone conversation, see Tr. 8-21-00 II, page 5, lines 17 - 22; page 7, lines15-19, does not establish how plaintiff would make out a *prima facie* case without state secrets-privileged information. Contrary to plaintiff's speculation, id., the United States would *not* assert the state secrets privilege in response to that question of Huddle because the answer is not privileged: Huddle learned of the information about plaintiff's phone conversation through garden variety office (embassy) gossip. See Declaration of Franklin Huddle, Jr., executed December 1, 1994, attached as Exhibit A to Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgement ("Defendants' MSJ"), ¶¶ 4, 5; see also

Declaration of David B. Sikorra, executed November 28, 1994, attached as Exhibit C to Defendants' MSJ, ¶ 3. Plaintiff disbelieves Huddle's sworn testimony. But creating a dispute of fact regarding who told Huddle the information does not establish a *prima facie* case of unlawful electronic surveillance. Plaintiff would still be required to demonstrate that the alleged electronic surveillance occurred and that one or more of the defendants caused it, and defendants would be required to demonstrate that the alleged intercept did not happen and could not have happened -- all of which implicates state secrets-privileged information.

### C. The Defendants Cannot Defend Themselves Without Disclosing Information Already Held By This Court to be Protected By the State Secrets Privilege.

Even if it were possible for plaintiff to establish a *prima facie* case without state secrets-privileged information -- something he cannot do -- this action would be subject to dismissal on the independent ground that the defendants could not defend themselves on the merits without the use of state secrets already found by this Court to be privileged in this litigation. Although plaintiff bears the burden of proof on all elements of his claims, the defendants, from a practical standpoint, would be required to establish certain facts should the case proceed further, both to disprove plaintiff's specific allegations and to rebut reasonably anticipated preconceptions, false as they might be, regarding capabilities and conduct of U.S. intelligence institutions.

The classified version of this memorandum points out that the defendants would be required to demonstrate that one of them did not, in August 1993, either personally or by supervising others, participate in, or cause to occur, an alleged electronic eavesdropping on plaintiff's 11:00 pm phone conversation with a DEA subordinate from plaintiff's government-leased quarters. Defendants would also need to prove that the information incorporated in the other defendant's August 1993 cable at issue in the suit was not derived from the alleged

electronic surveillance. The breadth of the information discussed in this section necessarily results from the circumstance that both defendants would need to introduce evidence in their case in chief to "prove a negative" – that is, that the eavesdropping *did not happen* and, part and parcel of that proposition, that it *could not have happened.* This they cannot do without information protected from disclosure by the state secrets privilege.

The classified version of the memorandum proceeds to discuss specific evidence that the first defendant would seek to introduce in this case but would be precluded from doing so based on the state secrets privilege. This evidence is responsive to plaintiff's claims, and deals with the ▓▓▓▓▓▓▓▓▓▓ opportunity, and motive on the part of that defendant. The memorandum also points out that, even though that defendant, absent privilege concerns, would deny certain requests for admissions, which denial would be probative of his innocence, he is precluded from doing so by the state secrets privilege. Were this case to go forward, then, the state secrets privilege would operate to deprive that defendant of his ability to establish basic facts to rebut plaintiff's claims.

Plaintiff alleges that the other defendant, Huddle, received information procured through electronic surveillance sometime between 11:00 pm (the time of plaintiff's phone conversation with his subordinate Sikorra), and 9:30 am the following morning (when Huddle drafted the subject cable) from an intelligence source. In order to demonstrate that this did not happen, Huddle would have to learn through discovery information about audio intercepts and the identity of personnel and institutions that conduct them, of which he currently has little or no knowledge. Huddle does not have a detailed understanding of the identities of the individuals whom plaintiff might allege gave Huddle the subject information. Huddle would thus need to ascertain the

organizational identities and capabilities of those whom he believes might have had the potential to have effected the alleged surveillance. He would need this information to demonstrate, in turn, that he did not have the requisite contact, through any medium, with any of these individuals prior to the drafting of his cable. But all of this information would be subject to the state secrets privilege as revealing sources, methods and capabilities of U.S. intelligence institutions, as well as covert identities of intelligence officers. Thus, were this case to go forward, Huddle would be precluded from obtaining discovery of information tending to show that he is not liable for the acts attributed to him.

## CONCLUSION

Dismissal of this case based on the state secrets privilege is not only proper but required. Proceeding with this litigation would require disclosure of state secrets concerning the identities of covert intelligence officers; covert installations; intelligence-gathering capabilities, sources and methods, including the use of liaison relationships with foreign intelligence services; and the organization and functions of U.S. intelligence operations. The disclosure of this information raises potential dangers having serious intelligence, military, and diplomatic implications. Confirming or denying this information would provide foreign intelligence analysts with information concerning this nation's intelligence priorities and procedures that could cause serious danger to the national security interest. "By revealing intelligence personnel, installations, functions, sources and methods, such disclosure would impede the [CIA's] ability to collect foreign intelligence information critical to the formulation and implementation of U.S. foreign and national security policy." Tenet Decl. (unclassified) ¶ 22. Under the governing law, dismissal is

warranted and required.

Respectfully submitted,

*/s/ Wilma A. Lewis*
WILMA A. LEWIS, D.C. Bar # 358637
United States Attorney

*/s/ Mark E. Nagle*
MARK E. NAGLE, D.C. Bar # 416364
Assistant United States Attorney

*/s/*
LISA S. GOLDFLUSS, D.C. Bar # 417787
MADELYN E. JOHNSON, D.C. Bar # 292318
Assistant United States Attorneys
555 Fourth Street, N.W., 10th Fl.
Washington, D.C. 20001
Tel.: 202-514-7198
Attorneys for Defendants