DEC.15.2004  11:14AM   DOJ LIT SECURITY                                    NO.2151  P.3



TOP SECRET/SCI

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD HORN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 94-1756 (RCL) |
| ) | |
| v. ) | (UNDER SEAL) |
| ) | |
| FRANKLIN HUDDLE, JR., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION.

Before the Court are several motions by the parties. Of central import are two motions, one by plaintiff and one by the United States. On November 7, 2000 the United States filed a consent motion to intervene in this case and simultaneously filed a Motion to Dismiss Civil Action 94-1756 Based On the State Secrets Privilege ("Motion to Dismiss").[1] On November 13, 2000 plaintiff filed Plaintiff's Motion to Adopt the Classified Information Procedures Act ("Motion to Adopt CIPA"), 18 U.S.C. App. §3. These motions are related. Plaintiff's Motion to Adopt CIPA is offered as an alternative to dismissal. Plaintiff proposes that the Court adopt CIPA, adapt the act to the civil rules, and apply it to this case as a mechanism whereby the case can move forward. Also before the Court are two related motions: Plaintiff's Motion for the Court to Order the Court Security Officer to Conduct the Process for Plaintiff's Counsel's Secretaries to Receive a Security Clearance (Apr. 11, 2000); and Plaintiff's Motion for the Court Security Officer to Conduct the Process for Plaintiff, Richard A. Horn to Receive a Security Clearance, Since He is Now Retired from DEA (Jan. 10, 2000). Upon consideration of the written submissions of the parties, the law, and the facts of this case, the Court shall grant the

---

[1] The Court dismissed Civil Action number 96-2120 on August 15, 2000 and simultaneously vacated the portion of the Court's March 24, 1997 Order that consolidated the two cases.

United States Motion to Dismiss and shall deny plaintiff's Motion to Adopt CIPA. Collateral motions shall be resolved in conclusion.

Background

Plaintiff is a former employee of the U.S. Drug Enforcement Agency ("DEA") who brings this suit for actions that occurred while he was stationed in Rangoon, Burma as the DEA country attaché. Defendants are Franklin Huddle, Jr. ("Defendant I"), a State Department employee and Chief of Mission of the Embassy in Rangoon Burma, and Arthur Brown ("Defendant II"), a Central Intelligence Agency ("CIA") employee ▓▓▓▓ in Rangoon, Burma.

Plaintiff brought a Bivens[2] claim against Defendant I and Defendant II for alleged actions that violated his Fourth Amendment rights under the Constitution. Compl. ¶18. Plaintiff alleges that on or about August 12, 1993, Defendant II or someone acting on his behalf "tapped" his late night telephone call, recorded it, and disclosed the contents to Defendant I. Compl. ¶13.[3] Plaintiff argues that Defendant II either performed the tapping himself or ordered another to perform it in retaliation for plaintiff's act of reporting Defendant II to DEA headquarters for specific acts taken by Defendant II to undermine DEA operations in Burma. Compl. ¶9. Specifically, plaintiff alleges that he reported that Defendant II turned over a copy of a DEA document that included the name of a confidential DEA informant to certain persons within the Burmese government without DEA permission. Id. Subsequently, plaintiff's allegations regarding the handling of the DEA document was the subject of an Inspector General Report that the Court determined on August 15, 2000 to be protected from disclosure by the state secrets privilege.

Plaintiff further argues that the purpose of the phone tap was to assist Defendant I in obtaining information that would justify Defendant I demanding plaintiff's removal from Burma

---

[2] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).
[3] Plaintiff's Complaint included additional statutory claims but the Court dismissed these claims in its February 10, 1997 Opinion (classified).

2

TOP SECRET/SCI

or otherwise justify expelling him directly. Compl. ¶10. Plaintiff alleges that Defendant I sought plaintiff's removal from Burma as retaliation for plaintiff sending reports to congressmen that conflicted with State Department reports prepared by Defendant I. Compl. ¶11-12. Plaintiff supports his accusation of wire tapping with the contents of a cable sent by Defendant I on or about August 13, 1993 to his superiors in the State Department that contained allegedly verbatim quotations from the August 12, 1993 phone conversation. Compl. ¶13. The alleged phone tapping incident is the subject of a second Inspector General Report that the Court determined on August 15, 2000 to be protected from disclosure by the state secrets privilege.

The relevant procedural background to this case, originally filed in 1994, begins in 2000. On August 15, 2000 the Court ruled in favor of the United States on a motion to assert state secrets privilege over the two Inspector General Reports ("IG Reports") mentioned above and certain attachments to those reports.[4] After granting the United States' motion to assert state secrets privilege over the IG Reports, the Court invited plaintiff to demonstrate at an August 21, 2000 hearing how the case could proceed in light of the state secrets privilege. See Aug. 15, 2000 Order. At that hearing, the Court further invited the parties to submit follow up briefing on the issue. Aug. 21, 2000 Hr'g Tr. at 12:1-4, 19:5-7.

Plaintiff proffered certain facts at the hearing and further filed the pending motion to adopt CIPA as an alternative to dismissal. Approximately one week prior the United States moved to intervene and filed its Motion to Dismiss. Plaintiff has not filed an opposition to the United States Motion to Dismiss. Plaintiff has filed, however, several motions for extension of time to oppose the motion to dismiss and has asked the Court to order investigations and, if found trustworthy, top secret clearances to both the plaintiff and to plaintiff's counsel's

---

[4] See Aug. 15, 2000 Opinion at 4 n. 4-5 (classified) (finding the state secret privilege applied to the IG Reports in their entirety and only certain of their attachments and listing those attachments already provided to the plaintiff).

3

**TOP SECRET/SCI**

secretary.[5] Plaintiff's counsel asserts that his secretary must be cleared in order to type any opposition and that plaintiff, who lost his top secret clearance upon retirement, must be cleared to allow plaintiff and plaintiff's counsel to collaborate on the opposition, which plaintiff's counsel asserts requires consideration of classified materials.

In order to resolve the United States' Motion to Dismiss the Court must determine whether it can resolve the motion without the assistance of an opposition from plaintiff. If the Court determines that it requires the assistance of plaintiff's counsel then, as plaintiff has portrayed it, the Court must order, over the government's opposition, background investigations and the award of clearances to both plaintiff and plaintiff's counsel's secretary.

The Court finds guidance in the D.C. Circuit's opinion in <u>Stillman v. Central Intelligence Agency</u>, 319 F.3d 546 (D.C. Cir. 2003). Stillman, a former government employee, submitted a book manuscript for prepublication review. The government determined it was classified and denied his right to publish, prompting Stillman to sue. As part of the suit, plaintiff's counsel filed a motion to compel the government to grant him access to the classified portions of the manuscript. The district court judge determined that he required the assistance of plaintiff's counsel in determining whether the government's classification decision was correct and so ordered the government to conduct the requisite background investigation and, if trustworthy, to turn over the classified manuscript to plaintiffs' counsel. On appeal of the turnover order, the Court of Appeals reversed and remanded, finding that the district judge should have attempted to resolve the classification issue <u>ex parte</u>, without the assistance of plaintiff's counsel, before ordering the background investigation and turn over of the manuscript. According to the Court of Appeals the district court should "first determine whether it can resolve the classification ex parte. . . . and consider any pleadings and declarations filed by the Government as well as any

---

[5] Plaintiff's counsel was investigated and awarded a top-secret clearance earlier in this case.

4

TOP SECRET/SCI

materials filed by [plaintiff]." Stillman, 319 F.3d at 548. If the court is unable to resolve the classification in this manner "then the court should consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security. Only then should it decide whether to enter an order granting [plaintiff's counsel] access to the manuscript." Id. at 549. The Court of Appeals further acknowledged that even if the district court made this determination the United States would have a right to appeal.

The Court here confronts similar, though not identical, facts and finds the same procedure appropriate. The United States served an unclassified version of its Motion to Dismiss on plaintiff's counsel. Plaintiff's counsel asserts that an opposition will require use of classified information, collaboration with plaintiff, and typing by his secretary. Although plaintiff's counsel is not moving to compel the United States to turn over the classified version of its Motion to Dismiss or any other classified documents, counsel is asking to use, discuss, and cite to classified information in order to draft his opposition and therefore requests the Court to order background investigations on two individuals. Of particular relevance is that the United States has asserted that plaintiff and plaintiff's counsel are in inadvertent possession of knowledge of classified programs above the clearance level they currently possess. An award of a clearance would assist the further discussion and dissemination of classified information that neither plaintiff nor plaintiff's counsel is supposed to possess in the first place.

The Court follows Stillman and first determines whether or not it can resolve the Motion to Dismiss ex parte based on the existing pleadings and declarations submitted by the government and by plaintiff. The Court finds that it can resolve the pending motions without the benefit of an additional opposition to the Motion to Dismiss by plaintiff. The plaintiff's Motion to Adopt CIPA is sufficiently related to the Motion to Dismiss so as to afford the Court an

5

**TOP SECRET/SCI**

alternative perspective and argument that, along with the <u>ex parte</u> filings of the United States, enables the Court to resolve the Motion to Dismiss.

An August 15, 2000 Order put the plaintiff on notice that the Court was considering dismissal even before the United States filed its motion. Aug. 15, 2000 Order ("Having sustained the United States' Assertion of State Secrets Privilege . . . it is not apparent to the court how plaintiff plans to proceed with discovery in this case."). At the August 21 hearing, the Court summarized the next step saying: "It seems to me then that the issues will be teed up with the plaintiff's motion for a Rule 26 order . . . and the defendants' motion to dismiss." Aug. 21, 2000 Hr'g Tr. at 12:1-4. Plaintiff was on notice as of that hearing that dismissal of his case was a likely outcome, and was the logical follow-up to a government motion on state secrets. On November 7, 2000 the United States filed its Motion to Dismiss on state secrets grounds and served plaintiff's counsel with the unclassified version of its motion. On November 13, 2000, in light of the August 21, 2000 hearing and the United States' motion, plaintiff filed the Motion to Adopt CIPA. The Motion to Dismiss and Motion to Adopt CIPA represent opposing views on the future of this case. The United States argues that the case should be dismissed because the Court granted the state secrets privilege over the IG Reports, including much of the facts and circumstances of this civil action. The plaintiff, by contrast, argues that the Court can and should continue the case despite granting the state secrets privilege over the IG Reports by adopting CIPA for use in civil suits. The Court finds these briefs sufficiently related that it obviates the need for plaintiff to file a separate opposition to the Motion to Dismiss.

Furthermore, the Court finds that even if plaintiff had not filed its Motion to Adopt CIPA that plaintiff's counsel had adequate time to file an opposition to the unclassified motion to dismiss and could have relied on counsel's own knowledge of the case. The Motion to Dismiss

TOP SECRET/SCI

was filed six years after litigation began and the Court is certain that plaintiff's counsel possessed adequate knowledge of the facts to file an opposition without the assistance of plaintiff. Indeed, plaintiff's counsel admitted as much, stating: "I've spent thousands of hours on this case because I know [plaintiff] and I believe in his cause." Aug. 21, 2000 Hr'g Tr. at 15:17-18. Moreover, plaintiff's counsel's motion requesting clearance for his secretary because he does not or cannot type is without merit. Plaintiff's counsel offers no disability or handicap that prohibits him from operating a computer or typewriter. At most, plaintiff's counsel merely types very slowly. And finally, as the Court has on occasion received hand-written briefs from parties, plaintiff's counsel has offered no reason why he could not do likewise.

In the alternative, even if the Court were to find that it could not resolve the Motion to Dismiss without the assistance of plaintiff's counsel, it would still be required to balance that need against the United States' interest in national security. Stillman, 319 F.3d at 549. But the result of such balancing was determined when the Court found the state secrets privilege applied to the information in the IG Reports and certain attachments and made the determination that that information was protected from disclosure. If the Court were to award clearances it would be encouraging the dissemination of information found to be so important that it was protected from further disclosure by the state secrets privilege. This is because plaintiff and plaintiff's counsel are already in possession of classified information that is beyond their security clearance. For example, plaintiff and plaintiff's counsel are aware of the presence of ▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Marlow Strand, Aug. 21, 2000 Hr'g Tr. at 4:14-17, as well as the presence of CIA covert operatives at the embassy ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Having found that the state secrets privilege provides an absolute bar keeping

7

**TOP SECRET/SCI**

certain information out of the litigation, the Court finds its interest in having the assistance of plaintiff's counsel outweighed by the United States' interest in national security.

**Motion to Dismiss**

In its August 15, 2000 Opinion the Court sustained the United States assertion of the state secrets privilege over certain portions of two IG Reports and certain attachments to those reports. The Court must now address, on motion of the United States, whether or not the case must be dismissed as a result of the removal of the information contained in the IG Reports from the case. For the reasons set forth below the Court concludes that in the absence of the material protected from disclosure by the state secrets privilege the case must be dismissed.

The Court finds three independent grounds for dismissal. First, the Court finds that dismissal is required because the plaintiff cannot make out a prima facie case absent the protected material. Halkin v. Helms, 690 F.2d 977, 988-89 (D.C. Cir. 1982) ("Halkin II") (finding dismissal appropriate where state secrets prevented plaintiffs from making a prima facie case). Second, the case must be dismissed because the state secrets privilege deprives the defendants of information required in their defense. Molerio v. Fed. Bureau of Investigation, 749 F.2d 815, 825 (D.C. Cir. 1984) (finding case should be dismissed because court's evaluation of state secrets privilege revealed existence of a valid defense that defendants could not assert because of privilege); see also Bareford v. General Dynamics Corp., 973 F.2d 1138, 1141 (5th Cir. 1992) (citing cases). Third, the case must be dismissed because the very subject matter of plaintiff's action is a state secret and "witnesses with knowledge of secret information may divulge that information during trial because the plaintiffs 'would have every incentive to probe as close to the core secrets as the trial judge would permit. Such probing in open court would

**TOP SECRET/SCI**

inevitably be revealing.'" Bareford, 973 F.2d at 1141 (quoting Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268, 281 (4th Cir. 1980)).

The first stage in determining that dismissal is appropriate in this case is a determination that the state secrets privilege applies. The Court completed this step in its August 15, 2000 Opinion. There the Court determined that "the government has met the procedural and substantive requirements for invoking the state secrets privilege." Aug. 15, 2000 Op. at 10 (unclassified). Having so determined, the Court vacated its February 1, 2000 order requiring disclosure of portions of the IG Reports and certain attachments to the plaintiff and found that the state secrets privilege barred disclosure of these same documents.

The information contained in the IG Reports and those attachments protected by the state secrets privilege has now been removed from the case. If the plaintiff can no longer make a prima facie case without the privileged material then the case must be dismissed. Halkin II, 690 F.2d at 988-89; Ellsberg v. Mitchell, 709 F.2d 51, 65 (D.C. Cir. 1983); Bareford, 973 F.2d at 1141-43; Fitzgerald v. Penthouse Int'l Ltd., 776 F.2d 1236 (4th Cir. 1985).

In its August 15, 2000 Opinion the Court set forth the types of information contained within the IG reports that justified exercise of the state secrets privilege over those reports. The Court found information in the following categories protected from disclosure: 1) information that "would threaten to reveal the identities of certain covert CIA officers"; 2) information as to the "location of certain covert CIA installations and activities"; 3) "information as to the organizational structure and functions of the CIA ▮▮▮▮▮▮▮ and 4) information on "intelligence gathering sources, methods and capabilities, including liaison relationships with foreign governments." Aug. 15, 2000 Op. at 11-12.

9

TOP SECRET/SCI

Plaintiff's prima facie case is rife with material that falls within these categories. As to Defendant II, virtually all information relating to the prima facie case against this defendant is now protected by the state secrets privilege. Defendant II's identity as a covert CIA officer is protected as is the fact that [he served ▓▓▓▓ in Rangoon, Burma] and had subordinate CIA officers working under him.

Information regarding [the phone tap] is likewise privileged as falling within these categories. Specifically, whether or not Defendant II had the personal capacity, training, or equipment necessary [to conduct phone taps] and whether or not any of his subordinates did is privileged. The kinds and types ▓▓▓▓ are privileged. Furthermore, the fact that [NSA had employees such as Marlow Strand ▓▓▓▓

▓▓▓▓

▓▓▓▓ as is the identity ▓▓▓▓ of Marlow Strand, ▓▓▓▓] Thus, the Court finds that because of the state secrets privilege all evidence that plaintiff might conceivably obtain to prove the existence of the phone tap is privileged. Plaintiff cannot make out a prima facie case simply by offering the contents of the cable, allege that it contains quotes from his conversation, and then claim that the inference is that the information must have been the result of a phone tap. Yet this inference is all that remains.

Plaintiff faces the same problem as to Defendant I. Even though it is unclassified that Defendant I worked for the State Department, plaintiff cannot establish that the information in the cable came from a phone tap. At most plaintiff has a dispute about whether or not Defendant I learned the information from another person or from a phone tap. But plaintiff cannot establish

TOP SECRET/SCI

a prima facie case by offering any evidence that the phone tap occurred. Therefore, plaintiff's case must be dismissed because plaintiff cannot establish a prima facie case against either defendant.

Plaintiff's case must also be dismissed on a second ground: the state secrets privilege deprives the defendants of information required in their defense. Molerio v. Fed. Bureau of Investigation, 749 F.2d 815, 825 (D.C. Cir. 1984); Bareford v. General Dynamics Corp., 973 F.2d 1138, 1141 (5th Cir. 1992). In order to defend himself, Defendant II would require information that is protected from disclosure by the privilege ███████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Similarly, Defendant I cannot prove that he did not receive information from a phone tap because that information is privileged. Defendant I would need to but could not show that he did not have any contact with any CIA operatives ███████████ in order to receive the contents of the phone tap. The identities, existence, and jobs of these operatives are privileged.

The third ground for dismissing plaintiff's case is that the very subject matter of plaintiff's action is a state secret. Bareford, 973 F.2d at 1141; Farnsworth Cannon, Inc., 635 F.2d at 281 (where "the danger of inadvertent compromise of the protected state secrets outweighs the public and private interests in attempting formally to resolve the dispute while honoring the privilege" the case should be dismissed) (Phillips, J., concurring and dissenting); Fitzgerald, 776 F.2d at 1241-42 ("in some circumstances sensitive military secrets will be so central to the

11

TOP SECRET/SCI

subject matter of the litigation that any attempt to proceed will threaten disclosure of privileged matters"). At the heart of plaintiff's claim is whether or not his phone was tapped and it is this information that is at the center of the state secrets privilege. From the existence of the phone tap flows the identities of covert CIA ███████████████████████████████████████ The danger of inadvertent disclosure of a state secret would be highest in the examination of any witness on the topic of the phone tap and outweighs plaintiff's interest in the suit.

The Court finds that no amount of effort or care on the part of the Court in overseeing discovery or trial can safeguard the privileged material. Therefore there is no way to try this particular case without compromising sensitive information and the case must be dismissed.

Motion to Adopt CIPA

Plaintiff moves this Court to adopt CIPA as a mechanism that would allow the case to move forward. The Court has already concluded that the case must be dismissed because of the removal of information protected by the state secrets privilege and so plaintiff's motion is moot. However, even if the case could move forward, the Court cannot adopt CIPA as a mechanism for allowing it to do so. First, the plain language of the statute makes it clear that the statute only applies to criminal cases not to civil cases. 18 U.S.C. App. 3 §3 states that "[u]pon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any _criminal_ case in a district court of the United States." (emphasis added). The Court will not look beyond the plain language of the statute where that language is clear and unambiguous. Estate of Cowart v. Nicklos Drilling

**TOP SECRET/SCI**

Co., 505 U.S. 469, 475 (1992) ("[W]hen a statute speaks with clarity to an issue judicial inquiry into that statute's meaning, in all but the most extraordinary circumstance, is finished.").

Second, the state secrets privilege is absolute. United States v. Reynolds, 345 U.S. 1, 10-11 (1953) ( stating that "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake"); see also Molerio, 749 F.2d at 821; Ellsberg, 709 F.2d at 56; Halkin II, 690 F.2d at 990. If the Court adopted CIPA and then proceeded to direct the turnover of materials protected by the state secrets privilege, the privilege would not be absolute. Instead, the privilege would become subjected to some kind of balancing test whereby the Court could determine that in certain cases notwithstanding the privilege that the information should be produced. The Court can find no support for such a technique. The analysis of the state secrets privilege does not require consideration of the type of claim that plaintiff is filing or balance the plaintiff's need for the information. Reynolds, 345 U.S. at 11 (noting that even though "the showing of necessity ... determine[s] how far the court should probe ... even the most compelling claim of necessity cannot overcome the privilege"). Furthermore, the fact that plaintiff is filing a Bivens claim for violation of his constitutional right is not a trump card. Halkin II, 690 F.2d at 990 (upholding dismissal of a Bivens claim because information essential to the claim was protected from disclosure by the state secrets privilege); Black v. United States, 62 F.3d 1115, 1118 (8th Cir. 1995) (same). Thus the Court shall not adopt CIPA as a mechanism for allowing plaintiff's case to go forward.

**Conclusion**

Having determined that the state secrets privilege bars disclosure of the IG Reports and certain attachments and upon consideration of the United States' Motion to Dismiss and plaintiff's Motion to Adopt CIPA, the Court finds that absent the information protected by the

## TOP SECRET/SCI

state secrets privilege the case cannot continue and must be dismissed. As a result of the state secrets privilege plaintiff cannot make out a prima facie case, defendants cannot present facts necessary to their defense, and the very subject matter at the heart of this case is protected from disclosure as a state secret. Furthermore, the Court cannot and will not adopt CIPA as a mechanism for allowing the case to go forward. Plaintiff's Biven's claim against Franklin Huddle, Jr., Defendant I, and Arthur Brown, Defendant II, shall be dismissed.

As a result of granting the United States' Motion to Dismiss, Plaintiff's Motion for the Court to Order the Court Security Officer to Conduct the Process for Plaintiff's Counsel's Secretaries to Receive a Security Clearance (Apr. 11, 2000) and Plaintiff's Motion for the Court Security Officer to Conduct the Process for Plaintiff, Richard A. Horn to Receive a Security Clearance, Since He is Now Retired from DEA (Jan. 10, 2000) shall be denied as moot. A separate order shall issue this date.

Date: July 28, 2004

Royce C. Lamberth
ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE