UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD HORN,

    Plaintiff,

v.

FRANKLIN HUDDLE, JR., *et al.*,

    Defendants.

Civil Action No. 94-1756 (RCL)

(UNDER SEAL)

## MEMORANDUM OPINION

Now before the Court is plaintiff Horn's motion [157] for relief from judgment. Upon consideration of the motion, the opposition of movants United States of America [159] and Arthur Brown [160], the plaintiff's reply [162], the entire record herein, and applicable law, the Court will GRANT plaintiff's motion in part for the reasons set forth below.

### I. BACKGROUND

In 1993, plaintiff Horn was stationed in Rangoon, Burma, as the country attaché for the United States Drug Enforcement Agency.[1] Horn's complaint is a *Bivens* action that alleges that Franklin "Pancho" Huddle, Jr., an employee of the State Department, and Arthur Brown, an employee of the CIA, illegally engaged in electronic eavesdropping of Horn's telephone calls in violation of the Fourth Amendment. Horn alleges that Huddle and Brown eavesdropped on a call that Horn made to his subordinate in order to obtain information that Huddle and Brown could

---

[1] A more extensive discussion of the underlying facts can be found in a recent declassified opinion by the D.C. Circuit, *In re Sealed Case*, 494 F.3d 139 (D.C. Cir. 2007).

1

use to justify Horn's transfer out of Burma. In 1994, when Horn filed his complaint, defendant Brown's identity was classified. As a result, Brown is referred to in previous Court documents as "Defendant II."

On July 28, 2004, this Court granted the government's motion to dismiss Horn's complaint as to all defendants. The Court of Appeals affirmed as to "Defendant II" (Brown) but reversed as to defendant Huddle, holding that Horn should be given an opportunity to "establish a prima facie case without using the privileged [state secret] information." 494 F.3d 139, 141 (D.C. Cir. 2007). With respect to "Defendant II," the Circuit affirmed this Court's dismissal because "nothing about this person would be admissible in evidence at trial." 494 F.3d at 147.

Following remand to this Court, the government revealed that "Defendant II" could actually be referred to as Arthur Brown and that he could have been referred to by his name since 2002. This Court learned this through the government's filing [156] on January 31, 2008, in which Department of Justice attorney Paul Freeborne[2] stated that: "Counsel for the United States recently learned that in 2002, Defendant II's cover was 'lifted' and 'rolled back' to his entrance on duty date with the Central Intelligence Agency."

After the government's disclosure, the plaintiff filed the present motion asking the Court to reinstate Brown as a defendant because of "fraud on the court."

## II.  ANALYSIS

Federal Rule of Civil Procedure 60 governs relief from a judgment or order. Rule

---

[2]Mr. Freeborne began working on this case following remand to this Court. He should be commended for his integrity in bringing this matter to the Court's attention.

2

60(b)(3) states that a court may relieve a party from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Rule 60(c) states that a motion under Rule 60(b)(3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." However, Rule 60(d)(3) states that the above rules "do not limit a court's power to set aside a judgment for fraud on the court."[3] In other words, the one-year statute of limitations does not apply when there was a fraud on the court. *See Baltia Air Lines, Inc., v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996).

In this case, much of the alleged fraud occurred more than one year before the plaintiff filed his Rule 60 motion. Accordingly, the Court must determine whether the fraud, if it occurred, was a "fraud on the court" under Rule 60(d)(3).

In making the distinction between fraud and fraud on the court, courts have noted that "fraud on the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Baltia Air Lines*, 98 F.3d at 642. Examples of fraud on the court "include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony." *Baltia*, 98 F.3d at 643. The test for fraud on the court has also been formulated as requiring conduct: 1) on the part of an

---

[3]There was considerable confusion in the pleadings about whether the plaintiff's "fraud on the court" motion was a Rule 60(b) motion or a Rule 60(d) motion. This confusion was likely due in part to the fact that Rule 60 was stylistically amended in 2008. Before 2008, the language about a court's ability to modify a judgment because of fraud on the court was found under Rule 60(b)(6). In 2008, that language was moved to a newly created Rule 60(d)(3). The fact that the plaintiff styled his motion as one under Rule 60(b) is of no moment because both parties addressed the plaintiff's claim that there was a "fraud on the court." Moreover, there are no formal requirements for bringing a claim for fraud on the court (and the court can do so on its own motion); misstyling the plea for relief is not grounds for denying the motion. *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002).

officer of the court; 2) that is directed to the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; 5) that deceives the court. *Workman v. Bell*, 227 F.3d 331, 336 (6th Cir. 2000).

In making the determination about whether fraud on the court occurred in this case, the Court must examine the facts that gave rise to the allegation. In 2000, the government filed an affidavit of the then director of the Central Intelligence Agency, George J. Tenet, in support of its motion to dismiss. In the affidavit, Tenet stated that Brown was a "covert CIA employee." (Pl.'s Mot. 4.) Indeed, in 2000, Tenet's statement was accurate. As stated above, however, the CIA "lifted" Brown's cover in 2002. The CIA also "rolled back" his cover to February 19, 1980 (which means that Brown can publicly admit he was employed by the CIA from that date forward). (Gov't Opp'n 5.) Accordingly, because a motion to dismiss the case was pending in 2002, in which the government argued that Brown was a covert CIA operative, the government should have informed the Court of Brown's changed circumstances. Nevertheless, a failure to communicate within the CIA and between the CIA and the Department of Justice resulted in this Court not being informed of the change in Brown's status prior to its July 28, 2004 ruling. Specifically, the office of general counsel within the CIA—which was involved in this litigation—was not informed of the change in Brown's status until 2005. (*See* Gov't Opp'n Ex. 1, Rizzo Aff. ¶ 5.) Brown himself, who was at that point represented by the United States Department of Justice, also failed to notify the Department of Justice and this Court of his changed circumstances prior to the 2004 ruling. While ruling on the case in 2004, therefore, this Court was operating under the mistaken belief that Brown's identity was covert.

At that point, however, while the submissions of the United States were inaccurate and misleading, the facts probably did not give rise to fraud on the court because the false submission was not "directed to the judicial machinery itself." *Baltia Air Lines, Inc.*, 98 F.3d at 642 (D.C. Cir. 1996). Even if Brown's failure to correct the Court's mistaken assumption that his identity was covert could be considered "perjury," it would not give rise to relief. No officer of the court had yet been involved in intentional actions to mislead the Court. However, the conduct of an attorney within the CIA's office of general counsel in 2005 escalated this case from one of simple misrepresentation to fraud on the court.

In 2005, this case was pending on appeal before the D.C. Circuit. Mr. Brown was the Chief of East Asia, a division within NCS. (Rizzo Aff. ¶ 26.) The East Asia Division has an OGC attorney assigned to it who serves as its legal advisor. (*Id.*) Mr. Brown and the OGC legal advisor reviewed the government's draft motion for summary affirmance of this Court's ruling granting the government's motion to dismiss. (*Id.*) The OGC legal advisor and Brown noted that the motion was inaccurate because it misstated that Brown's status was still under cover. (*Id.*) The OGC legal advisor then brought these inaccuracies to the attention of the OGC Litigation Division attorney who was handling the case in January 2005. (*Id.*)

Thereafter, that litigation division attorney reviewed the draft of the motion with the Chief of the Litigation Division and the Assistant United States Attorney to discuss the classification status of specific facts in the draft motion. (*Id.* at ¶ 27.) The litigation division attorney "did not notify his OGC supervisors or the Department of Justice attorney handling this case of this change in cover status." (*See* Gov't Opp'n Ex. 1, Rizzo Aff. ¶ 5.) As a result, the government submitted a draft motion for summary affirmance that falsely stated that Mr. Brown

5

was still under cover. (*Id.* at ¶ 27.) "Subsequent government pleadings on appeal consequently perpetuated the inaccurate information regarding Mr. Brown's cover status." (*Id.*) The D.C. Circuit affirmed this Court's ruling dismissing "Defendant II" on the basis that "nothing about this person would be admissible in evidence at trial." 494 F.3d at 147.

As acknowledged by Mr. Rizzo, the conduct of the CIA's OGC in this case was unacceptable. The "OGC did not perform up to the standards of [the] office and the standards of performance the Court has every reason to expect from government attorneys." (Rizzo Aff. at ¶ 31.) The OGC also engaged in fraud on the court.

The OGC was put on "actual notice" that Brown's identity was no longer covert prior to submitting briefs to the D.C. Circuit on appeal. (Rizzo Aff. ¶ 30.) Nevertheless, the OGC failed to correct the false submission that Brown's identity was covert and thereafter submitted false documents to the D.C. Circuit. Not only was the false submission intentional,[4] it was also material; the belief that Brown's identity was covert was so central to the litigation that it likely would have changed the Court of Appeals' ruling affirming this Court as to defendant Brown. As a result, the OGC's conduct was tantamount to the "knowing participation of an attorney in the presentation of perjured testimony," *Baltia*, 98 F.3d at 643, which the D.C. Circuit specifically noted was a type of fraud on the court.

Defendant Brown and the government's arguments to the contrary are unpersuasive.

---

[4] The government makes the assertion that "Horn has offered no evidence that anyone acted with intent to deceive or defraud the court." (Gov't's Opp'n 10.) As explained below, based on the government's own admissions there is no plausible way to read the facts but that the actions of the OGC lawyer who failed to correct the false statement were intentional. In addition, it is unclear whether "intent" is a required element of fraud on the court; reckless disregard for the truth may suffice. *Workman v. Bell*, 227 F.3d 331, 336 (6th Cir. 2000).

Defendant Brown, now represented by new counsel,[5] argues (1) that the failure to notify the Court that Defendant II's cover was rolled back in 2002 was harmless error; and (2) that the judgment against Brown cannot be disturbed because Horn's motion was made more than one year following final judgment.

First, the failure to notify the Court that defendant Brown's cover was rolled back was not harmless error. Brown argues that "although he can now identify himself as a CIA officer working in Burma at the time in question, he still may not divulge anything about his employment in his position." (Brown Opp'n 6.) While this may be true, and this Court may still have ruled in his favor in 2004, the fact that his identity is not covert more than likely would have changed the Court of Appeals' ruling in his favor. In that opinion, the Circuit agreed with the dismissal of Brown as a defendant because "[n]othing about this person would be admissible at trial." 494 F.3d at 142. The Circuit states that as to Huddle, however, the plaintiff could establish a *prima facie* case merely by relying on unclassified evidence. For example, the Circuit stated that Horn could rely on the highly suspicious cable that Huddle sent to his colleagues in which he transcribed a conversation that Horn had by using quotation marks and ellipses, the seeming impossibility that Huddle would have learned the conversation by lawful means, and the inconsistencies underlying Huddle's explanation about how he learned of the conversation. 494 F.3d at 147. Similarly, it appears that had the Circuit known that Brown's identity was not covert, it would have[6] required this Court to give the plaintiff a chance to pursue his claim if he

---

[5]Brown is now represented by Morrison & Foerster LLP.

[6]Of course, it is impossible to know precisely what the Circuit would have thought had the government presented the accurate facts about Brown's status on appeal. This Court must hazard its best guess because of the fraud on the court that prevented the Circuit from reviewing

can do so without using "evidence relating to covert operatives, organizational structure and functions, and intelligence-gathering sources, methods, and capabilities" that would qualify as state secrets.[7] *Id.* at 148.

Brown's second argument, based on the statute of limitations, is easily rejected. As noted above, the actions by CIA counsel in this case constituted a fraud on the court. Therefore, the plaintiff is entitled to relief under Rule 60(d)(3) which does not have a one-year limitation.

The government also opposes the plaintiff's motion. Although the government admits that misconduct occurred, it argues that the misconduct did not rise to the level of fraud on the court. First, the government argues that granting the defendant's motion would be futile because he has not shown that it would advance his case. In so arguing, the government attempts to place the burden on Horn to establish that his claim against Brown would be potentially meritorious before Brown can be reinstated as a defendant. However, absent the government's fraud on the court, Brown likely would still be a defendant in this case. Therefore, like the claim against Huddle, Horn would be given a chance to present his claim against Brown using unprivileged materials. The burden would then be on the government and Brown to show that he should be dismissed as a defendant. It would be unjust for the Court to place an additional procedural

---

this Court's ruling as to Defendant Brown in light of the accurate facts in the case.

[7] The Circuit held that this Court must at least give the plaintiff a chance to pursue his case absent privileged material. The case still may be dismissed if the defendants can show that they have a "valid defense"—as defined by the Circuit in that opinion—that they cannot present because the defense is a state secret. The case can also be dismissed if the Court determines that the "subject matter of [the] case is so sensitive that there is no way it can be litigated without risking national secrets." In other words, the government and Brown can still argue that there is "no way" the plaintiff can pursue a case against him without risking national secrets; however, the Circuit has mandated that the plaintiff must at least be given an opportunity to show how he can pursue his claim using unprivileged materials.

hurdle on Horn at this stage merely because of the government's fraud on the court.

Next, the government argues that Brown has failed to establish fraud on the court. The government, citing cases, states that fraud on the court must be attributable to "counsel," it must be "directed to the judicial machinery itself," and there must be an "intent to deceive or defraud the court." (Gov't Opp'n 9–10.) In contrast to the government's claim, that burden was met in this case. The government has acknowledged that counsel within the OGC was aware of the inaccuracy and failed to bring it to the attention of his supervisors or the Court. Brown himself was clearly aware of his changed status beginning in 2002. When the OGC attorney reviewed the draft appellate pleadings[8] knowing that they contained a false submission, and knowing that the information was critical to the government's argument and would be helpful to the defendant's case, the Court has no choice but to conclude that the failure to correct the falsity was intentional.[9] And, of course, the false statement about Brown's cover was contained in a briefing submitted to the court itself. Therefore, the fraud in this case was attributable to counsel and directed to the judicial machinery with an intent to deceive the court.

The government argues that Department of Justice counsel, who had entered an appearance and submitted the pleadings in the case, was not aware of the change in Brown's status because Brown and the attorney within the OGC did not inform her of the change in his

---

[8]The government does not argue that the proper place for this motion would have been in the Court of Appeals. Even if it did, the fraud was ongoing in this Court following remand until January 31, 2008, when the new Department of Justice attorney informed the Court of the change in Brown's status.

[9]The fact that the OGC attorney who was handling the case before the Circuit did not correct the Circuit's impression that Brown's cover was covert after it issued its opinion also indicates that the fraud was intentional.

status. (*Id.* 10.) Therefore, the government argues that the plaintiff is not entitled to relief because the attorney who signed the pleadings was not involved in the fraud. The government's argument fails because attorneys cannot escape ethical obligations merely by attributing false statements to another attorney who is unaware of the truth. Although Ms. Goldfuss at the Department of Justice may have been unaware of the change in Brown's status, that did not absolve the OGC, which was very involved in the Brown's defense, from fulfilling its ethical responsibilities. The OGC lawyer who was involved in preparing and reviewing the appellate briefs and learned that the draft contained false information was obligated to notify DOJ and this Court of the change in Brown's cover status—that obligation remains even if the attorney has not entered an appearance.

An argument similar to the one advanced by the government in this case was rejected by the Ninth Circuit in *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995). In that case, the defendant's in-house counsel participated in a fraud on the court by failing to turn over a critical video that would have supported plaintiff's case. *Id.* at 1130. The in-house counsel "did not enter an appearance ... was not admitted *pro hac vice*, and did not sign any documents filed with the court." *Id.* at 1131. Nevertheless, the Ninth Circuit stated that the in-house counsel's attendance at trial, participation in gathering information, and participation in producing the omitted video was sufficient to render him an officer of the court. *Id.* In so holding, the court noted that the in-house counsel, as a licensed attorney, was "aware of the necessity for compliance with the rules of discovery and the rules of professional responsibility. He [was] aware of the damage failure to abide by these rules can wreck in the specific case at hand and the larger framework of confidence in the adversary system." *Id.* at 1133.

The OGC attorney in this case was also sufficiently involved to be an officer of the Court. Rizzo's declaration indicates that the attorney who was notified that Brown's cover status had been lifted reviewed the draft appellate brief and failed to correct the inaccuracy. The declaration also reveals that the attorney who failed to correct the inaccuracy was the OGC "Litigation Division attorney who was handling the case in January 2005." (Rizzo's Aff. ¶ 26–27.) Therefore, not only was the attorney involved in the case, he or she appears to have had primary responsibility for the case within the CIA at the time that the first knowingly false document was submitted—he or she was "handling" it. Like the attorney in *Pumphrey*, this attorney's involvement was sufficient to render him or her an officer of the court. As a result, his or her involvement in the presentation of false testimony is enough to entitle the plaintiff to relief because of "fraud on the court."

The government next argues that Horn cannot challenge the ruling dismissing Brown as a defendant because he failed to originally appeal the fact that Brown's identity was privileged. The government makes the ludicrous argument that "Horn never challenged the government's assertion of privilege" before the D.C. Circuit. (Gov't Opp'n 11.) If the government had not falsely asserted the fact that Brown's identity was covert, Horn would have had no need to appeal the ruling that Brown's identity was privileged. Horn may not have appealed this Court's ruling that Brown's identity was covert because he reasonably believed the government's assertion that Brown's identity was, in fact, covert. The plaintiff cannot be denied relief because he failed to discern that the government had submitted a false statement in its pleadings. As the government notes, much of the potential evidence against Brown still may be subject to the state secret privilege. (Gov't Opp'n 13.) However, the Circuit has mandated that the plaintiff must be given

11

an opportunity to pursue his claim using unprivileged information.

Finally, the government argues that the plaintiff's motion should be denied because he failed to comply with Local Rule 7(m) and confer with the movant before filing the present motion. While the Court does encourage counsel to confer prior to the filing of all motions, consulting the defendant in this case would have been futile because the parties could not have reinstated the defendant in the case by agreement—that action requires Court involvement. Accordingly, the plaintiff's failure to comply with Local Rule 7m (even if the plaintiff's motion can be considered "nondispositive") is not grounds for denying relief in this case.

## III. CONCLUSION

Defendant Brown's cover was lifted and rolled back in 2002. However, this Court was not informed of the change in Brown's status until 2008. Moreover, the attorney "handling" the case within the CIA's office of general counsel in 2005 was put on actual notice of the change in Brown's status in January 2005. Nevertheless, he or she reviewed drafts of appellate pleadings arguing that Brown's identity was covert and failed to correct the false statement or report it to his or her superiors. The Court of Appeals ruled in favor of Brown, relying on the fact that "nothing about 'Defendant II' would be admissible at trial." The attorney and Brown also failed to report the change in Brown's status following the Circuit's issuance of its opinion and the remand to this Court. Because the misrepresentation was material, intentional, involved an officer of the court, and was directed at the judicial machinery itself, this Court concludes that the government's actions constitute a fraud on the court. The plaintiff is entitled to relief and defendant Brown will be reinstated as a defendant in this case. The plaintiff will be given an

opportunity to present how he can proceed using unprivileged material as to both defendant Brown and defendant Huddle.

The plaintiff's motion also requests various other sanctions and/or contempt proceedings. Those requests will be denied. Instead, the government will be directed to provide Sheldon Snook, the Administrative Assistant to the Chief Judge, who is also the Clerk to the Committee on Grievances for the United States District Court for the District of Columbia, the name of the CIA attorney who was put on actual notice of the change in Brown's cover status in 2005 and failed to report it. Because the fraud occurred in front of this Court, this Court's committee on grievances will conduct an investigation and, if discipline is imposed, report the results to the Court and the licensing authorities in any state in which that attorney is licensed.

Finally, the Court will grant the plaintiff's motion for a status conference so that it can be determined how to next proceed in this case.

A separate order shall issue this date.

SO ORDERED.

_____
Chief Judge Royce C. Lamberth

_6/4/09_
Date