UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD A. HORN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 94-1756 (RCL) |
| FRANKLIN HUDDLE, JR., *et al.* | ) UNDER SEAL |
| Defendants. | ) |

FILED
FEB - 6 2009
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM AND ORDER

On June 29, 2007, the Court of Appeals affirmed this Court's ruling that the plaintiff's claims against "Defendant II"—now known as Arthur Brown—should be dismissed because "nothing about [that] person would be admissible in evidence at trial." *In re Sealed Case*, 494 F.3d 139, 147 (D.C. Cir. 2007). Following remand to this Court, the government revealed, through a filing on January 31, 2008, by attorney Paul Freeborne[1], that "Defendant II" could actually be referred to as Arthur Brown and that he could have been referred to by his name since 2002 because his covert status had been lifted and rolled back at that time.

The plaintiff subsequently filed a motion for relief from judgment and for sanctions; the plaintiff asked the Court to reinstate Brown as a defendant and to sanction and/or hold contempt proceedings against the government attorneys responsible for failing to alert this Court and the Court of Appeals of the change in Brown's cover status in 2002.

This Court reinstated Brown as a defendant, holding that a Central Intelligence Agency

---

[1] Paul Freeborne was new to the case following remand.

1

attorney involved in the litigation committed fraud on the court by misleading the Court of Appeals as to the change in Brown's cover status and by failing to notify this Court of the change in his cover status upon remand. (*See* Jan. 14, 2009, Mem. Op. at 12.) The Court declined to impose sanctions or initiate contempt proceedings, however, instead opting to direct the government to disclose the name of the attorney who committed fraud on the court to this Court's grievance committee for investigation. (*Id.* at 12–13.)

One of the documents that the Court considered in making this ruling was the declaration[2] of John Rizzo, Acting General Counsel of the Central Intelligence Agency. Rizzo's declaration stated that he conducted an inquiry into the circumstances of the lifting back of Brown's cover status and why this Court and the Court of Appeals were not informed. (Rizzo decl. ¶ 4.) Rizzo stated that the Office of General Counsel of the CIA, which was involved in this litigation, was not put on notice of the change in Brown's cover status until 2005. (Rizzo decl. ¶ 5.) He stated that in January 2005 an attorney within the Litigation Division of the OGC was made aware of the change in Brown's cover status but did not inform this Court, the Court of Appeals, or his supervisors. (Rizzo decl. ¶ 5.) That name has now been disclosed to the Court: Jeffrey W. Yeates.

The government also attached a declaration of Robert J. Eatinger[3], an Associate General Counsel of the OGC of the CIA who was generally familiar with the case and the CIA's strategy while the case was pending before this Court and the Court of Appeals. (*See* Eatinger decl. ¶¶

---

[2]This declaration was Exhibit 1 to the government's opposition to the motion for sanctions and/or contempt proceedings.

[3]This declaration was Exhibit 4 to the government's opposition to the motion for sanctions.

2

1-4.) Eatinger stated that he does not recall being informed of the change in Brown's cover status prior to January 2008. (Eatinger decl. ¶ 4.)

Finally, the government attached a declaration of A. John Radsan[4], who served as an Assistant General Counsel in the OGC of the CIA from April 2002 to July 2004. (Radsan decl. ¶ 1.) Radsan states in his declaration that he was generally familiar with this case during his time at the OGC of the CIA. (Radsan decl. ¶ 3.) However, he states that he does not recall being informed of the change in Brown's cover status until March 2008. (Radsan decl. ¶ 4.) The government has not disclosed if it interviewed defendant Brown prior to filing its opposition, but it did not attach a declaration from defendant Brown.

On the basis of the documents before it, therefore, when the Court issued its January 14, 2009 ruling, it believed that the CIA had lifted and rolled back Brown's cover in 2002 but that it did not communicate this information to the OGC of the CIA until 2005. The Court believed that the fact that it was not informed of the change in Brown's cover status prior to its 2004 ruling dismissing the case was an unacceptable miscommunication but not the result of intentional misconduct. Although the Court held that one government attorney intentionally misled the Circuit in 2005 and failed to report the change in Brown's cover upon remand, it believed, on the basis of Rizzo's declaration, that this was an isolated incident. Therefore, the Court felt that referring the attorney involved to the grievance committee was appropriate but that the case was ready to proceed, now with Arthur Brown reinstated as a defendant.

However, on January 27, 2009, the Court was surprised yet again by a filing; this filing

---

[4]This declaration was attached as Exhibit 6 to the government's opposition to the motion for sanctions.

3

was from Arthur Brown. Brown's declaration stated that the "Rizzo Declaration makes two assertions that, based on my personal knowledge are inaccurate." (Brown decl. ¶ 1.) First, Brown states that Rizzo's declaration that the OGC within the CIA was not informed of the change in Brown's cover status until 2005 is incorrect. Brown states that, "I recall notifying in person, two attorneys in the Office of General Counsel ("OGC") Litigation Division, A. John Radson [sic] and Robert J. Eatinger, about the change in my cover status in 2002, within a few months of the agency's action" [to roll back his status]. (Brown decl. ¶ 2.)[5] Second, Brown states that he has no recollection of reviewing the draft motion for summary affirmance submitted to the Court of Appeals with an East Asia Division Office of General Counsel legal advisor.[6] (Brown decl. ¶ 4.)

If what Brown says is true, the OGC attorneys intentionally misled this Court even prior to its original 2004 ruling that dismissed the case. His declaration, if true, indicates that the OGC of the CIA was aware of the change in Brown's cover status while the motion to dismiss the case was pending in this Court.

---

[5] Brown also did not notify this Court or the Court of Appeals about the change in his cover status from the time it was rolled back in 2002. Once again, the first that the Court learned of it was in a filing by Paul Freeborne on January 31, 2008, almost six years after Brown's cover had been lifted and rolled back. Brown states in his declaration that he told CIA Office of General Counsel attorneys Radsan and Eatinger of the change in his status in 2002 and he believed they would communicate this information to the Department of Justice. (Brown decl ¶ 2.)

[6] The motion for summary affirmance that was ultimately submitted to the Court of Appeals did not reveal that Brown's cover status had been lifted. Rizzo's declaration states that in or shortly before January 2005, "Mr. Brown and the OGC legal adviser in EA [East Asia] Division reviewed the draft motion and identified those portions that—unbeknownst to the U.S. Attorney's Office—were inaccurate because they mistakenly believed that Mr. Brown was still under cover . . . ." (Rizzo decl. ¶ 26.)

4

If multiple attorneys of the OGC within the CIA were aware of the change in Brown's cover status, and failed to report it to the Court, it would be a material misrepresentation to both this Court and the Court of Appeals. The CIA was well-aware that the assertion of the state secrets privilege as to Brown was a key strategy in getting the case dismissed. The Department of Justice submitted an ex parte, classified declaration of CIA Director Tenet on February 5, 2000, in support of its motion to dismiss. In the declaration, Tenet stated that to allow the case to go forward would cause "damage to United States national security" because it would "identify one or more covert CIA employees. Of obvious concern would be the disclosure of Arthur Brown, who remains a covert employee assigned overseas . . . ." (Ex Parte Declaration of George J. Tenet, February 5, 2000 at ¶ 22.)

Of course, Arthur Brown was covert in 2000 when Tenet made the declaration. However, he was not covert as of 2002 and therefore Tenet's declaration was no longer accurate.[7] And of course, the belief that Brown's identity was covert was central to both this Court's and the Court of Appeals' reasoning in dismissing defendant Brown. This Court, for example, relying on the Tenet declaration, stated in its July 28, 2004 memorandum opinion that one of the reasons that the case had to be dismissed was because "Defendant II's identity as a covert CIA officer is protected." (Mem. Op. at 10.) The Court of Appeals affirmed this Court's ruling as to Brown because "nothing about [that] person would be admissible in evidence at trial." *In re Sealed Case*, 494 F.3d 139, 147 (D.C. Cir. 2007). The Circuit's reasoning as to defendant Huddle,[8]

---

[7]Because Brown's covert identity was "rolled back," he could also state that he was an employee of the CIA during the time Horn alleges his Fourth Amendment rights were violated.

[8]The Circuit stated that, although the case appeared to involve sensitive state secrets, Horn should be given an opportunity pursue his lawsuit without using privileged information.

5

however, indicates that it likely would have reversed this Court's ruling as to defendant Brown had it known that Brown's identity and his status as an employee of the CIA during the relevant time period was no longer covert.

The already acknowledged misconduct by the government, in addition to the recent declaration by Brown, raise very serious implications. As a result, the Court feels that referral to the grievance committee may not be the appropriate course of conduct for events that raise such serious and wide-ranging implications.

## II.  CONCLUSION AND ORDER

Because of the recent revelations in this case, the Court will entertain a motion to reconsider and vacate its ruling denying the plaintiff's motion for sanctions and/or contempt[9] proceedings. Until the Court rules on the motion to reconsider sanctions and/or contempt proceedings, it is hereby ORDERED that any referrals of misconduct on the part of government attorneys to the grievance committee will be stayed.

SO ORDERED.

_____          2/6/09
Chief Judge Royce C. Lamberth              Date

---

See *In re Sealed Case*, 494 F.3d 139, 141 (D.C. Cir. 2007).

[9] If the plaintiff wishes to file a motion, he should also state, that if he believes contempt proceedings are appropriate, whether he believes the proceeding should be civil or criminal in nature. *See International Union v. Bagwell*, 512 U.S. 821, 827–28 (1994) (stating that "a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.").