UNCLASSIFIED

FILED WITH THE
COURT SECURITY OFFICER
CSO: Sun Hogarty
DATE: 7/16/2009

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD HORN,  )<br>  )<br>   Plaintiff,  )<br>v.  )<br>  )<br>FRANKLIN HUDDLE, JR., *et al.*,  )<br>  )<br>   Defendants.  )<br>_____) | Civil Action No. 94-1756 (RCL)<br><br>(UNDER SEAL)<br><br>**FILED**<br>JUL 1 6 2009<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

**MEMORANDUM OPINION**

Now before the Court are the government's reassertion of the state secrets privilege [186] and motion for entry of a protective order [191]. Upon consideration of the motions, the declarations, the plaintiff's opposition, the government's reply, applicable law, and the entire record herein, the assertion of the state secrets privilege and proposed protective order will be DENIED without prejudice. The parties will be ordered to proceed in accordance with this opinion and accompanying order.

**I.   BACKGROUND**

Plaintiff Horn's claim is that defendant Huddle, with the assistance of defendant Brown, unlawfully eavesdropped on his private conversations in violation of the Fourth Amendment, possibly using United States government surveillance equipment in 1992 and 1993 in Rangoon, Burma.[1] The case implicates classified information because plaintiff Horn is a former employee

---

[1] As evidence of his claim, Horn points to a cable transmitted by Huddle, which contains quotation marks and which Horn claims quotes him verbatim, as well as a suspicious entry into his apartment when, unsolicited, his government-issued rectangular coffee table was swapped for

1

of the Drug Enforcement Agency, defendant Huddle is a former employee of the United States Department of State, and defendant Brown is a former employee of the Central Intelligence Agency. All were involved in sensitive activities in Rangoon, Burma, in 1992 and 1993, and the plaintiff wishes to show that the defendants had the capability, opportunity, and motive to surveil the plaintiff. As a result, the United States has intervened and asserted the state secrets privilege.

This Court originally held that the case could not proceed because of the risk of divulging state secrets and dismissed the case. The United States Court of Appeals for the District of Columbia Circuit reversed this Court's determination as to defendant Franklin Huddle, Jr., however.[2] The Court of Appeals also stated that "[i[t remains for the district court on remand to determine what procedures would be required to safeguard against disclosure of privileged materials and then to determine whether Horn's lawsuit can proceed." *In re Sealed Case*, 494 F.3d 139, 153 (D.C. Cir. 2007). Following remand, the Court asked the parties for their statements regarding how this case should proceed. The parties[3] were unable to reach an

---

an oval replacement while he was out of town. *In re Sealed Case*, 494 F.3d at 146.

[2]The Court of Appeals affirmed this Court's determination that the claim against former CIA employee Arthur Brown should be dismissed because of the Court of Appeals' belief that nothing about Brown, including his name, was admissible at trial. This Court later reinstated defendant Brown because of its later discovery that Brown's identity was not in fact covert as of 2002 but that defendant Brown and the Office of General Counsel of the CIA perpetrated a fraud on this court and the Court of Appeals. (Memorandum Opinion, January 15, 2009.) At that time, the Court believed that the Office of General Counsel within the CIA did not learn of the change in Brown's status until 2005. Defendant Brown later filed a declaration stating that he told two CIA attorneys of the change in his cover status in 2002. As a result, the Court granted the plaintiff leave to file contempt motions against defendant Brown, the Office of General Counsel of the CIA and/or the individual CIA attorneys who may have been involved in fraudulent conduct. (*See* Memorandum Opinion, February 6, 2009.)

[3]The defendants have thus far taken no position on the state secrets dispute. The dispute to this point has been between the plaintiff and the government.

agreement on a discovery plan, a protective order, or how this case could ultimately proceed to trial. The government has reasserted the state secrets privilege over an extensive amount of information, arguing that it cannot be used by the parties in this case. It has also submitted a proposed protective order. The plaintiff has argued that because of the passage of time and this Court's finding that the government committed fraud on this Court and the Court of Appeals, that the Court should reject the government's state secrets claims and allow this case to proceed to trial virtually unburdened by discovery limitations. Meanwhile, the Court asked the government to provide the Court and the plaintiff with an unclassified version of every document that has thus far been filed, both to facilitate discovery and so that the Court could ascertain precisely what information the government still believes is a state secret. With four exceptions[4], the government has done so.

After examining the motion for a protective order and supporting declarations, the redactions made by the government, and keeping in mind the twisted history of this case, the Court is not prepared to uphold the government's renewed assertion of the state secrets privilege without more information from the government. Moreover, with respect to information already known by the plaintiff or the defendants, the Court believes that the implementation of pretrial CIPA[5]-like procedures is the best way to prevent unauthorized disclosure of classified information and to resolve any classification disputes between the parties and the government.

## II.   **DISCUSSION**

---

[4]The government has withheld four declarations from the plaintiff in full.

[5]Classified Information Procedures Act, 18 U.S.C. app. III.

A.  **Applicable Law**

The state secrets privilege "is a common law evidentiary rule that protects information from discovery when disclosure would be inimical to national security." *In re Sealed Case*, 494 F.3d 139, 142 (D.C. Cir. 2007) (citing *In re United States*, 872 F.2d 472, 474 (D.C. Cir. 1989)). The Court will uphold the privilege when there is a reasonable danger that compulsion of evidence will expose state secrets matters that should not be divulged. *United States v. Reynolds*, 345 U.S. 1, 10 (1953). The first requirement for proper assertion of the state secrets privilege is procedural. The United States must make a claim of privilege "through a formal request lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *In re Sealed Case*, 494 F.3d at 142 (citing *United States v. Reynolds*, 345 U.S. 1, 6–8 (1953)). Next, the Court must evaluate the claim itself. In some cases, the claim of privilege is so clear that even the judge may not insist upon examination of the evidence. *United States v. Reynolds*, 345 U.S. 1, 10 (1953). In other cases, however, the Court may need to examine the underlying information. *Ellsberg v. Mitchell*, 709 F.2d 51, 58–59. Two factors should be considered when determining whether materials should be reviewed *in camera*: (1) the more compelling a litigant's showing of need for the information in question, the deeper the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate; and (2) the amount of deference accorded to the government's assertion of the privilege should be determined by how plausible and substantial the government's allegations of danger to national security are in the context of all the circumstances surrounding the case. *Id.* at 58–59. The Court should also keep in mind that the privilege is "not to be lightly invoked," because once the court rules that it applies, it is "absolute" and cannot be overcome

regardless of a showing of need. *In re Sealed Case*, 494 F.3d at 144 (citing *Reynolds*, 345 U.S. at 7; *Northrop Corp. V. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984)).

B. **United States' Assertion of the Claim**

The United States originally asserted the state secrets privilege in 2000, through a declaration of the then-director of the CIA, George Tenet. This Court upheld the assertion of the privilege, and held that the lawsuit could not proceed because (1) the very subject of the lawsuit was a state secret; (2) the plaintiff could not make out a *prima facie* case absent the privileged materials; and (3) that the case could not proceed because the defendants would be prevented from accessing information necessary for their defense. *In re Sealed Case*, 494 F.3d at 142. The Court of Appeals reversed those determinations, but affirmed the Court's determinations that "Defendant II" should be dismissed from the lawsuit because his very identity is a state secret, *id.* at 141, as well as the Court's determination that portions of the Inspector General[6] reports were properly privileged. *Id.* at 144.

As if the course of this litigation were not circuitous enough, new developments occurred after remand. The new Department of Justice attorney in the case filed a notice with the Court that Defendant II's identity was not actually covert—the declaration stated that Defendant II (Arthur Brown) had his covert status lifted and rolled back in 2002. Of course, no one from the Office of General Counsel for the CIA (which was actively working on this case) nor the defendant himself informed this Court or the Court of Appeals of that fact. As a result, this Court was forced to admit that its determination as to defendant Brown should have also been

---

[6]Upon learning of Horn's claims, the State Department (Huddle's employer) and the CIA (Brown's employer) both initiated investigations. The Inspector General reports detail their investigations and conclusions.

reversed because the Court of Appeals was operating under the mistaken belief that Brown's identity was classified. *Id.* at 141. This Court held that defendant Brown and at least one attorney committed fraud on this Court and the Court of Appeals, reinstated Brown as a defendant, and has taken sanctions motions under advisement. Not only was this development frustrating from the standpoint that the Court relies on the integrity of the litigants and their attorneys to make its rulings, but it had substantial implications in the case as it moves forward.

This development demonstrated that Director Tenet's assertion of the state secrets privilege was no longer accurate as to at least one material fact (the secrecy of Brown's identity), and led the plaintiff and the Court to question what portions of Director Tenet's assertion still were accurate and what information the government still believed was privileged. The revelation about Brown also demonstrated the more general problem that information that was considered a state secret in 2000 may no longer be considered a state secret in 2009 (not to mention that Director Tenet is no longer the director of the CIA). Accordingly, the Court required the government to reassert the privilege if it chose to do so.[7]

Indeed, the government reasserted the state secrets privilege, by providing an unclassified declaration of Director Panetta, as well as an *in camera, ex parte* declaration of Director Panetta and another individual. While those declarations outlined the government's general justification for asserting the privilege, the government also provided the Court and the plaintiff with

---

[7] As a result, the original privilege asserted by Tenet no longer applies to this case, nor does the affirmance by the Court of Appeals as to this Court's determination that portions of the Inspector General reports are privileged. The Court evaluates the claim of privilege anew based on Director Panetta's 2009 assertion. (*See* Panetta Unclassified Declaration [191] at ¶ 2 ("This declaration supersedes the 5 February 2000 Tenet declaration and the 28 March 2008 Hayden declaration.").)

6

unclassified versions of every document in the case, as well as unclassified versions of the Inspector General reports. The government orally stated that all of the redacted information is covered by the state secrets privilege, but did not provide the Court with any written justification for the redactions themselves.

The parties do not dispute that the procedural requirements for the assertion of the privilege have been met. However, the plaintiff argues that because of the government's history of misconduct in the case and the plaintiff's evidence and argument that much of the redacted information is not actually privileged, the Court should either reject the assertion or undertake a more exacting inquiry, possibly by requiring testimony by the government. After examining the factors expounded by the D.C. Circuit, the Court agrees that a more exacting inquiry is required.

The first factor to be considered is the plaintiff's need for the information; the more compelling the need, the more that the Court should scrutinize the government's assertion. *In re Sealed Case*, 494 F.3d at 144. In this case, the plaintiff's need is compelling. The government argues that its assertion of the privilege leads to the conclusion that "[n]either plaintiff nor defendants Brown or Huddle may inquire into or present evidence as to whether Brown or any other U.S. Government employee used U.S. Government, including U.S. Intelligence Community, equipment to eavesdrop on the plaintiff." (Gov.'t Proposed Protective Order [191] at ¶ 5.) Of course, forbidding the plaintiff to inquire or to present evidence as to his central allegation would likely be fatal to his lawsuit; the suit boils down to an allegation that defendants Brown and Huddle (likely using U.S. Government equipment because they were government employees who had access to this equipment) eavesdropped on the plaintiff. The Court of Appeals already rejected the contention that the "very subject matter of Horn's action is a state

secret," however. The Court is therefore skeptical that the plaintiff can present *no* evidence or argument that the defendants could have used U.S. Government equipment to eavesdrop on the plaintiff; if the government's claims are true, however, then the plaintiff's chances of prevailing are slim. Accordingly, the plaintiff's need for at least limited evidence that Brown and/or Huddle had the capability to surveil Horn is high.

More importantly in this case, however, is the second factor, the credibility of the government's representations given all of the circumstances of the case. This factor weighs strongly in favor of the plaintiff, and the Court agrees that a more exacting inquiry of the claimed privilege is needed. The Court does not give the government a high degree of deference because of its prior misrepresentations regarding the state secrets privilege in this case. Moreover, the plaintiff has made convincing arguments that the government has asserted the state secrets privilege too broadly. For example, the plaintiff points out that a search for "Central Intelligence Agency" on a publicly available online encyclopedia quickly reveals that the CIA possesses eavesdropping equipment.[8] Yet the government refuses to make even this basic acknowledgment or allow the parties to make this argument.[9] Moreover, the government fails to address the

---

[8]"The CIA Science and Technology Directorate uses a wide variety of techniques to gather intelligence. These include planting bugs (microphones or other listening devices), intercepting radio transmissions, and using seismic sensors and satellites to monitor military activity around the world. The CIA relies on the National Security Agency for a large portion of its electronically gathered data, but also conducts some electronic intelligence gathering on its own." Microsoft Encarta Online Encyclopedia 2009, "Central Intelligence Agency," http://encarta.msn.com/encyclopedia._761568583_2/Central_Intelligence_Agency.html (last accessed July 9, 2009).

[9]Confusingly, Director Panetta's unclassified declaration appears to significantly conflict with his classified declaration. His unclassified declaration states that: "Plaintiff has provided a declaration in which he stated that the alleged wiretap at issue in this case was allegedly the result of an eavesdropping transmitter placed under the coffee table located in his residence in

8

plaintiff's arguments about the basic capabilities being in the public domain, but merely rehashes its unsupported assertion that any mention of the U.S. Government owning surveillance equipment is a state secret.

At the same time, the Court's review of the *in camera, ex parte* declarations leads it to believe that there are certain categories of information that are properly covered by the state secrets privilege.[10] As a result, the Court is hesitant to release the redacted portions of the documents without a further opportunity by the government to explain its basis for redacting certain information. As it stands, while the Court has the general declarations of Panetta and another individual, it does not have any justifications for the government's specific application of

---

Burma... To the extent that this is his allegation, he is permitted to proceed with discovery to determine whether such a transmitter was used." (Panetta Unclassified Decl. at ¶ 9.) Panetta later states, however, that the plaintiff cannot inquire into information about the "U.S. Government's capabilities to conduct electronic surveillance." *Id.* If a method of intelligence is unclassified and publicly available, it is not immediately apparent why it suddenly becomes a state secret to even argue that it could be used by the U.S. Government. Moreover, the plaintiff makes a credible argument not only that the device is publicly known, but that the fact that the government uses this type of device is publicly available, as this type of device is on display at the Spy Museum in Washington, D.C. Indeed, Panetta's classified, *ex parte* declaration significantly conflicts with the unclassified declaration and appears to acknowledge that the plaintiff can present evidence as to the coffee table eavesdropping transmitter, even if it is used by the U.S. Government. Panetta states: "Plaintiff has alleged that the defendants used an eavesdropping transmitter placed under the coffee table located in his residence in Burma. He has also stated that these types of transmitters are publicly available and on display at the Spy Museum in Washington, D.C. To the extent that the theory of his case is that the defendants conducted the alleged surveillance using purely unclassified, publicly available methods, I do not assert the state secrets or statutory privileges. To the extent Plaintiff's discovery attempts to sweep more broadly, and to inquire about *other intelligence capabilities* . . . such discovery cannot proceed . . . ." (Panetta Classified Decl. ¶ 21) (citations omitted and emphasis added). In other words, Panetta's classified declaration appears to acknowledge that an eavesdropping transmitter of the type alleged by Horn is not a state secret even if used by the U.S. Government.

[10]The Court has refrained from discussing the substance of these declarations so that the bulk of this opinion can be available for public consumption.

those declarations to the information in the case. The government provided the Court with no justification for the redactions it made, leaving the Court to guess as to whether the redactions are permissible or impermissible based on inferences drawn from the declarations. The Court is unable to uphold or deny the assertion of the privilege on the basis of the government's generalized declarations alone.

In summary, the Court's review of the factors espoused by the Circuit and the entire context of the case leads it to believe that: (1) an exacting inquiry into the government's assertion of the privilege is needed in this case; and (2) that the Court cannot make that inquiry without detailed justifications for the redactions from the government. Accordingly, the Court will order the government to file justifications before the Court makes an ultimate ruling on the information that has been withheld by the government. Similarly, the Court cannot enter a protective order until it ultimately determines what information is covered by the state secrets privilege.

### D. How to Best Prevent Unauthorized Disclosure of Classified Information as the Case Moves Forward

Simultaneous to the rulings on the state secrets claim as a legal question, the Court must make a determination as to how this case can proceed without revealing classified information during discovery and, ultimately, at trial. One glance at the declarations provided by the plaintiff in this case (which have been largely redacted by the government) reveals that he and his attorney are already aware of the material information that is purportedly a state secret. Accordingly, without clear rulings as to what information is and is not a state secret, the plaintiff could easily disclose the information during discovery or at trial. Moreover, the plaintiff makes credible arguments, often by attaching declarations of a twenty-five year employee of the CIA, that much

of the information known by him is not, in fact, a state secret. Accordingly, he argues that he should be given an opportunity to argue that this information is not a state secret through CIPA-like proceedings. The Court agrees.

CIPA-type procedures will provide two benefits as the case moves forward, and by limiting the CIPA proceedings to information already known by the parties, the Court limits the concomitant intrusion on national security. First, the use of CIPA-type procedures will best ensure that the parties do not disclose national security information at trial. The government believes that its interest in privileged information can be protected simply by allowing it to review all filings in the case and giving it an opportunity to redact state secrets information. While this method may work for pleadings, in the event that the case goes to trial, the plaintiff must be given clear boundaries as to what information is disclosable and what is not. It would be impracticable to expect the plaintiff to blindly give opening and closing statements and question witnesses, unclear about the precise contours of the state secrets privilege. In contrast to the government's belief that the best way to prevent unauthorized disclosure of information is for the parties to remain in the dark about what information is a state secret and why, the Court can better prevent unauthorized disclosure by giving the parties clear boundaries as to what information may be presented to the jury and what information may not.

The CIPA-like procedures will also provide the collateral benefit of allowing the parties to meaningfully argue that information already known to them is not, in fact, a state secret. As stated above, given the parties' need for this information, the plaintiff's colorable showing that at least some of the information withheld by the government is not a state secret or can be substituted with unclassified information, and the diminished credibility of the government in the

context of this case, the Court believes that CIPA-type procedures are the best way to proceed with regard to the information already known to the parties.

Moreover, by limiting the information that will be examined in CIPA-like proceedings to the information already known by the parties, the Court limits the risk to national security. Of course, any CIPA-like proceedings will be conducted in a closed courtroom, and the proceedings will not be divulged to the public. Both the plaintiff and the defendants are former government employees who have had access to classified information. Moreover, their attorneys have been favorably adjudicated for current access to classified information. As stated by the Court of Appeals, "there is no basis on this record for a presumption that a witness who has had access to classified materials is unable to testify without revealing information that he knows cannot lawfully be disclosed in a public forum." *In re Sealed Case*, 494 F.3d at 153. The Court agrees.

The Court understands that the implementation of CIPA-like procedures in a civil case is unusual. However, the Court of Appeals foresaw the problems that could arise in this case, and therefore conspicuously stated in 2007 that "nothing in this opinion forecloses a determination by the district court that some of the protective measures in CIPA, 18 U.S.C. app. III, which applies in criminal cases, would be appropriate, as Horn urges, so that this case could proceed."[11] *In re Sealed Case*, 494 F.3d at 154.[12] Indeed, the Court believes that the CIPA-like procedures and the

---

[11] This Court originally held, on the basis of the plain language of CIPA, that it applied in criminal cases only. (Memorandum Opinion, July 28, 2004 at 12–13.)

[12] Courts have discussed the propriety of involving the parties in making classification decisions in other civil cases as well. In *Stillman v. CIA*, 319 F.3d 546, 547 (D.C. Cir. 2003), a former employee of the Los Alamos National Laboratory wrote a book about China's nuclear weapons program. Prior to publication, the government informed the plaintiff that portions of his manuscript were classified. *Id.* 547. Stillman filed suit, challenging the classification decision, and the district court ordered that Stillman and his attorney have access to the classified

associated rulings are the best way to prevent unauthorized disclosures of classified information and allow Horn to pursue his claim using non-classified materials.

### III. <u>CONCLUSION</u>

In accordance with this memorandum opinion, this case will proceed as follows: First, the government will be ordered to provide the Court with justifications for all of the redactions to the documents and Inspector General reports that have been filed in this case so that the Court can undertake a meaningful *in camera* review of the purportedly privileged information. Meanwhile, the plaintiff and the defendants will be ordered to file motions indicating i) any information known to them that they believe or know that the government is asserting the privilege over and that they intend to use at trial, and ii) explanations and/or evidence as to why that information is not a state secret. Counsel shall meet and confer and file a proposed schedule for these filings

---

information. *Id.* at 547. The Court of Appeals reversed, and held that the court must first make an *in camera* review of the material, but in the event that it could not resolve the issue without the assistance of plaintiff's counsel it should "consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security." *Id.* at 548–49. In this case, the Court has reviewed the plaintiff's declarations and believes that the case cannot proceed without the implementation of CIPA-like procedures with respect to information already known by the plaintiff (both because of the risk of divulging state secrets and because of the difficulty in making classification decisions). Additionally, with respect to the information already known by the plaintiff, the Court has weighed the risk to national security and believes that the risk of instituting these procedures is minimal. For other examples of courts using CIPA-like procedures to resolve disputes involving classified information, see *In re Guantanamo Bay Litigation*, Misc. No. 08-442 (TFH), Docket [1821] at 8 (D.D.C. July 10, 2009) (instituting procedures similar to CIPA "by analogy" to resolve petitioners' requests to view their own classified statements); *In re National Security Agency Telecommunications Records Litigation*, Case No. 06-1791 (VRW), Docket [57] at 23–24, (N.D. Cal. January 5, 2009) (requiring, in a state secrets case, that the government to make good faith efforts to process TS/SCI clearances for plaintiffs' litigation team so that they can "read[] and respond to the court's future orders" and possibly have access "to at least some of the defendants' classified filings").

and any responses[13] within 10 days. The proposed schedule should be filed jointly if possible, separately if necessary.

SO ORDERED.

_____             7/16/09
Chief Judge Royce C. Lamberth             Date

---

[13]The government's justifications for its redactions will be filed *ex parte,* and the parties will not have an opportunity to respond. However, the government will have an opportunity to respond to the parties' submissions regarding information that they believe is not classified and that they should be able to use at trial.