**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICHARD A. HORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 94-1756 (RCL) |
| | ) |
| FRANKLIN HUDDLE, JR., *et al.* | ) |
| | ) |
| Defendants. | ) |

**FILED**

AUG 26 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>**MEMORANDUM OPINION**</u>

Now before the Court is the "United States' Proposal for Further Proceedings Consistent with the Court's July 16, 2009 Memorandum Opinion and Order." Upon consideration of the proposal, the oppositions, and the reply, the government's proposal is DENIED. This case will proceed in accordance with the order issued today.

**I.    BACKGROUND**

While there are a plethora of cases concerning the state secrets privilege, very few cases even tangentially discuss how a Court is to proceed when the Court has denied the assertion of the privilege, but the government still claims that portions of the nonprivileged materials are "classified." Nor do the cases directly answer whether a Court can order a party or his lawyer, who has been favorably adjudicated for access to classified information, to have access to classified information, either because the Court has ruled the classified information is nonprivileged, because the Court has determined it cannot make that determination without the assistance of counsel, or because the Court believes that it cannot adequately safeguard the

1

classified information during discovery and at trial without involving counsel.  Does the

Executive Branch have the exclusive right to determine whether counsel, who have been

favorably adjudicated for access to classified information, have a need-to-know classified

information within the context of litigation or can that be a judicial determination?  This fifteen-

year-old case, which has already produced a number of vexing legal and practical difficulties,

presents those questions.

On July 16, 2009, this Court denied the government's reassertion of the state secrets

privilege without prejudice and its motion for a protective order.  In rejecting the privilege, the

Court evaluated: (1) whether the government met the procedural requirements for invocation of

the privilege; (2) the litigant's showing of need for the information in question; and (3) the

amount of deference accorded to the government's assertion of the privilege, which is evaluated

by how plausible and substantial the government's allegations of danger to national security are

in the context of all the circumstances surrounding the case.  (Mem. Op. [451] at 4.)  After

evaluating these factors, the Court rejected the government's assertion of the privilege without

prejudice.  First, the Court determined that the government had procedurally invoked the

privilege.  The government filed both a public, unclassified declaration of Director Panetta and

an *in camera, ex parte* declaration, as well as an *ex parte* declaration of another individual.  The

Court evaluated the declarations, which were inconsistent, but one of which indicated that the

plaintiff could present evidence that a U.S. Government coffee table-type eavesdropping device

was used in his home as long as this type of device was "publicly available" and

"unclassified"—for example, if the device was present in the Spy Museum in Washington, D.C.

(Mem. Op. [451] at n.9.)

Next, the Court evaluated the litigant's need for the information in question. The Court concluded that the litigant's need for the information in question is strong, particularly if the Court were to faithfully enforce the Court of Appeals command that the "very subject matter of Horn's action" is not a state secret. Notably, the government's protective order, supposedly based on the assertions of privilege by Director Panetta, would not even allow the plaintiff to build a circumstantial case that U.S. Government eavesdropping equipment was used to eavesdrop on him, because the protective order would prohibit the plaintiff from even making this argument. (Gov.'t's Mot. [433] for a Protective Order at 14: ¶ 5) (prohibiting the parties from "inquir[ing] into or present[ing] evidence" that U.S. Government equipment was used to eavesdrop on the plaintiff). The government's interpretation of Panetta's assertion of the privilege, if sustained, would eviscerate the Court of Appeals decision that the very subject matter of Horn's action is not a state secret.[1] As a result, the Court felt compelled to reject the government's assertion of the privilege.[2]

---

[1]With respect to the coffee table, the Court of Appeals specifically discussed Horn's allegation that his "*government-issued* rectangular coffee table" was suspiciously swapped for an oval replacement while he was out of town, indicating that the Court of Appeals has already rejected the government's sweeping claim that the parties cannot "inquire into or present evidence" as to whether U.S. Government eavesdropping equipment was used because that inquiry would involve a state secret. *In re Sealed Case*, 494 F.3d 139, 146 (D.C. Cir. 2007) (emphasis added); (Gov.'t's Mot. [433] for a Protective Order at 14: ¶ 5.).

[2]If the intention of the government's continued obstinance in this case is to demonstrate to the Court that this case is simply impossible and cannot proceed in light of sensitive national security concerns and the interconnectedness of privileged and nonprivileged information, the government should save its theatrics for the Court of Appeals. This Court already dismissed the case because of the risk of divulging state secrets. (Mem. Op. [380], July 28, 2004.) The Court of Appeals reversed, however, stating that the very subject matter of the suit is not a state secret, that the plaintiff should have an opportunity to proceed using nonprivileged material, and leaving it to this Court to determine how the case could proceed on remand, but noting that nothing prevented the use of CIPA-like procedures. This Court, as a mere district court, must apply the

Finally, the Court evaluated the credibility of the government's representations given all

of the circumstances of the case. The Court noted that it did not give a high degree of deference

to the government because the government has already committed fraud on this Court and the

Court of Appeals regarding what information is covered by the state secrets privilege in this

case.[3] The Court also noted that as to the merits of the government's privilege claim, the

government asserted the privilege too broadly, as this Court simply could not reconcile some of

the information that the government claimed was privileged with a "reasonable danger that

compulsion of [the] evidence will expose state secrets matters that should not be divulged."

---

panel majority opinion despite its own initial belief that this case must be dismissed. *See also In re Sealed Case*, 494 F.3d 139, 158 (D.C. Cir. 2007) (Brown, J., dissenting in part) (stating that the majority opinion should have considered the extent that the non-privileged facts were intertwined with the privileged material and arguing that "[t]he few remaining unprivileged facts compromising Horn's prima facie case are islands surrounded by a sea of privileged material"). Although this Court is not unsympathetic to the government's position, the government did not seek further review of the decision of the panel majority in 2007, and this Court will not participate in the government's efforts to thwart compliance. The Court's duty is to apply the law as stated by the majority of the Court of Appeals.

[3]The government apparently laments the fact that the Court required it to reassert the privilege upon remand following the discovery that the government had committed fraud on the Court and the Court of Appeals. (Gov.'t's Mot. [458] at 3.) Of course, the government has no one to blame but itself for the Court's reexamination of the assertion of the state secrets privilege. The government committed fraud on the Court and the Court of Appeals by knowingly failing to correct a declaration of Director Tenet, who stated that defendant Brown's identity was covert, when the government knew that it was not. (*See* Mem. Op. [166-2], January 15, 2009; Mem. Op. [174], February 6, 2009.) Not only did the government knowingly fail to correct the declaration, it represented to the Court of Appeals that Brown's identity was covert, in an action that can only be construed as an attempt to dishonestly gain dismissal. The Court simply could not continue to sustain the privilege based on a declaration that had been shown to be demonstrably false, not to mention that seven years had passed and there was a new Director of the CIA. The fraud also diminished the government's credibility and led the Court to believe that perhaps the government had misrepresented other facts in the litigation. Of course, the Court's consideration of the plausibility of the government's claims given all of the circumstances of the case is a proper consideration to take into account when evaluating the privilege. *Ellsberg v. Mitchell*, 709 F.2d 51, 58–59 (D.C. Cir. 1983).

*United States v. Reynolds*, 345 U.S. 1, 10 (1953). Moreover, the Court noted that Director

Panetta's classified declaration significantly conflicted with his unclassified declaration as to a

material piece allegation in the case, leading the Court to believe that the government had not

carefully thought through its assertion of the privilege.[4]

Although the government's privilege was invoked too broadly, inconsistently, and

sloppily, the Court did not simply reject the assertion of the privilege and allow discovery to

proceed as to the nonprivileged information. Instead, with respect to the filings that have already

been made in this case, the Court decided to give the government yet another opportunity to

convince the Court that its redactions were proper and that they have been limited to only

privileged information. The Court further allowed the government to submit these justifications

*ex parte*.[5]

Besides the Court's belief that the government asserted the privilege too broadly with

respect to certain information contained in the filings that have already been made in this case,

and that the government's view of the privilege could prevent the lawsuit from proceeding

despite the Court of Appeals' view that the very subject matter of the suit is not a state secret, the

---

[4]The government has not submitted an amended declaration from Director Panetta, leading the Court to question whether the government believes that the Court can order discovery to proceed with respect to all U.S. Government coffee-table-type eavesdropping devices similar to those in the Spy Museum. One needs to only look at the Inspector General reports to see that the resolution of this question will have a practical impact on the plaintiff's case. (Inspector General Report of the United States State Department at 4) (redacted by the government). The information contained therein will not be discussed by the Court so that this opinion can be made public in its entirety.

[5]If the Court determines that the information is nonprivileged after a further review of the government's justifications, it can order that the information be publicly disclosed or disclosed to the parties in the lawsuit. *See infra* 11–12.

Court's review of the filings led it to be concerned for another reason. The Court noted that

without clear boundaries as to what information is privileged and what is not, there would be an

unacceptable risk to national security were this case to ultimately proceed to discovery and trial.[6]

Moreover, the Court noted that it (and the government) could not adequately deal with this

category of information without the participation of the parties and their counsel. Accordingly,

the Court had two options: either dismiss the suit, or determine whether the case could proceed

using certain protective measures such as CIPA-like proceedings. If the Court determined the

case could proceed using CIPA-like procedures, it would have to weigh whether the advantage

gained from the procedures would outweigh the concomitant intrusion on national security.

Guided by the Court of Appeals' opinion in 2007, the Court determined that CIPA-like

proceedings were the next appropriate step.[7]

Of course, the Court was not without hesitation in ordering the participation of the

plaintiff, his counsel, the defendants, and their counsel in solving difficult questions of privilege

---

[6]Much of the information over which the government claims the privilege is already known to the plaintiff, the plaintiff's attorneys, and the defendants, as a review of the filings in this case makes evident. Indeed, many of the redacted filings are ones that were filed by the plaintiff himself. (*See, e.g.*, Plaintiff's Opposition to Defendants' Motion to Dismiss . . ." [249], Filed December 14, 1994) (the government has redacted large portions of the filing itself as well as Horn's declaration).

[7]The Court also noted a collateral benefit of the CIPA-like procedures, which would allow it to resolve disputes about the privilege that cannot be resolved without the assistance of counsel. For example, the plaintiff states that he wishes to prevent evidence as to an eavesdropping transmitter that resembles or is equivalent to a device that is in the Spy Museum in Washington, D.C. Because the government attorneys refuse to even address whether the plaintiff could present this type of evidence or whether this device exists, the Court is either required to take a field trip to the Spy Museum or get attorneys involved. With the involvement of attorneys it can learn precisely what device is in the Spy Museum or otherwise in the public domain from the attorneys themselves.

and classification. However, the Court's hesitation was tempered by a few considerations. First, as noted above, if the Court takes a preventative approach to the disclosure of privileged information, by providing clear boundaries in closed proceedings as to what information is privileged, the risk to national security will actually be less, not greater, than the government's *post hoc* approach to controlling classified information. Second, the Court decided to limit the scope of these "CIPA-like" proceedings to information already known by the parties. Admittedly, while the plaintiff's attorneys already know much of the classified information at issue, the defendants' attorneys do not, and the Court's order would require that they learn the classified information known by their clients. However, the Court noted that the defendants' attorneys have already been adjudicated favorably for access to classified information.[8] Finally, the Court was reassured by the Court of Appeals' most recent opinion in this case that concluded nothing in the opinion "foreclose[d] a determination by the district court that some of the protective measures in CIPA, 18 U.S.C. app III, which applies in criminal cases, would be appropriate, as Horn urges, so that this case could proceed." *In re Sealed Case*, 494 F.3d at 154.[9] The Court further decided to limit the scope of these CIPA-type proceedings to information that (1) the parties intended to use at trial; and (2) over which it could justify why the information was

---

[8]Moreover, allowing the plaintiff's attorneys to challenge the government's classification decisions but preventing the defendant's attorneys from learning any information or challenging the government's classification decisions that impact their clients would be put the defendants at a marked disadvantage and would be illogical given that the defendants' previous attorneys apparently had a "need-to-know" classified information known by their clients. (Def. Brown's Resp. [468] at 2.)

[9]This statement was conspicuous because this Court refused to apply CIPA and held that CIPA only applied in criminal cases in the opinion dismissing the case in 2004. (Mem. Op. July 28, 2004 at 12.)

7

not privileged.  Finally, the Court noted that these proceedings would be closed to the public.

The Court contemplated with these procedures in place, it would be able to carry out the Court of

Appeals' stated intention that this case proceed to trial using nonprivileged information while at

the same time safeguarding the inadvertent disclosure of privileged information to the public.

Not surprisingly, given the history of this case, someone threw a wrench into the Court's

plans.  Instead of complying with the Court's order, the government filed a "proposal for further

proceedings consistent with the Court's July 16, 2009 Memorandum Opinion and Order," which,

instead of being consistent with the opinion and order, essentially asked for reconsideration.[10]

The government asked the Court to allow it to have another chance to convince the Court that the

privilege was properly invoked; it wanted to provide the Court justifications for its redactions

before initiating any CIPA-like proceedings.  The government also argued that the Court did not

have the authority to order counsel to have access to classified, but as of yet nonprivileged

materials.  Finally, the government argued that if the Court were still not satisfied with the

government's assertion of the privilege following the receipt of its additional justifications, it

could order submissions from the parties in CIPA-like proceedings, but could not allow the

parties to discuss this information with their lawyers.  The government's motion (1) is not

consistent with the Court's July 16, 2009 order; (2) misconstrues or misunderstands what the

Court has already done in this case; and (3) fails to address the Court's fundamental concerns as

to how this case can proceed to discovery and trial without the participation of the parties and

their lawyers in the decisions regarding privileged information.

---

[10]Because this opinion essentially addresses a motion for reconsideration, this opinion
should be read in conjunction with the opinion issued on July 16, 2009. (Mem. Op. [451].)

## II.    ANALYSIS

As noted above, courts are not often confronted with what to do when the government has improperly asserted the privilege, asserted it too broadly, or when the Court contemplates it must order that the parties or their counsel have access to classified information in order to prevent a future breach of national security. Perhaps the case that comes closest to confronting the issue in this Circuit is *Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003). In *Stillman*, a former employee of the Los Alamos National Laboratory wrote a book about China's nuclear weapons program. Prior to publication, the government informed the plaintiff that portions of his manuscript were classified. Stillman filed suit, challenging the classification decision, and the district court ordered that Stillman and his attorney have access to the classified information. *Id*. at 547. The Court of Appeals reversed, and held that the court must first make an *in camera* review of the material, but in the event that it could not resolve the issue without the assistance of plaintiff's counsel, it should "consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security." *Id*. at 548–49. The government in this case, undeterred by the fact that the Court considered and discussed *Stillman* in its original opinion (Mem. Op. [451] at 12–13 n.12), cited *Stillman* for the proposition that the Court must first await specific justifications from the government for its redactions before the Court can determine that information is nonprivileged and can be disclosed.

The government's argument indicates that it either misapprehends or misconstrues what the Court has already done in this case. The Court has already attempted to resolve the classification dispute *ex parte*. The Court has considered the *ex parte* declaration of Director Panetta, another individual, and the redactions to all filings in this case. After the Court's

9

review, it appears that the privilege is improperly asserted with respect to at least a portion of information in this case. In other words, the Court has already undertaken stage one of the *Stillman* framework. If the Court were forced to resolve the classification dispute *ex parte* at this juncture it would—in favor of the plaintiff with respect to much of the information. Nothing the government cites indicates that the Court must give the government a "second chance" to convince it that the privilege applies. After reviewing the government's *ex parte* justifications for invoking the privilege and deciding that the privilege did not apply, the Court could have ordered all materials that it determined to be nonprivileged to be produced to the parties. Nevertheless, although this course would have been within the Court's power, it decided, in an abundance of caution, to give the government yet another chance to justify its redactions before ordering that the redacted material be produced to the parties or placed on the public docket. If anything, this Court extended the framework of the state secrets privilege in favor of the government by first allowing it to justify its assertion of the privilege based on "a formal request lodged by the head of the department which has control over the matter," *In re Sealed Case*, 494 F.3d at 142, and then giving it a second chance to file specific justifications for redacted information.

That issue aside, the government's argument wholly fails to address the second category of information addressed by the Court's July 16, 2009 order. Regardless of whether the Court accepts or rejects the government's assertion of the privilege over certain information that has already been filed in this case, the Court still must fashion a way for this case to ultimately proceed to discovery and trial, keeping in mind that the very subject matter of the action is not a state secret. As the case stands, the parties and attorneys "cannot precisely map the division

between what portion of the information [they] know is covered by the privilege, and what isn't."

*In re Sealed Case*, 494 F.3d at 159 (Brown, J.) (dissenting in part).  Moreover, if the parties and

attorneys are kept completely in the dark as to the extent of the privilege, they will "probe as

close to the core secrets as the trial judge would permit" and "[s]uch probing in open court would

inevitably be revealing." *See Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir.

1980) (en banc) (per curiam).  If witnesses are called to the stand, the danger that they would

divulge some privileged information during direct and cross-examination would be great,

because the witnesses themselves would not be privy to the exact scope of the privilege and "the

demarcation between the privileged information and unprivileged information is by no means

intuitive." *In re Sealed Case*, 494 F.3d at 159 (Brown, J.) (dissenting in part) (citing *Bareford v.

Gen. Dynamics Corp.*, 973 F.2d 1138, 1144 (5th Cir. 1992)). These problems only "exacerbate[]

the potential for inadvertent disclosure." *In re Sealed Case*, 494 F.3d at 159 (Brown J.)

(dissenting in part).  Accordingly, the Court fashioned a remedy that best protects against these

inadvertent disclosures while at the same time allowing the case to proceed.  The government's

motion does not address, let alone rebut, the Court's conclusion that only by providing clear

boundaries to counsel in closed, "CIPA-like" proceedings can national security interests be

adequately safeguarded.  The government's head-in-the-sand approach perhaps gives credence to

the plaintiff's claim that the government is still in denial about the Court of Appeals' 2007

decision.

Instead of refuting the Court's conclusion with reasoned analysis, the government merely

argues that the Court does not have the power to conduct these CIPA-like proceedings because it

would require the plaintiff and defendants to discuss classified information with their attorneys,

and the Court cannot order the Executive Branch to grant a security clearance to a particular

individual because that decision "is committed by law to the appropriate agency of the Executive

Branch." (Gov.'t Mot. at 6) (citing *Department of Navy v. Egan*, 484 U.S. 518, 527 (1988)).

Certainly, the government is correct that in most cases the Executive's decision to grant or deny a

security clearance is nonjusticiable because the decision to grant or deny a clearance is an action

committed to agency discretion by law. *Oryszak v. Sullivan*, No. 08-5403, 2009 WL 2475289, at

*2–3 (D.C. Cir. Aug. 14, 2009). However, in *Oryszak*, the D.C. Circuit's most recent case on the

subject, it specifically noted that this rule applies "at least in the absence of litigation," apparently

reserving the question as to whether the Court can order counsel to have access to classified

information in the context of litigation. *Oryszak* at *2.

Indeed, allowing the Court to play a role in the handling of classified information, at least

in the context of litigation, is beyond dispute. The Court of Appeals in *Ellsberg v. Mitchell*

rejected the argument that the Court should renounce any role in evaluating the state secrets

privilege. *Ellsberg*, 709 F.2d 51, 57–58 (D.C. Cir. 1983) ("[T]o ensure that the state secrets

privilege is asserted no more frequently than necessary, it is essential that the courts continue

critically to examine instances of its invocation."). The state secrets privilege is a judicial

doctrine, and when the Court evaluates the privilege, its evaluation is not merely an academic

exercise. When the privilege is denied, the Court has the ability to order the information

disclosed in litigation. Were the rule otherwise, the Executive Branch could immediately ensure

that the "state secrets privilege" was successfully invoked simply by classifying information, and

the Executive's actions would be beyond the purview of the judicial branch. This would of

course usurp the judicial branch's obligation "to say what the law is." *Marbury v. Madison*, 1

Cranch 137, 177 (1803).  As noted by the court in *Mohamed v. Jeppesen Dataplan, Inc.*, 563

F.3d 992, 1006 (9th Cir. 2009):

> *Reynolds* makes clear that "classified" cannot be equated with "secret" within the meaning of the doctrine.  If the simple fact that information is classified were enough to bring evidence containing that information within the scope of the privilege, then the entire state secrets inquiry—from determining which matters are secret to which disclosures pose a threat to national security—would fall exclusively to the Executive Branch, in plain contravention of the Supreme Court's admonition that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers" without "lead[ing] to intolerable abuses."[11]

While the United States Court of Appeals for the District of Columbia Circuit has thus far

not squarely ruled on the question of whether the Court can order a party's attorney to have

access to information that the government deems is classified, it has continuously suggested, or

at least reserved, that it may be appropriate in the right circumstance.  *See Oryszak* at *2 (stating

that the general rule applies "at least in the absence of litigation"); *In re Sealed Case*, 494 F.3d

154 (stating that nothing in the opinion prevents the Court from using CIPA-like procedures and

refusing to address whether Horn or his counsel have a "need-to-know" additional classified

information)[12]; *Stillman v. CIA*, 319 F.3d 548–49 (ordering the district court to attempt to resolve

---

[11]The government apparently previously recognized this issue, as it granted the plaintiff's attorneys security clearances and allowed them to view "classified" information, but not "privileged" information. (*See* Pl.'s Mot. for Clarification [454] at 5–6) (stating that on appeal plaintiff's counsel were able to see classified information by virtue of their security clearances, but that the government provided the appellate court a separate appendix that the government contended contained "state secrets").  Now, however, the plaintiffs attorneys' security clearances have lapsed, and, perplexingly, the government contends that they no longer have a "need-to-know" classified information, nor do they believe that the defense attorneys have a need-to-know. (Gov.'t Mot. [458] at 12.)  The Court agrees with the plaintiff that the government's behavior with regard to the security clearances is "peculiar." (Pl.'s Mot. for Clarification [454] at 6.)

[12]The Court of Appeals' use of *additional* classified information, immediately after its statement that the Court may resort to CIPA-like procedures is telling.  This Court interprets the

the dispute *ex parte*, but in the event that it could not, to decide whether to enter an order

granting the plaintiff's counsel access to classified information).

The cases cited by the government in support of its *de facto* motion for reconsideration

are largely irrelevant.  For example, the government cites *Doe v. CIA*[13] and states that the Second

Circuit rejected the right of counsel to obtain classified information known to their client.

(Gov.'t Reply 2.)  However, the opinion in *Doe* was limited to "stage one" of the *Stillman*

inquiry.  In other words, *Doe* simply stands for the proposition already decided by the D.C.

Circuit in *Stillman*, that the Court must undertake the initial review of the state secrets claim *in*

*camera* and *ex parte*, and that the party's counsel has no right to access the classified information

during this inquiry.  Indeed, this Court's proceedings have been consistent with *Doe*, as it

undertook an *in camera* and *ex parte* review of the claim of privilege.[14]  The Court has also

---

Court of Appeals' language to mean that under the 2007 opinion Horn and his counsel could
participate in CIPA-like hearings and discuss classified information already known to them but
that whether they had the right to any additional classified information was reserved for another
day.  In another portion of the opinion, however, the Court of Appeals states its apparent belief
that the "plaintiff is not in possession of the privileged material," 494 F.3d at 145, a statement
that is "mystifying."  *Id.* at 159 (Brown, J.) (dissenting in part).  *See, e.g.* Plaintiff's Opposition to
Defendants' Motion to Dismiss . . ." [249], Filed December 14, 1994) (the government redacting
large portions of information).  Perhaps the latter statement can be reconciled with the evidence
in the case if the Court of Appeals was stating its belief that classified does not mean the same
thing as privileged, and that under its view of the evidence nothing known by Horn is privileged.

[13] No. 07-797, 2009 WL 2382751 (2d Cir. Aug. 5, 2009).

[14]*Doe* is not the only example of the government citing cases that mandate that the Court
should do what it has already done.  *See Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983)
(stating that counsel does not have a right to participate in the court's *ex parte* examination of the
invocation of the privilege); *Holy Land Found. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003)
(same); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir.
2001) (same).  As noted above and in accordance with these opinions, the Court did not allow the
plaintiff to see the government's *ex parte* declarations in support of the privilege.

denied the parties the ability to see the *ex parte*, classified filings of Director Panetta and another individual and the portions of the filings in this case over which the government asserts the privilege.

With respect to "stage two" of the *Stillman* inquiry, however, once the Court has already decided that the state secrets privilege has been improperly invoked, that the Court cannot decide the question without the assistance of counsel, and/or that limited disclosure of classified information to counsel is necessary to prevent further unauthorized disclosure in the future, *Doe* reserved the question. *Doe*, much like the D.C. Circuit cases on this point, refused to answer "whether and to what extent the government could validly refuse to grant the plaintiffs the access they sought to discuss, view, or record classified information not properly covered by an assertion of the state-secrets privilege." *Doe*, 2009 WL 2382751 at *11.[15]  Accordingly, in this case, in which the assertion of the privilege has been denied without prejudice, *Doe* is

---

[15]The court in *Doe* also noted that its calculus may have changed if the "plaintiffs opposed the invocation of the state-secrets privilege on the ground that the information they were seeking to offer the court was based in whole or in part on public information." *Doe* at *11. Indeed, the Court would be in an absurd posture if it could not intervene in a situation wherein the government refused to allow an attorney to talk to his client about public, non-privileged information necessary to prosecute or defend a lawsuit merely because the government deems it, with little or no specific justification, classified. In this case, that could lead (and apparently the government argues that it should lead) to the absurd result that Horn is prohibited from discussing with his counsel the fact that the United States uses eavesdropping devices, despite the fact that that information can be learned in a publicly available online encyclopedia or by anyone who walks into the Spy Museum in Washington, D.C. (*See* Gov.'t Mot. [458] at 12 n.7) (refuting the Court's skepticism of the government's claim that the U.S. Government's use of eavesdropping devices is a state secret because this information is contained in a publicly available online encyclopedia and apparently in the Spy Museum by stating that "[u]nofficial revelations and/or speculation do not constitute official disclosure."). Director Panetta appears to agree with the Court, not the government attorneys in the case, in his classified, *ex parte* declaration when he states that publicly available, unclassified eavesdropping devices such as those present in the Spy Museum in Washington, D.C. can be inquired about in this case. (*See* Mem. Op. [451] at n.9) (analyzing a portion of the Director Panetta's classified declaration).

inapplicable.

Similarly, the government's briefs are replete with examples of cases that fail to address the fundamental issue presented in this case; whether the Court can order parties' counsel to have access to classified information when the information is already known to the parties and the assertion of the state secrets privilege has been rejected after an *in camera* review of the government's affidavits in support of its assertion.[16] *See, e.g., Dorfmont v. Brown*, 913 F.2d 1399, 1400 (9th Cir. 1990) (addressing whether federal courts can review the Defense Department's decision to revoke the security clearance of a defense contractor); *C.I.A. v. Sims*, 471 U.S. 159, 180 (addressing the propriety of reviewing a discretionary decision by the Director of the Central Intelligence agency under a FOIA statute); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (same).

The government itself acknowledges that if a privilege claim is rejected, the Court has the ability to delve deeper until it is either satisfied that the privilege is properly invoked or until it can rule that it is not properly invoked. The government states that "if, after reviewing [*ex parte* justifications for redactions], the Court still believes the question is unsettled, the Court could then consider permitting submissions by the parties (those former government officials who were previously granted access to some classified information) based upon their personal knowledge." (Gov't Mot. [458] at 15.) While the Court agrees, and has indeed already reviewed the government's *ex parte* declarations in support of its invocation of the privilege, it does not

---

[16]Not to mention that the cases cited by the government do not approach the extraordinary situation presented here, in which the government has diminished credibility because it has already committed fraud on the Court and the Court of Appeals as to the scope of the privilege and its application to the specific facts in this case.

comprehend the government's argument as to why the next step in the process would be limited

to the parties themselves, but not their counsel.  The government provides no justification or case

law for its argument that someone who has previously been granted access to classified

information can challenge the state secrets privilege but that his attorney cannot, or why this

challenge must be based on "personal knowledge."  Moreover, while this argument addresses the

collateral benefit that the Court would gain from CIPA-like procedures[17], it fails to address the

Court's primary justification for initiating the proceedings—its concern that the government's

*post hoc* method of protecting classified information in the case is simply unworkable during

discovery and at trial.  And indeed, the attorneys, not the clients, will be presenting the evidence

during trial.  Therefore, it is the Court's determination that the attorneys need to be involved in

the process for the case to move forward while minimizing the risk to national security.[18]  The

deference generally granted the Executive Branch in matters of classification and national

security must yield when the Executive attempts to exert control over the courtroom.


## III.   CONCLUSION

---

[17]The Court noted that a collateral benefit of the CIPA-like procedures would be that the
parties would have an opportunity to meaningfully argue that information already known to them
was not, in fact, a state secret. (Mem. Op. [451] at 11.)

[18]Interestingly, the government does not object to the attorneys being involved in the
process because they are untrustworthy, but instead because it asserts that they do not have a
"need-to-know" (although the government provides no justification as to why they do not have a
need-to-know).  Not only is the government's decision contrary to the Court's determination that
within the context of this litigation the attorneys do have a need to know, but defendant Brown
has stated that his previous attorneys, who were Assistant United States Attorneys, apparently did
have a need to know the classified information that he shared with them, but the government now
says his private lawyers do not have that same need. (Def. Brown's Resp. [468] at 2.)

In accordance with this opinion, it will be ordered that the government provide its justifications for its redactions to the filings and Inspector General reports by September 4, 2009. It will further be ordered that within 10 days of this date, the Executive must grant counsel for plaintiff and defendants, who have been favorably adjudicated for access to classified information, security clearances commensurate with the level of information known by their clients. Those counsel include: Brian Leighton and Janine Brookner for the plaintiff; David Maria and Donald Remy for defendant Huddle; and Robert Salerno and Michael Sachdev for Defendant Brown. It is important to remember that at this juncture, the plaintiff, defendants, and their counsel, only have a need-to-know the classified and/or privileged information already known to them or to their clients for purposes of allowing this lawsuit to proceed. If it is necessary to renew the security clearances of the plaintiff and defendants themselves in order to implement the lawful discussion of the information that will be contained in the filings in preparation of the CIPA-like proceedings, the Executive must do that as well. The parties should not discuss classified and/or privileged information with their lawyers until they receive their security clearances. Within 40 days of this date, the plaintiff and defendants will be required to file motions with the Court stating (1) information that they intend to use during discovery and/or present at trial, and (2) over which the parties believe the government has improperly classified, asserted the privilege over, or redacted, including specific justifications for their arguments. These filings must be filed with Christine Gunning, the Court Security Officer. These filings will only be served on the government, not the other parties in the case (in order to minimize the risk that the plaintiff will learn new classified information from one of the defendants or vice versa). After the Court receives those filings, the government will have an opportunity to respond, and it

will be able to respond *ex parte* if it believes its very responses are privileged and can justify its

belief.  If necessary to resolve any disputes, the Court will implement hearings, which may

include one or more parties at a time.  Following the resolution of these hearings, a protective

order will be issued to each party that will mandate the information about which the lawyers

cannot argue and about which they cannot inquire during discovery or at trial.

A separate order shall issue this date.

SO ORDERED.

_____          _____

Chief Judge Royce C. Lamberth                    Date