**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| Richard A. Horn, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:94-CV-1756 (RCL) |
| ) | |
| Franklin Huddle, Jr. ) | |
| and Arthur Brown, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## UNITED STATES' EMERGENCY MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Civil Procedure 62, the United States hereby moves for a stay

pending appeal of the Court's August 26, 2009 Order.

Pursuant to Local Rule 7.1(m), the counsel for the United States conferred with counsel

for the parties.  Counsel for both the plaintiff and defendants advised that they oppose the motion

for a stay pending appeal.

Dated:  September 2, 2009

Respectfully submitted,

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director

  _/s/ Alexander K. Haas_____
PAUL G. FREEBORNE
ALEXANDER K. HAAS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm. 6108
Washington, D.C. 20530
Tel: (202) 353-0543—Fax: (202) 616-8460
*paul.freeborne@usdoj.gov*
*Attorneys for the United States*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
Richard A. Horn,                         )
)
                Plaintiff,    )
)
              v.            )      No. 1:94-CV-1756 (RCL)
)
Franklin Huddle, Jr.                     )
and Arthur Brown,                        )
)
             Defendants.       )
_____)


## UNITED STATES' MEMORANDUM IN SUPPORT OF ITS EMERGENCY MOTION FOR A STAY PENDING APPEAL OF THE AUGUST 26, 2009 ORDER

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director

PAUL G. FREEBORNE
ALEXANDER K. HAAS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Room 6108
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8460
email:  paul.freeborne@usdoj.gov

Dated: September 2, 2009            *Attorneys for the United States*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION. ...................................................................................................................... 1

ARGUMENT. ............................................................................................................................. 3

THE GOVERNMENT IS ENTITLED TO A STAY PENDING APPEAL. ................................... 3

I.     THE AUGUST 26 ORDER RAISES SERIOUS LEGAL QUESTIONS
THAT WARRANT A STAY PENDING APPEAL. ......................................................... 5

II.    ABSENT A STAY, THE AUGUST 26 ORDER WILL
IRREPARABLY HARM THE GOVERNMENT. ........................................................... 14

III.   MAINTAINING THE STATUS QUO WILL NOT IRREPARABLY
HARM THE OTHER PARTIES. .................................................................................. 17

IV.   A STAY SERVES THE PUBLIC INTEREST ............................................................... 17

CONCLUSION. ....................................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                                                **PAGE(S)**

*Al-Odah v. United States*,
    559 F.3d 539 (D.C. Cir. 2009). ................................................................... 5, 13

*Bowles v. Seminole Rock & Sand Co.*,
    325 U.S. 410 (1945). ....................................................................................... 9

*CIA v. Sims*,
    471 U.S. 159 (1985). ................................................................................... 7, 16

*Cuomo v. Nuclear Regulatory Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985). ...................................................................... 4

*Dep't of Justice v. Rosenfield*,
    501 U.S. 1227 (1991). .................................................................................. 15

*Department of the Navy v. Egan*,
    484 U.S. 518 (1988). ................................................................................... 6, 7

*Dorfmont v. Brown*,
    913 F.2d 1399 (9th Cir. 1990). ...................................................................... 7

*Halperin v. Department of State*,
    565 F.2d 699 (D.C. Cir. 1977). ...................................................................... 7

*Hamilton Watch Co. V. Benrus Wath Co.*
    206 F.2d 738 (2d Cir. 1953). ......................................................................... 4

*Holy Land Found. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003). ...................................................................... 9

*John Doe Agency v. John Doe Corp.*,
    488 U.S. 1306 (1989) (Marshall, J., in chambers). ....................................... 15

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001). ...................................................................... 9

*New York v. Kleppe*,
    429 U.S. 1307 (1976) (Marshall, J., in chambers). ....................................... 15

*Nken v. Holder*,
    129 S.Ct. 1749 (2009). .............................................................................. 3, 4, 16

*Oryszak v. Sullivan*,
   __ F.3d__, 2009 WL 2475289 (D.C. Cir. Aug. 14, 2009). ........................... 7, 8

*People's Mojahedin Org. v. Dep't of State*,
   327 F.3d 1238 (D.C. Cir. 2003). ................................................. 9

*Pollard v. Fed. Bureau of Investigation*,
   705 F.2d 1151 (9th Cir. 1983). ................................................. 10

*Population Institute v. McPherson*,
   797 F.2d 1062 (D.C. Cir. 1986). ................................................ 4

*Providence Journal Co. v. FBI*,
   602 F.2d 1010 (1st Cir. 1979). ............................................. 15, 16

*Providence Journal v. F.B.I.*,
   595 F.2d 889 (1st Cir. 1979). .................................................. 3

*Salisbury v. United States*,
   690 F.2d 966 (D.C. Cir. 1982). ................................................ 10

*In re Sealed Case*,
   494 F.3d 139 (D.C. Cir. 2007). ............................................ 10, 13

*Stehney v. Perry*,
   101 F.3d 925 (3d Cir. 1996). .................................................. 6, 7

*Sterling v. Tenet*,
   416 F.3d 338 (4th Cir. 2005). ................................................. 10

*Stillman v. CIA*,
   319 F.3d 546 (D.C. Cir. 2003). ............................................... 5, 9

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 504 (1994).......................................................... 9

*In re United States*,
   1 F.3d 1251, 1993 WL 262656 (Fed Cir. 1993). ............................... 10

*United States Dep't of Commerce v. Assembly of State of California*,
   501 U.S. 1272 (1991)........................................................ 15

*United States v. Mejia*,
   448 F.3d 436 (D.C. Cir. 2006). ........................................... 11, 13

*United States v. Philip Morris Inc.*,
  314 F.3d 612 (D.C. Cir. 2003). ........................................................... 3, 5, 15, 17

*United States v. Reynolds*,
  345 U.S. 1 (1953). ........................................................................... 14

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977). ......................................................... 3, 4, 15

*Winter v. Natural Resources Defense Council, Inc.*,
  129 S.Ct. 365 (2008). ......................................................................... 4

## STATUTES

18 U.S.C. App. III ("CIPA"). ............................................................ <u>passim</u>

## LEGISLATIVE MATERIAL

Exec. Order § 4.1(a). ........................................................................ 8

Exec. Order § 6.1(z). ........................................................................ 6

Exec. Order 12,958. ....................................................................... 6, 7, 8

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 62(c). ...................................................................... 3, 15

## MISCELLANEOUS

Moore's Federal Practice, Section 208.03. .......................................... 16

## INTRODUCTION

By Order dated August 26, 2009, this Court denied the Government's proposal for further proceedings and ordered the Government to grant security clearances to the parties' counsel to access classified information in their clients' possession. *See* August 26 Order, Dkt. 479, ¶ 3. In particular, the Court's August 26 Order finds that the parties' counsel have a "need-to-know" the classified information already known by their clients regarding this case. *Id.* The Court granted the Government 10 days, *i.e.*, to September 10, 2009, to comply with the provisions of the Order. The purpose of the Court's Order in this regard is to permit the parties' counsel to engage in CIPA-like procedures, which, in rejecting the Government's alternate proposal, the Court has concluded are necessary for the further prosecution of this case. *See* August 26, 2009 Memorandum Opinion ("Mem. Op."), Dkt. 478, at 10-11, 17-18; August 26 Order, ¶ 5 (stating that the parties' counsel may not have access until the security clearances are finalized); ¶ 6 (setting forth initial briefing schedule).

The Government respectfully argues that the August 26 Order represents a significant departure from established law by making a judicial "need-to-know" determination that properly belongs to the Executive Branch. The Government also maintains that the Court has erred in authorizing disclosure of classified information through CIPA-like proceedings in a civil context without first availing itself of alternate procedures. Accordingly, the Government has appealed this Court's Order to the D.C. Circuit, *see* Dkt. 482, and hereby seeks an emergency stay pending appeal of those terms related to counsel access.

As discussed in detail below, a limited stay pending appeal of the implementation of the Order is warranted under the instant circumstances. At a minimum, there is a serious legal question as to whether the Court—rather than the Executive Branch—has authority to make a

need-to-know determination in the context of civil litigation. In addition, the disclosure of classified information in the absence of the requisite need-to-know determination would irreparably injure the Government by releasing classified information to individuals not authorized to possess it under the relevant Executive Order—a situation that the Court of Appeals could not adequately remedy. In addition, the Government's right to a meaningful appeal necessarily hinges on a limited stay pending appeal of the disclosure provisions of the Order. Moreover, the parties cannot demonstrate that they will be prejudiced by a stay pending appeal of the Court's Order. Finally, because the Court's August 26 Order requires the disclosure of classified national security information, the public interest would be served by a stay pending appeal.

For these reasons, the Government respectfully submits that the proper and prudent course is for the Court to stay, pending appeal, its Order directing the Government to grant security clearances to the parties' counsel. The effect of such a stay would be to maintain the status quo while the Government seeks appellate review, and to prevent irreparable harm to the Government in the interim. The Government respectfully requests that a ruling on the instant motion be issued by 3:00 p.m. on Friday, September 4, 2009. This would provide sufficient time for the Government, if necessary, to seek relief in the Court of Appeals in advance of the upcoming Labor Day weekend, and for the Court of Appeals to consider the issues. Notwithstanding the requested stay pending appeal as it pertains to access to classified information, the Government still intends to file, on September 4, 2009, supplemental declarations that (i) support the redactions made to the record and (ii) respond to the Court's questions regarding the scope of the privilege.

# ARGUMENT

## THE GOVERNMENT IS ENTITLED TO A STAY PENDING APPEAL

By ordering the Government to provide security clearances to the parties' counsel based upon a judicial "need-to-know" determination, *see* August 26 Order ¶ 3, the Court's Order permanently alters the status quo.[1]  *See Providence Journal v. F.B.I.*, 595 F.2d 889 (1st Cir. 1979) (noting that disclosure without a stay will irrevocably alter status quo).  Moreover, the August 26 Order is injunctive, and when an appeal is taken from an injunction a district court "in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal . . . ."  Fed. R. Civ. P. 62(c).  The following factors are to be considered in determining whether a movant's request for a stay pending appeal is warranted:  (1) that it has a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the stay is denied; (3) that issuance of the stay will not cause substantial harm to other parties; and (4) that the public interest will be served by issuance of the stay.  *See United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).  *See also Nken v. Holder*, 129 S.Ct. 1749, 1761 (2009) (noting that the first two factors are the "most critical" and that there is substantial overlap between the decision to grant a stay and whether to grant a preliminary injunction).

Furthermore, for the moving party to obtain a stay, it is not necessary to demonstrate that

---

[1]  The Court also required that the Government renew the clearances of the parties "if it were necessary" for the contemplated discussions between the parties and their counsel in advance of CIPA-like filings.  *See* August 26 Order, ¶ 4.  Because the Government understands the Order as (1) proscribing any such discussions until after the issue of counsel clearance is resolved, *see id.* ¶ 5, and (2) limiting the scope of any hypothetical CIPA-like proceedings involving the parties (and their counsel) to only information they already possess, the Government does not believe it is necessary to renew such clearances because the parties would merely disclose classified information to their counsel and would not themselves have access to any further classified information.

success would be certain. *See Nken*, 129 S.Ct at 1761 (citing *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365 (2008) and noting that more than a "mere possibility" standard is required when evaluating both the success on the merits and irreparable harm prongs). Rather, the Court of Appeals has made clear that it is sufficient for the moving party to demonstrate that it "'has raised questions going to the merits, so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Washington Metro.*, 559 F.2d at 844 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)); *see also Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (holding that relief pending appeal was appropriate where moving party raised "a serious legal question"). Under that standard, a court may stay enforcement of its ruling if it finds that the moving party has presented a "serious legal question" and that the other three factors weigh heavily in the moving party's favor, even where a court disagrees with the moving party regarding the merits. *Washington Metro.*, 559 F.2d at 843-44. In other words, "[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Id.* at 844; *see also Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) ("A stay may be granted with either a high probability of success and some injury, or *vice versa*.").

Applying these factors, the Government is entitled to a stay pending appeal. There can be no doubt that, at a minimum, serious legal questions exist with regard to the course that the Court has proposed, *i.e.*, ordering that the parties' counsel be given access to classified information for use in CIPA-like proceedings, which the Court itself recognizes, *see* August 26 Mem. Op. at 1-2, would be entirely unprecedented. This alone would be sufficient to warrant a

stay. Moreover, as discussed below, disclosure of classified information or information otherwise subject to important governmental privileges is, by its nature, irreparable to the Government's interest. The D.C. Circuit has recognized that interlocutory appeals are generally appropriate to address—even outside the national-security context—the inappropriate disclosure of even a single allegedly privileged document. *See Philip Morris Inc.*, 314 F.3d at 619; *see also Al-Odah v. United States*, 559 F.3d 539, 543-44 (D.C. Cir. 2009); *cf. Stillman v. CIA*, 319 F.3d 546, 549 (D.C. Cir. 2003) (dicta). The other factors also weigh in favor of a stay pending appeal.

## I. THE AUGUST 26 ORDER RAISES SERIOUS LEGAL QUESTIONS THAT WARRANT A STAY PENDING APPEAL.

The Court's August 26 Order represents an unprecedented departure from the Executive's exclusive authority to control access to classified information. A serious and substantial legal question exists concerning whether the determination of who has the "need-to-know" classified information is a decision that is constitutionally committed to the Executive Branch in this context and whether that Executive decision may be made by the courts. The Government respectfully submits that the seriousness of the legal questions at issue already has been recognized by the Court. The Court's most recent opinion acknowledges that no other decision has compelled the disclosure of classified information to counsel over the objection of the Executive. *See* August 26 Mem. Op. at 1-2. Given the seriousness of the issue presented and the unprecedented course in which classified national security information would be disclosed, the terms of the Court's August 26 Order should be stayed so as to permit further review.

The Supreme Court has made clear that the grant of a security clearance, and the authority to determine who or how many persons shall have access to classified information, "is committed by law to the appropriate agency of the Executive Branch," and "flows primarily

from [a] constitutional investment of power in the President." *Department of the Navy v. Egan*, 484 U.S. 518, 526-27 (1988). Under the Executive Order that controls the handling of classified information, a person may have access to such information only if three conditions are met: (1) a favorable determination of eligibility for access has been made by an agency head or designee; (2) the person has signed an approved nondisclosure agreement; and (3) the person has a need-to-know the information. Exec. Order 12,958, as amended, § 4.1.

A person has a "need-to-know" classified information only if "an authorized holder of classified information" determines that the person "requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." E.O. § 6.1(z). Counsel for the parties do not have a need-to-know under the Executive Order because no authorized holder of the classified information has determined that they require access to perform or assist in an authorized governmental function. *Cf.* Exec. Order 12,958, as amended, § 4.1(c), 6.1(b) ("Classified information shall remain under the control of the originating [Executive Branch] agency."). In sum, while the Court's August 26 Order determines that the parties' counsel have a need-to-know certain classified information, *see* August 26 Order, ¶ 3, the Government respectfully disputes that conclusion as well as the Court's authority to reach it.

The Court is without authority to make a "need-to-know" determination in this context. "[T]he courts of appeals have consistently held that under *Egan*, the federal courts may not review security clearance decisions on the merits." *Stehney v. Perry*, 101 F.3d 925, 932 (3d Cir. 1996) (collecting cases). As the Supreme Court explained in *Egan*,

> For reasons . . . too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible, *and this must include broad discretion to determine who may have access to it.* Certainly, it is not reasonably possible for an outside nonexpert body

to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.

*Id.* at 529 (internal quotation and citation omitted) (emphasis added). In decisions about who may have access to classified information, a federal court is just such "an outside nonexpert body," *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990), and is ill-equipped to second-guess the Executive Branch. *See CIA v. Sims*, 471 U.S. 159, 180 (1985) ("It is the responsibility of the [Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk . . . .").[2]

Under *Egan*, courts should not consider intruding upon the authority of the Executive in military and national security affairs "unless Congress specifically has provided otherwise." *Egan*, 484 U.S. at 530. Indeed, this was the principle recently reiterated by the D.C. Circuit in *Oryszak v. Sullivan*, where it held that a government employee could not seek judicial review of the Executive's revocation of her security clearance. The Court of Appeals stated: "The Supreme Court has made clear that, at least in the absence of *legislation*, 'the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch.'" *Oryszak v. Sullivan*, ___

---

[2] While the Government recognizes that the Court remains gravely concerned about the Government's failure to disclose a significant change in circumstances concerning the earlier invocation of the state secrets privilege, that serious error ought not to have an effect on the question of disclosure of classified national security information as a legal matter (or rejection of the state secrets privilege). *See* August 26 Mem. Op. at 4 & n.3. It is worth emphasis that the recent declarations that have been submitted, *e.g.*, by CIA Director Panetta who assumed office this year, could not be tainted by the previous failures of agency counsel while this case was dormant. The important intelligence interests of the United States should not be undermined for those failures by imposing steps that could harm national security. *See, e.g.*, *Halperin v. Department of State*, 565 F.2d 699, 706-07 (D.C. Cir. 1977) (ordering remand, not automatic disclosure, where the Government failed to satisfy FOIA Exemption 1 requirements for national security information).

F.3d ___, 2009 WL 2475289, *2 (D.C. Cir. Aug. 14, 2009) (emphasis added) (quoting *Egan*, 484 U.S. at 527). The Government respectfully notes that the Court's August 26 Opinion misread *Oryszak* to have adopted a broader rule—*viz.*, that the Executive Branch's exclusive authority to determine security clearances applies "'at least in the absence of *litigation*,'" *see* August 26 Mem. Op. at 12 (emphasis added) (mis-quoting *Oryszak* at *2); *see also id.* at 13 (same). That error appears to have led the Court to conclude that *Oryszak* "apparently reserv[ed] the question as to whether the Court can order counsel to have access to classified information in the context of litigation." *Id.* at 12. Even so, *Oryszak*'s holding concerning the default rule in the "absence of legislation" (not "litigation") does not suggest that a Court may assert authority to override the Executive's need-to-know determination merely because a case is in litigation. Notably, *Oryszak* has no application here: There is no applicable legislation purporting to provide authority for this Court to determine for itself whether a person has a need-to-know and may be granted access to such classified information.

The Executive Order makes clear that the authority to determine a person's need-to-know is the authority to determine *access*, because a need-to-know is a prerequisite to access. *See* Exec. Order § 4.1(a). *See also* August 15, 2000 Opinion, Dkt. 340, at 13-16 (holding that a security clearance absent a need-to-know does not authorize access and stating that "determinations of access must be placed in the hands of those who possess the fullest information about the risks to national security that would be implicated by disclosure, which in this instance is the Director of Central Intelligence"). An authorized holder of classified information is one who may grant access under the terms of the Executive Order itself. The Executive Order states that originating agencies have final say over another agency's decision whether to disclose information, *see id.* at § 4.1(c), and that these same protections apply even

when information is disseminated outside the Executive Branch. *See id.* at § 4.1(e). The Executive Order further provides that an interagency panel composed of senior Executive Branch officials has authority to ultimately rule on challenges to the classification status of information brought by "authorized holders" "in accordance with agency procedures." *Id.* §§ 1.8, 5.3(a). These procedural requirements demonstrate that only Executive Branch officials are the authorized holders of classified information under the Executive Order and are subject to the determinations made by other Executive Branch officials in the originating agencies. And, to the extent that the Executive Order were unclear on this issue, the Executive's longstanding resolution of that question would be entitled to substantial deference and controlling weight. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945).

There are, of course, also numerous cases in which courts have refused to require disclosure of classified information to a party or to opposing counsel. And numerous courts have declined to interfere with the Government's right to submit such information as may be needed to the Court for *ex parte* and *in camera review*, recognizing the Government's "compelling interest in withholding national security information." *See, e.g.*, *People's Mojahedin Org. v. Dep't of State*, 327 F.3d 1238, 1242-43 (D.C. Cir. 2003) (internal quotations omitted). The courts thus have acknowledged that the Government "need not disclose the classified information to be presented *in camera* and *ex parte* to the court. . . . This is within the privilege and the prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect." *Holy Land Found. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (internal quotations omitted); *accord Stillman*, 319 F.3d at 548; *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001).

As a corollary, a court may not order the Executive to grant private counsel or any other person access to classified information.[3]  In keeping with this rule, courts repeatedly have rejected demands that opposing counsel or parties be permitted access to classified material presented to the court *ex parte* and *in camera*.  *See, e.g.*, *Pollard v. Fed. Bureau of Investigation*, 705 F.2d 1151, 1153 (9th Cir. 1983) ("*In camera* proceedings, particularly in [Freedom of Information Act] cases involving classified documents, are usually non-adversarial, with the party who is seeking the documents denied even this limited access to the documents he seeks to obtain."); *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (denying special accommodations such as, *inter alia*, giving private counsel access to classified information as giving "rise to added opportunity for leaked information."); *Salisbury v. United States*, 690 F.2d 966, 973-74 & n.3 (D.C. Cir. 1982) (where "considerations of national security mandate in camera proceedings, the District Court may act to exclude outside counsel when necessary for secrecy or other reasons.").

The Government also respectfully submits that the Court's intention to proceed in CIPA-like proceedings in this case and the manner of those proceedings raises a serious legal question. To be sure, in its remand decision the Court of Appeals stated that "nothing in this opinion forecloses a determination by the district court that *some* of the protective measures in CIPA, which applies in criminal cases, would be appropriate." *In re Sealed Case*, 494 F.3d 139, 154 (D.C. Cir. 2007) (emphasis added).  Putting aside whether the Court of Appeals decision should

---

[3] In *In re United States*, 1 F.3d 1251 (Table), 1993 WL 262656 (Fed Cir. 1993), for example, the appeals court reversed, through a writ of mandamus, the trial court's order that the Executive provide classified information to certain individuals.  The individuals in question had appropriate security clearances, but the Executive denied them access based on its judgment that providing access to additional people was inconsistent with national security.  *Id.* at *2-3.  The appeals court held that the trial court could not review the Executive's access decisions, and that such decisions "may not be countermanded by *either* coordinate branch."  *Id.* at *9.

be read as authorizing CIPA-like procedures as opposed to simply not foreclosing them, at most a measured, incremental approach to further proceedings, consistent with the protections afforded to the Government under CIPA, would be appropriate. This Court's Order on further proceedings, however, in the absence of a stay, will result in the disclosure of classified information to counsel and *in camera* hearings at the outset of the discovery and trial process before there is a final appellate adjudication of the contested issues. The Government respectfully submits that such a result would be inappropriate under CIPA, which has numerous procedural protections for the Government before classified information is actually disclosed.

As the Court is aware, in the criminal context, CIPA contains numerous provisions recognizing the Government's ability to protect classified information and prevent disclosure to counsel. *See United States v. Mejia*, 448 F.3d 436, 457 (D.C. Cir. 2006) (discussing "the protective options short of full disclosure" such as substitutions or admissions under CIPA § 4); *id.* at 458 (discussing analogs where there is a greater judicial role without party or counsel access). CIPA proceedings frequently begin with pretrial conferences to discuss the scope of potential disclosures and discovery, *see* 18 U.S.C. App. III ("CIPA") § 2, and CIPA requires courts to resolve discovery issues pursuant to Section 4 of CIPA before disclosures are made. If a court authorizes disclosure of classified information under CIPA, the Government may move to substitute non-classified information in its place, or may seek an interlocutory appeal. CIPA requires defendants who receive classified information in discovery and who reasonably expect to disclose classified information during the proceedings to provide written notice to the Government pursuant to Section 5 of CIPA. A defendant's Section 5 notice may be challenged by the Government, however, if it does not comply with the statute. Even if the notice does comply with the statute, the Government still has an opportunity to seek a determination from

the court regarding the use, relevance and admissibility of the classified information, and CIPA establishes procedures for holding an *in camera* hearing. *Id.* §§ 5(a), 6(a). Indeed, as the Court is aware, the Government may also submit an affidavit from the Attorney General explaining why disclosure will damage national security, which the court must review *ex parte* and *in camera* at the Government's request. *Id.* at § 6(c). During Section 6 proceedings, the Government may also argue that the defendant should not be permitted to use the classified information because it is not relevant to a legally cognizable or otherwise valid defense. If the Court determines that the classified information is relevant and admissible, the Government may seek substitutions in lieu of disclosure of the classified information, and may seek an interlocutory appeal prior to disclosure of any classified information. Moreover, CIPA permits the Government to object to the taking of testimony at trial to "any question or line of inquiry that may require the witness to disclose classified information not previously found to be admissible." *Id.* at § 8(c).

Thus, if a court orders the disclosure of classified information in a criminal case under CIPA, the Government may bring an interlocutory appeal, *id.* at § 7(a), or notify the court of its intent not to disclose the classified information. Thereafter, CIPA contemplates that the district court may impose sanctions, such as the dismissal of the indictment, *id.* at § 6(e), but the statute is clear that the Government retains the right to prevent the disclosure of the classified information. Accordingly, under CIPA, the statutory scheme contemplates a careful step-by-step approach prior to the actual disclosure of any classified information to which the Government objects, as well as a system where the ultimate decision concerning disclosure of the classified information always rests with the Executive Branch.

Yet here, while the Court has concluded that CIPA-like procedures are appropriate, and

while it has stated that it intends for the "case to move forward while minimizing the risk to national security," *see* August 26 Mem. Op. at 17, it has, nonetheless, set in motion a process that will result in the disclosure of classified information without CIPA's limiting provisions. By directing disclosure of classified information already in possession of their clients (and by requiring the level of security clearance to be coextensive with the privilege assertions of the Government), the Court has raised a serious legal question going to the scope of further proceedings and whether the D.C. Circuit contemplated disclosure of classified information to counsel. *Cf. In re Sealed Case*, 494 F.3d at 154 (stating that "we have no occasion to address whether Horn or his counsel have a 'need-to-know'"). As the Government previously argued, in its motion for a protective order, *see* Dkt. 433, and in response to the Court's July 16, 2009 Order, Dkts. 458 & 472, this case calls for a more incremental approach that resolves issues concerning the parties' discovery plans and their lines of inquiry before the Court reaches questions of counsel access to classified information. *Cf. Al-Odah*, 559 F.3d at 547 (noting that in criminal proceedings "before ordering disclosure of classified material to counsel, the court must determine that alternatives to disclosure would not effectively substitute for unredacted access"). Caution is particularly necessary in these civil proceedings because the standard for obtaining discovery in civil litigation is so much lower than in criminal cases under CIPA. *See Mejia*, 448 F.3d at 455-56 & n.17 (noting that disclosure in criminal cases only occurs where hurdles of relevance, helpfulness, and due process are satisfied). Providing for disclosure now and resorting to CIPA-like procedures that do not have CIPA-like protections for the Government is, therefore, erroneous.

Indeed, the disclosure issue is paramount in this context because, as the Court is aware, in criminal prosecutions the Executive Branch can choose to forgo or drop a prosecution rather than

disclose classified information to a criminal defendant.  In civil litigation, the Government is

subject to suit (or must intervene or file a statement of interest in private litigation between two

private parties) with no control over the continuation of the case, especially where the Court has

concluded, as it has here without prejudice, that the state secrets privilege is inapplicable.[4]  At a

minimum, a serious question exists regarding the Court's authority to order disclosure to the

counsel for the parties in general and, in particular, whether such an order is permissible on the

record before the district court and in light of the options for further proceedings that would not

have necessitated disclosure.

II.    **ABSENT A STAY, THE AUGUST 26 ORDER WILL IRREPARABLY HARM THE GOVERNMENT.**

The Government will suffer irreparable injury absent a stay both through the disclosure

of information to the parties' counsel and through the loss of its right to a meaningful appeal.

The Court's August 26 Order makes the need-to-know determination for the parties' counsel,

mandates that the Government update security clearances, *i.e.*, suitability determinations, and

provides for access to classified information for the parties' counsel to engage in briefing under a

CIPA-like structure.  If the Order is not stayed and the Government must grant access to

classified information, the threatened disclosure that prompted the instant appeal from this

---

[4]  Indeed, this very distinction between civil and criminal situations was recognized in *Reynolds* itself, which contrasted the use of the state secrets privilege in civil litigation with "cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free."  *See United States v. Reynolds*, 345 U.S. 1, 12 (1953).  *Reynolds* noted that "since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense."  *Id.*  But *Reynolds* permits this very approach in civil litigation where the privilege applies, noting that the rationale in criminal cases "has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented."  *Id.*

Court's Order will become irreversible and the Government's appeal will have been rendered moot.  *See generally John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers) (explaining in the FOIA context that "disclosure would moot that part of the [decision under review] requiring disclosure" and would thereby "create an irreparable injury to the government"; explaining that the need to preserve government's right to appeal is "perhaps the most compelling justification" for granting a stay in FOIA) (quoting *New York v. Kleppe*, 429 U.S. 1307, 1310 (1976) (Marshall, J., in chambers)).

Rule 62(c) of the Federal Rules of Civil Procedure contemplates precisely this type of irreparable injury in permitting courts to preserve the status quo.  Indeed, a stay pending appeal "is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit."  *Washington Metro.*, 559 F.2d at 844.  It should be clear that the release of classified information or information otherwise protected from disclosure creates the sort of irreparable harm needed to warrant a stay pending appeal because upon an authorized disclosure the status quo ante can not be restored.  Such a disclosure of information to the parties' counsel cannot be undone; the information subject to disclosure cannot be made secret again.  Moreover, no remedy at law (monetary or otherwise) could compensate for the disclosure of protected information.  Thus, courts routinely grant stays of disclosure orders in civil litigation involving disclosure of protected information, *see Philip Morris*, 314 F.3d at 619, or in routine FOIA cases—even those that do not involve national security information.  *See United States Dep't of Commerce v. Assembly of State of California*, 501 U.S. 1272 (1991).[5]

---

[5]  *See also Dep't of Justice v. Rosenfield*, 501 U.S. 1227 (1991); *John Doe Agency v. John Doe*, 488 U.S. 1306 (1989); *Providence Journal Co. v. FBI*, 602 F.2d 1010, 1012 (1st Cir. 1979) (stating in the FOIA context that a stay pending a determination of the lawfulness of a disclosure order was appropriate).

In light of the nature of the classified information at issue here, the need to preserve the status quo is even more compelling.  Sources and methods constitute "the heart of all intelligence operations," *Sims*, 471 U.S. at 167, and "[i]t is the responsibility of the [intelligence community] to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process."  *Id.* at 180.  Allowing disclosure and further proceedings, with all of their potential risks, complexities, and unexpected turns, is unwarranted in the face of the potential risks and the Government's appeal.

The issuance of a stay pending appeal, moreover, will preserve the Government's right to meaningful review of the Court's August 26 Order.  *See Nken*, 129 S.Ct. at 1754 (noting that a stay holds "a ruling in abeyance to allow an appellate court the time necessary to review it.").  As the First Circuit recognized in *Providence Journal*:

> [T]he Constitution and laws entitle litigants to have their cases independently reviewed by an appellate tribunal.  Meaningful review entails having the reviewing court take a fresh look at the decision of the trial court before it becomes irrevocable.  Appellants' right of appeal here will become moot unless the stay is continued pending determination of the appeals.  Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time.  The status quo could never be restored.

*See* 595 F.2d at 890; *see also* Moore's Federal Practice, Section 208.03 ("A stay pending appeal, usually in the form of an injunction, is necessary only if what may be done under the judgment is beyond the power of the Court of Appeals to undo by its judgment").  In other words, the very purpose of a stay pending appeal is to allow a party to vindicate its rights on appeal without those rights being forever foreclosed by implementation of the order.  Absent a stay here, the parties' counsel will be able to access classified information.  This will all take place without first having the Court of Appeals rule on whether this Court could properly order such access for

the counsel of private parties who are furthering private, non-governmental interests. Once

access to the classified information is provided pursuant to the Court's August 26 Order, the

Court of Appeals will be unable to restore the status quo and grant the United States an adequate

legal remedy.

## III.  MAINTAINING THE STATUS QUO WILL NOT IRREPARABLY HARM THE OTHER PARTIES.

On the record before the Court, the other parties to this fifteen year old action cannot

show that they will be irreparably injured by a stay of this Court's Order. The parties likely will

argue that a stay would delay remand proceedings from the D.C. Circuit's most recent decision

in this case. But "[a] mere assertion of delay does not constitute substantial harm." *Philip*

*Morris*, 314 F.3d at 622. Indeed, the "minor delay" from an interlocutory appeal can be

remedied by expedition in the D.C. Circuit. *Id*.

## IV.  A STAY SERVES THE PUBLIC INTEREST.

The classified information at issue here is highly sensitive and its classification reflects

that unauthorized disclosure could pose a serious risk to the secrecy and integrity of intelligence

sources and methods and could potentially cause exceptionally grave damage to the national

security. The public interest is served by ensuring that classified information vital to our

nation's security is protected from either intentional or inadvertent disclosure.[6] The exclusive

control over access to national security information is a core function of the Executive Branch in

the allocation of powers among the branches of the federal government. As such, permitting the

final resolution of the instant dispute will further the broader public interest in the observance of

_____

[6] Indeed, even in criminal cases where CIPA unquestionably applies, it is noteworthy that Congress too considered that the immediate appeal of all disclosure orders concerning classified information was in the public interest. *See* CIPA, § 7(a) (authorizing immediate interlocutory appeal of any order of disclosure of classified information).

law and administration of justice. Until the Court of Appeals is allowed the opportunity to review the propriety of this Court's August 26 Order, the public interest requires that a stay be granted.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests the Court stay the August 26 Order and thereby ensure the Government's right to meaningful appeal. The Government respectfully asks that the Court issue a ruling on this request by 3:00 p.m. on Friday, September 4, 2009, so as to permit the Government, if necessary, to seek relief in the Court of Appeals on Friday in advance of the upcoming Labor Day weekend.

Dated: September 2, 2009

Respectfully submitted,

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director

 /s/ Alexander K. Haas                           
PAUL G. FREEBORNE
ALEXANDER K. HAAS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm. 6108
Washington, D.C. 20530
Tel: (202) 353-0543—Fax: (202) 616-8460
*paul.freeborne@usdoj.gov*
*Attorneys for the United States*