UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD A. HORN,<br>    Plaintiff,<br><br>v.<br><br>FRANKLIN HUDDLE, JR., *et al.*,<br>    Defendants. | Civil Action 94-1756-RCL |

## MEMORANDUM

This matter comes before the Court on various motions related to the parties' settlement of this case.

This case arose from allegations by plaintiff Richard Horn, who in 1993 was stationed in Rangoon, Burma, as the country attaché for the United States Drug Enforcement Administration, that the defendants—Franklin Huddle Jr., a State department employee, and Arthur Brown, an employee of the Central Intelligence Agency—illegally engaged in electronic eavesdropping of Horn's telephone calls in violation of the Fourth Amendment. A description of the underlying facts of the case are set forth in the D.C. Circuit's opinion *In re Sealed Case*, 494 F.3d 139 (D.C. Cir. 2007).

Following remand from the Court of Appeals for further proceedings, this Court determined from disclosures made in 2008 that the government had made misrepresentations to this Court that were material and intentional. By order filed January 15, 2009, this Court referred to the Court's Committee on Grievances the CIA attorney identified at that time as

responsible for the government's misconduct, and set further proceedings to allow plaintiff to pursue other possible sanctions.

Plaintiff on June 10, 2009, filed a motion for an order to show cause why various CIA personnel should not be found in contempt of Court and sanctioned. Plaintiff's motion sought sanctions against defendant Brown as well as former CIA Director George Tenet, and CIA Office of General Counsel attorneys, John A. Rizzo, Robert J. Eatinger, and Jeffery W. Yeates.

On the same date, plaintiff also filed a motion for attorneys' fees pursuant to the Equal Access to Justice Act against the United States and/or the CIA.

Thereafter, the parties and the intervenor, the United States, reached a settlement of the entire case, pursuant to which the plaintiff moved to withdraw, with prejudice, both of the plaintiff's motions filed on June 10, 2009.

The United States thereupon filed a motion to vacate the July 16, 2009 opinions and orders of the Court, noting the plaintiff did not oppose the motion to vacate as part of the complete and global resolution of this case, including any consequences that might flow from this Court's outstanding interlocutory orders.

The United States filed a separate motion on the same date requesting that the Court also vacate the January 15, 2009 and February 6, 2009 opinions and orders, noting that the continuation of any sanctions

proceedings—including any Grievance Committee inquiry—would require litigation and further access to classified and other privileged materials, and would defeat the effort to have a global settlement that entirely concluded this matter and minimized the risk to the United States of any additional possible disclosure of classified information.

Plaintiff, on the same date, filed a stipulation of dismissal, to which he appended the settlement agreement herein. Plaintiff therewith submitted a proposed order for the Court to dismiss this case with prejudice pursuant to the stipulation of dismissal. The underlying settlement agreement requires the United States to pay plaintiff $3,000,000 for damages, attorneys' fees, and litigation costs and expenses.

The Court subsequently received a motion by Al-Haramain Islamic Foundation, Inc., Wendell Belew, and Asim Ghafoor, for leave to file a brief as *amici curiae* in opposition to the motion of the United States to vacate the Court's opinions and orders of July 16, 2009, and August 26, 2009. The Court has considered the opposition and reply memoranda, and hereby GRANTS the motion of *amici curiae* to file their brief.

Nevertheless, the Court has determined that the public interest is best served by approval of the settlement and of vacatur of the Court's July and August opinions and orders as requested by the United States.

The Court is mindful that a District Court's opinions are non-precedential and only persuasive authority. Since the July and August

opinions have already been published in the Federal Supplement,[1] the only consequence of an order vacating them is the possibility that they may be considered somewhat less persuasive when the vacating order appears with the citation. The reasoning is unaltered, to the extent it is deemed persuasive by anyone.

The extraordinary circumstances of ending this 15 year old, hotly contested litigation that has already consumed too much time and too many resources for everyone concerned and the desirability of finality are sufficient for this Court to enter an accompanying order vacating the prior July and August opinions as requested, and dismissing this action with prejudice.

However, it is not without some misgiving that the Court reaches this decision. Another member of this Court last year approved the settlement of another case (involving the FBI's investigation of the anthrax mailings in late 2001) which involved payment to an individual plaintiff of almost $6,000,000 by the United States. *See Hatfill v. Mukasey, et al.*, Civil Action No. 03-1793 (D.D.C.) (Walton, J.). It does not appear that any government official was ever held accountable for this huge loss to the taxpayer.

Now this Court is called upon to approve a $3,000,000 payment to an individual plaintiff by the United States, and again it does not appear that any government officials have been held accountable for this loss to the taxpayer. This is troubling to the Court.

---

[1] See *Horn v. Huddle*, 647 F. Supp. 2d 55 (D.D.C. 2009) (Lamberth, C.J.); *Horn v. Huddle*, 636 F. Supp. 2d 10 (D.D.C. 2009) (Lamberth, C.J.).

This Court finds encouraging the issuance of a memorandum, dated September 23, 2009, for the Heads of the Executive Departments and Agencies from Attorney General Eric Holder regarding "Policies and Procedures Governing Invocation of the State Secrets Privilege." A copy of this memorandum is attached hereto as Appendix A. The Attorney General therein sets forth a much more detailed structure for the proper invocation of the state secrets privilege, which the Court applauds. Additionally, paragraph 4C of the memorandum states that when a case raises credible allegations of government wrongdoing, the Department of Justice "will refer those allegations to the Inspector General of the appropriate department or agency for further investigation, and will provide prompt notice of the referral to the head of the appropriate department or agency." Here, the allegations of wrongdoing by the government attorneys in this case are not only credible, they are admitted. As to the allegations of wrongdoing that form the basis of Horn's claims, while the government makes no admission of wrongdoing in the settlement, the Court is persuaded that the government must have at least found them credible to pay the plaintiff $3,000,000 to settle the case.

The Attorney General's memorandum also provides that the Department of Justice "will provide periodic reports to the appropriate oversight committees of Congress with respect to all cases in which the department invokes the state secrets privilege."

The memorandum, however, also states that the policies and procedures set forth therein only apply to cases in which the government invokes the states secrets privilege after October 1, 2009. In this case the government continued to rely, after October 1, 2009, on a previously filed claim of states secrets privilege until the settlement herein was reached in late October 2009. Regardless of the proper interpretation of the Attorney General's Memorandum of September 23, 2009, it is clear that the Attorney General can make the referral and notifications set forth therein and so advise this Court.

The Court requests the United States to advise the Court as to whether it will, in this case, make the referral to the Inspectors General and provide the notifications to the oversight committees of Congress. The Court notes that there is disturbing evidence in a sealed motion [496] indicating that misconduct occurred in the Inspector General's Offices at both the State Department and the Central Intelligence Agency. That evidence demonstrates the benefit of notification to the oversight committees of Congress.

If the United States makes these notifications, then it is clear that this Court's role should be at an end, and this Court's opinions and orders of January 15, 2009 and February 6, 2009 and the actions of the Court's Grievance Committee can be terminated.

A separate order shall issue this date.

**SO ORDERED** this _30th_ day of March 2010.

ROYCE C. LAMBERTH
Chief Judge
United States District Court

Appendix A:  Memorandum of the Attorney General regarding *Policies and Procedures Governing Invocation of the State Secrets Privilege*



# Office of the Attorney General
## Washington, D. C. 20530

September 23, 2009

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES
MEMORANDUM FOR THE HEADS OF DEPARTMENT COMPONENTS

FROM:    THE ATTORNEY GENERAL

SUBJECT:    Policies and Procedures Governing Invocation of the State Secrets Privilege

I am issuing today new Department of Justice policies and administrative procedures that will provide greater accountability and reliability in the invocation of the state secrets privilege in litigation. The Department is adopting these policies and procedures to strengthen public confidence that the U.S. Government will invoke the privilege in court only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests. The policies and procedures set forth in this Memorandum are effective as of October 1, 2009, and the Department shall apply them in all cases in which a government department or agency thereafter seeks to invoke the state secrets privilege in litigation.

## 1. Standards for Determination

**A. Legal Standard.** The Department will defend an assertion of the state secrets privilege ("privilege") in litigation when a government department or agency seeking to assert the privilege makes a sufficient showing that assertion of the privilege is necessary to protect information the unauthorized disclosure of which reasonably could be expected to cause significant harm to the national defense or foreign relations ("national security") of the United States. With respect to classified information, the Department will defend invocation of the privilege to protect information properly classified pursuant to Executive Order 12958, as amended, or any successor order, at any level of classification, so long as the unauthorized disclosure of such information reasonably could be expected to cause significant harm to the national security of the United States. With respect to information that is nonpublic but not classified, the Department will also defend invocation of the privilege so long as the disclosure of such information reasonably could be expected to cause significant harm to the national security of the United States.

**B. Narrow Tailoring.** The Department's policy is that the privilege should be invoked only to the extent necessary to protect against the risk of significant harm to national security. The Department will seek to dismiss a litigant's claim or case on the basis of the state secrets privilege only when doing so is necessary to protect against the risk of significant harm to national security.

Memorandum for Heads of Executive Departments and Agencies          Page 2
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

    **C. Limitations.** The Department will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security.

2. <u>**Initial Procedures for Invocation of the Privilege**</u>

    **A. Evidentiary Support.** A government department or agency seeking invocation of the privilege in litigation must submit to the Division in the Department with responsibility for the litigation in question[1] a detailed declaration based on personal knowledge that specifies in detail: (i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm; and (iv) any other information relevant to the decision whether the privilege should be invoked in litigation.

    **B. Recommendation from the Assistant Attorney General.** The Assistant Attorney General for the Division responsible for the matter shall formally recommend in writing whether or not the Department should defend the assertion of the privilege in litigation. In order to make a formal recommendation to defend the assertion of the privilege, the Assistant Attorney General must conclude, based on a personal evaluation of the evidence submitted by the department or agency seeking invocation of the privilege, that the standards set forth in Section 1(a) of this Memorandum are satisfied. The recommendation of the Assistant Attorney General shall be made in a timely manner to ensure that the State Secrets Review Committee has adequate time to give meaningful consideration to the recommendation.

3. <u>**State Secrets Review Committee**</u>

    **A. Review Committee.** A State Secrets Review Committee consisting of senior Department of Justice officials designated by the Attorney General will evaluate the

---

[1] The question whether to invoke the privilege typically arises in civil litigation. Requests for invocation of the privilege in those cases shall be addressed to the Civil Division. The question whether to invoke the privilege also may arise in cases handled by the Environment and Natural Resources Division (ENRD), and requests for invocation of the privilege shall be addressed to ENRD in those instances. It is also possible that a court may require the Government to satisfy the standards for invoking the privilege in criminal proceedings. *See United States v. Aref*, 533 F.3d 72, 78-80 (2d Cir. 2008); *but see United States v. Rosen*, 557 F.3d 192, 198 (4th Cir. 2009). In such instances, requests to submit filings to satisfy that standard shall be directed to the National Security Division.

*Memorandum for Heads of Executive Departments and Agencies*         Page 3
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

>Assistant Attorney General's recommendation to determine whether invocation of the privilege in litigation is warranted.
>
>**B. Consultation.** The Review Committee will consult as necessary and appropriate with the department or agency seeking invocation of the privilege in litigation and with the Office of the Director of National Intelligence. The Review Committee must engage in such consultation prior to making any recommendation against defending the invocation of the privilege in litigation.
>
>**C. Recommendation by the Review Committee.** The Review Committee shall make a recommendation to the Deputy Attorney General, who shall in turn make a recommendation to the Attorney General.[2] The recommendations shall be made in a timely manner to ensure that the Attorney General has adequate time to give meaningful consideration to such recommendations.

### 4. Attorney General Approval

>**A. Attorney General Approval.** The Department will not defend an assertion of the privilege in litigation without the personal approval of the Attorney General (or, in the absence or recusal of the Attorney General, the Deputy Attorney General or the Acting Attorney General).
>
>**B. Notification to Agency or Department Head.** In the event that the Attorney General does not approve invocation of the privilege in litigation with respect to some or all of the information a requesting department or agency seeks to protect, the Department will provide prompt notice to the head of the requesting department or agency.
>
>**C. Referral to Agency or Department Inspector General.** If the Attorney General concludes that it would be proper to defend invocation of the privilege in a case, and that invocation of the privilege would preclude adjudication of particular claims, but that the case raises credible allegations of government wrongdoing, the Department will refer those allegations to the Inspector General of the appropriate department or agency for further investigation, and will provide prompt notice of the referral to the head of the appropriate department or agency.

---

[2] In civil cases, the review committee's recommendation should be made through the Associate Attorney General to the Deputy Attorney General, who shall in turn make a recommendation to the Attorney General.

Memorandum for Heads of Executive Departments and Agencies         Page 4
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

## 5. Reporting to Congress

The Department will provide periodic reports to appropriate oversight committees of Congress with respect to all cases in which the Department invokes the privilege on behalf of departments or agencies in litigation, explaining the basis for invoking the privilege.

## 6. Classification Authority

The department or agency with classification authority over information potentially subject to an invocation of the privilege at all times retains its classification authority under Executive Order 12958, as amended, or any successor order.

## 7. No Substantive or Procedural Rights Created

This policy statement is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.